**WILLKIE FARR & GALLAGHER LLP**
BENEDICT HUR (SBN 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO SANTACANA (SBN 281668)
  esantacana@willkie.com
TIFFANY LIN (SBN 321472)
  tlin@willkie.com
One Front Street, 34th Floor
San Francisco, California 94111
Telephone:  (415) 858-7400
Facsimile:  (415) 858-7599

Attorneys for Defendant
**GOOGLE LLC**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE I, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:23-cv-02431-VC<br><br>**DEFENDANT GOOGLE LLC'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT DR. TIMOTHY LIBERT**<br><br>Date:   September 21, 2023<br>Time:   10:00 a.m.<br>Ctrm.:  4<br><br>Complaint Filed:   May 17, 2023<br><br>*District Judge Vince Chhabria*<br>*San Francisco Courthouse, Ctrm. 4* |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on September 21, 2023, at 10:00 a.m., or as soon as this matter may be heard before the Honorable Vince Chhabria, in Courtroom 4 of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google") will and hereby does move the Court for an order disqualifying Dr. Timothy Libert from serving as an expert witness for Plaintiffs John Does I–II and Jane Does I–V (together, "Plaintiffs").

As set forth in more detail below, Plaintiffs have retained Dr. Libert as an expert witness in support of their Motion for a Preliminary Injunction. Only a few months before this lawsuit was filed, however, Dr. Libert was a privacy engineer at Google, where he worked on cookies technology, which is at the heart of Plaintiffs' case. Dr. Libert worked hand-in-hand with Google in-house counsel to develop systems and policies relating to cookie privacy and compliance and received privileged and confidential information relevant to Plaintiffs' claims.

Dr. Libert should be disqualified from serving as an expert witness in this case. Dr. Libert owes Google a continuing duty of confidentiality under the express terms of his signed employment agreement. The law prohibits former employees who were privy to case-relevant confidential information from serving as experts adverse to their employer, because such individuals cannot "parse [their] knowledge of [the former employer's] confidential information to only rely on what's provided to" them in their capacity as an expert witness. *Pellerin v. Honeywell Int'l, Inc.*, 2012 WL 112539 at *3 (S.D. Cal. Jan. 12, 2012). Dr. Libert's knowledge of confidential information relevant to this case creates a constant risk that such information could be disclosed to Plaintiffs, inadvertently or not. For these reasons, Plaintiffs' use of Dr. Libert as an expert witness is highly prejudicial to Google. He should therefore be disqualified, consistent with the authority in analogous cases, including in this District.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. Plaintiffs Allege Cookie-Related Violations of Privacy Law and Seek a Preliminary Injunction, Supported by the Declaration of Dr. Libert. .......................................... 2

    B. Dr. Libert Is a Recent Google Employee Who Was Directly Involved in Google's Efforts to Ensure Cookie Compliance. ..................................................................... 3

    C. During Dr. Libert's Tenure at Google, He Assisted with Responding to Regulatory Investigations, Drafted Internal Cookie and Web Storage Policies, and Led Privacy Trainings. ................................................................................................................. 5

        1. Dr. Libert Led Technical Teams Tasked with Responding to Confidential Investigations Related to Cookies. ............................................................... 6

        2. Dr. Libert Says He Wrote the Policy That Governs All the Alphabet/Google-Owned Cookies on the Planet. .................................................................................. 6

        3. Dr. Libert Developed Privacy Trainings and Consent Policies, and Acted as an Internal Resource. ....................................................................................... 7

    D. Dr. Libert Resigned From Google, Apparently to Found a Company Focused on Plaintiff-Side Litigation Consultancy. ..................................................................... 7

    E. Plaintiffs' Counsel Rebuffed Google's Request That They Withdraw Dr. Libert……..7

III. LEGAL STANDARD……………………………………………………………………..8

IV. ARGUMENT .................................................................................................................. 9

    A. Dr. Libert Should Be Disqualified Because He Acquired Confidential Information Relevant to this Lawsuit Through His Confidential Relationship with Google. ..... 9

        1. Confidential Relationship ............................................................................. 9

        2. Confidential Information relevant to this Lawsuit ....................................... 9

    B. Dr. Libert's Testimony on Behalf of Plaintiffs is Fundamentally Unfair and Prejudicial to Google……………………………………………………………………..….11

V. CONCLUSION ............................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Atari Corp. v. Sega of Am.*,
 161 F.R.D. 417, 421 (N.D. Cal. 1994 ................................................................................2

*Broadcom Corp. v. Emulex Corp.*,
 2010 WL 11465478 (C.D. Cal. Apr. 5, 2010) ....................................................................8

*Corley v. Google, Inc.*,
 2016 WL 3421402 (N.D. Cal. June 22, 2016) .............................................................2, 8, 9

*Hewlett-Packard Co. v. EMC Corp.*,
 330 F. Supp. 2d 1087 (N.D. Cal. 2004) .............................................................................8

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
 2022 WL 393208 (N.D. Cal. Feb. 9. 2022) .......................................................................8

*Kane v. Chobani, Inc.*,
 2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) ...................................................................11

*Oracle Corp. v. DrugLogic, Inc.*,
 2012 WL 2244305 (N.D. Cal. June 15, 2012) ................................................................8, 9

*Packet Intelligence LLC v. Juniper Networks, Inc.*,
 2020 WL 4001460 (N.D. Cal. July 15, 2020) ....................................................................8

*Pellerin v. Honeywell Int'l, Inc.*,
 2012 WL 112539 (S.D. Cal. Jan. 12, 2012) ............................................................1, 9, 10

*Space Sys./Loral v. Martin Marietta Corp.*,
 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) .....................................................................2

*Staley v. Gilead Sciences, Inc.*,
 2022 WL 3013210 (N.D. Cal. July 29, 2022) .................................................................8, 9

**Statutes**

HIPAA ..........................................................................................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Google moves to disqualify Plaintiffs' expert Dr. Timothy Libert because he had access to, and worked extensively with, confidential and privileged information that is directly relevant to this lawsuit. Until March of this year—approximately three months before he signed his expert declaration—Dr. Libert was employed by Google as a Staff Privacy Engineer. In that capacity, he was (in his own words) "[r]esponsible for authoring and enforcing the internal cookie and web storage policy, designing Google-scale cookie compliance architectures, and developing internal privacy trainings" for Google. *See* Declaration of Eduardo Santacana ("Santacana Decl."), Ex. A (Dr. Timothy Libert, LinkedIn, https://www.linkedin.com/in/dr-timothy-libert-5314008b/). This role granted Dr. Libert access to reams of highly confidential, and often privileged, information about Google's cookies and the company's efforts to ensure that its cookies comply with applicable privacy regulations.

Fewer than a hundred days after Dr. Libert resigned from Google, Plaintiffs hired him as an expert witness.[1] Incredibly, Dr. Libert's recent employment with Google goes unmentioned in the body of his declaration, including in the discussion of his qualifying professional experience in paragraphs 5–6, and would be entirely undisclosed but for a single line of text in the 11-page CV attached to his declaration as an exhibit. Nor do Plaintiffs elsewhere make any mention of Dr. Libert's prior employment with Google, much less that his work there directly related to issues in this lawsuit.

The subject matter of this lawsuit is unquestionably related to the confidential and privileged information Dr. Libert received from Google. Plaintiffs allege, for instance, that Google unlawfully places its cookies on third parties' healthcare-related websites. As a Google employee, Dr. Libert, according to his own social-media statements, wrote and enforced the company's internal policy governing "all the Alphabet/Google-owned cookies on the planet." *See* Santacana

---

[1] It is unclear when Plaintiffs first consulted with Dr. Libert about the issues in this case, but the timeline of events suggests that they might have done so shortly after his resignation from Google.

Decl., Ex. D ("TDLR: I resigned from Google to co-found a privacy startup," Dr. Timothy Libert, Linkedin, https://www.linkedin.com/posts/dr-timothy-libert-5314008b_tdlr-i-resigned-from-google-to-co-found-activity-7041130671553089536-ncy0/). He also worked closely with Google in-house counsel to respond to regulatory inquiries, conduct internal investigations, and ensure the compliance of Google's cookies with applicable law.

Plaintiffs further allege, as relevant to Dr. Libert's work for Google, that Google misrepresents its commitment to privacy and its adherence to its own privacy policies. On these issues, too, Dr. Libert was privy to directly relevant confidential and privileged information. As noted above, he authored and enforced Google's internal privacy-related cookie policy and developed and conducted internal privacy trainings. *See* Dr. Timothy Libert, LinkedIn, supra. He thus knows confidential information about Google's commitment to privacy and adherence to its own privacy policies firsthand.

Courts in this District have "repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert because such an expert is substantially likely to inflict unfair prejudices which the former employer cannot realistically discover or guard against." *Corley v. Google, Inc.*, 2016 WL 3421402 (N.D. Cal. June 22, 2016) (citing *Space Sys./Loral v. Martin Marietta Corp.*, 1995 WL 686369, at *2 (N.D. Cal. Nov. 15, 1995), and *Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 421 (N.D. Cal. 1994)). In light of the clear connection between Dr. Libert's former work at Google and his proposed testimony in this case, Google respectfully requests that the Court disqualify Dr. Libert here.

## II.   BACKGROUND

### A. Plaintiffs Allege Cookie-Related Violations of Privacy Law and Seek a Preliminary Injunction, Supported by the Declaration of Dr. Libert.

In their Complaint, Plaintiffs allege that Google unlawfully uses cookies to track patients who visit healthcare-related websites. *See generally* Consolidated Class Action Complaint, Dkt. 41 ("Complaint") (filed Jul. 13, 2023), §§ I, IV.B., IV.D. They further allege that Google violates promises in its own Terms of Service and Privacy Policy to "ensure compliance with applicable

laws" and to "respect and protect privacy rights." *Id.* ¶ 233; *see also* §§ IV.H; VII.10–11. Immediately after bringing suit, Plaintiffs filed a Motion for a Preliminary Injunction. Dkt. 42 (filed Jul. 13, 2023). In support thereof they filed the Declaration of Dr. Timothy Libert offering opinions regarding the use of Google's cookies by healthcare-related websites. Dkt. 42-2 (Jul. 13, 2023).

### B. Dr. Libert Is a Recent Google Employee Who Was Directly Involved in Google's Efforts to Ensure Cookie Compliance.

In his declaration, Dr. Libert states that he is "the owner of webXray LLC," which he describes as "a data protection consultancy focused on measuring and documenting privacy violations on the web." *Id.* ¶ 5. (On his LinkedIn page, Dr. Libert describes this company as "a litigation support consultancy." Santacana Decl., Ex. A.). Dr. Libert's declaration also touts his academic credentials and experience with "web technologies and privacy." *Id.*

What Dr. Libert's declaration neglects to mention, however, is that fewer than 100 days prior to becoming Plaintiff John Doe's expert, he had been employed by Google to design the very systems that help Google's cookies "ensure compliance with applicable laws" and "respect and protect privacy rights." Declaration of Kristie Chonn Flynn ("Flynn Dec."), at ¶¶ 7–8. Outside the context of this case, Dr. Libert has not shied away from this fact. Take, for example, his company's website, which, in the first line of Dr. Libert's bio, advertises his experience "leading Alphabet and Google's internal cookie policy and compliance efforts":



Santacana Decl., Ex. B. Dr. Libert similarly states on his personal website that, "[p]rior to founding webXray.ai, he was a Staff Privacy Engineer at Google where he wrote and enforced the internal cookies and web storage policy, designed Google-scale cookie compliance architectures, and developed internal privacy trainings." Santacana Decl., Ex C.

> **Timothy Libert**
> *Welcome to my home on the World Wide Web!*
>
> **Short Biography**
>
> (Dr.) Timothy Libert is founder and CEO of webXray.ai
>
> Prior to founding webXray.ai, he was a Staff Privacy Engineer at Google where he wrote and enforced the internal cookies and web storage policy, designed Google-scale cookie compliance architectures, and developed internal privacy trainings.

Further, in a LinkedIn post he wrote after leaving Google, he reflects on the "great honor to serve so many users" through "the massive impact of [his] work" for Google, where he "wrote the policy which governs all the Alphabet/Google-owned cookies on the planet" and even won "a physical trophy" from Google for his work on cookies. *Id.*, Ex. D. Dr. Libert also expresses pride that he was able to "help design architectures" for "cookie compliance systems" that "process [a] huge percentage of all cookies on earth." *Id.*

### C. During Dr. Libert's Tenure at Google, He Assisted with Responding to Regulatory Investigations, Drafted Internal Cookie and Web Storage Policies, and Led Privacy Trainings.

Dr. Libert worked at Google from May 2021 until March 2023 as a Staff Privacy Engineer on the company's Policy, Internal Standards, Controls & Effective Solutions ("PISCES") team. Flynn Decl., ¶¶ 6–7. As explained by Kristie Chon Flynn, who is the Senior Director for Privacy, Safety, and Security in charge of PISCES, this team focuses on "examining Google's internal practices and using technology to address privacy-related regulatory and legal issues." *Id.* ¶ 6. The nature of this work gives PISCES members greater access to "highly sensitive and often privileged information about Google's regulatory compliance" than "the typical engineering team at Google." *Id.*

On PISCES, Dr. Libert became the go-to person for all things related to cookies. *Id.* ¶ 7. Working closely with Google in-house counsel, he devised internal policies related to regulatory compliance and engineered systems in response to regulatory inquiries. *Id.* ¶¶ 8–11. He often engaged with attorneys to understand and help formulate the company's privacy compliance strategies. *Id.* ¶¶ 7–12, 15–17. Much of the information Dr. Libert received from Google attorneys relates directly to Plaintiffs' allegations in this case. *See e.g.*, *id.* ¶¶ 9–12, 15–17.

Dr. Libert's employment agreement with Google requires him to maintain the confidentiality of Google's proprietary or legally protectable information at all times, including after the termination of his employment. Flynn Decl. ¶ 4. This agreement specifically prohibits Dr. Libert from revealing proprietary or non-public information related to Google's "actual or anticipated business, products or services, research, development, technical data, customers, customer lists, markets, software, hardware, finances, Inventions . . . and user data (i.e., any information directly or indirectly collected by Google or Alphabet from users of its services)." *Id.* Dr. Libert further promised to "hold all Google confidential information in strict confidence and trust," and to "take all reasonable precautions to prevent any unauthorized use or disclosure of Google confidential information." *Id.*

1. *Dr. Libert Led Technical Teams Tasked with Responding to Confidential Investigations Related to Cookies.*

While at Google, Dr. Libert helped the company's regulatory lawyers respond to government investigations relating to Google's cookies. *Id.* ¶ 8. He directed a team that, with guidance from in-house counsel, responded to inquiries from France's Commission Nationale de l'Informatique et des Libertés (CNIL). This team revamped the infrastructure that Google uses to handle cookies, developing an "essential-only mode" to comply with a CNIL mandate. *Id.* ¶¶ 8–9. Dr. Libert's relationship with Google's legal team continued after this project, as he assisted with other cookie-related investigations and regulatory inquiries, too. *Id.* ¶ 10. In providing this assistance, he received confidential and privileged information about those investigations and about Google's legal strategies in responding to privacy regulation and enforcement. *Id.* ¶ 11. Dr. Libert also frequently sought information from Google in-house counsel on regulatory topics and independently subscribed to email alerts for phrases like "Google DOJ" and "Google regulator." *Id.* ¶ 17.

2. *Dr. Libert Says He Wrote the Policy That Governs All the Alphabet/Google-Owned Cookies on the Planet.*

Dr. Libert publicly states that he "wrote the policy governing all Alphabet/Google-owned cookies globally." Santacana Decl., Ex. D. Between 2021 and early 2022, Dr. Libert drafted Google's cookie guidelines, applicable to anyone at Google managing "cookies or cookie-like objects" and covering cookie management, including operation locations, logging procedures, server use, personal data collection boundaries, data integration, storage, and more. Flynn Decl. ¶ 9. Drafting this internal policy required input from Google's attorneys to ensure that it accurately reflected the company's interpretation of privacy law. *Id.* ¶ 12. Dr. Libert also authored a historical chronology of cookie governance at Google that aimed to consolidate and preserve institutional knowledge on this issue for the benefit of the company's future policymakers. *Id.* ¶ 11.

Further, Dr. Libert led the development of Google's internal cookie and web storage policy, applicable to any and all data stored on a web browser, in order to make Google's systems more comprehensible for purposes of compliance and risk reduction. *Id.* ¶ 9. In developing Google's

internal policies, Dr. Libert also led what he termed "the biggest cookie cleanup Google has done in nearly a decade." *Id.* at Ex. B. This involved identifying the management and use case of all of Google's cookies, giving Dr. Libert a bird's-eye view into how Google's cookies are used. He continued leading this project until his resignation.

> 3. *Dr. Libert Developed Privacy Trainings and Consent Policies, and Acted as an Internal Resource.*

Dr. Libert also helped shape Google's privacy framework. Early in his employment, he was tasked with conducting internal privacy trainings. *Id.* ¶ 12. These trainings provided a conceptual framework for how Google interprets key privacy issues under FTC regulations, HIPAA, the CCPA, and the company's own Privacy Policy. *Id.*

Dr. Libert's influence extended to other significant areas as well. With guidance from Google's in-house and outside counsel, Dr. Libert proposed revisions to how Google defines certain terms within its products' privacy policies, including policies relating to the use of Analytics or Advertising services on third-party apps and websites. *Id.* ¶ 16.

**D. Dr. Libert Resigned From Google, Apparently to Found a Company Focused on Plaintiff-Side Litigation Consultancy.**

Dr. Libert resigned from Google this March. Shortly thereafter, he founded a company seemingly focused on litigation consulting. *See* Santacana Decl., Ex. B ("webXray is a privacy engineering and litigation support consultancy" with expertise "highly pertinent to class litigation and regulation."). Fewer than a hundred days after resigning from Google, Dr. Libert submitted his declaration in this case.

**E. Plaintiffs' Counsel Rebuffed Google's Request That They Withdraw Dr. Libert.**

Shortly after Plaintiffs filed their Motion for a Preliminary Injunction, Google discovered Dr. Libert's conflict of interest. Santacana Decl. ¶ 2. Google's counsel promptly raised this issue with Plaintiffs' counsel who, on a June 23 call, dismissed these concerns on the grounds that "whatever [Dr. Libert] did at Google had nothing to do with what this case is about." *Id.* ¶¶ 3–4.

### III.    LEGAL STANDARD

"Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." *Oracle Corp. v. DrugLogic, Inc.*, 2012 WL 2244305, at *5 (N.D. Cal. June 15, 2012) (quoting *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004)). "Though there is no bright-line rule, courts in this district generally disqualify experts based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." *Staley v. Gilead Sciences, Inc.*, 2022 WL 3013210, at *3 (N.D. Cal. July 29, 2022) (quoting *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2022 WL 393208 at *2 (N.D. Cal. Feb. 9. 2022)) (punctuation omitted). To determine whether a confidential relationship existed, courts look to "whether there was a relationship that would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Staley*, 2022 WL 3013210, at *2 (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1093). "[A confidential relationship] may be shown by the existence of a formal confidentiality agreement." *Broadcom Corp. v. Emulex Corp.*, 2010 WL 11465478, at *1 (C.D. Cal. Apr. 5, 2010).

"This court has repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert because such an expert is substantially likely to inflict unfair prejudices which the former employer cannot realistically discover or guard against." *Corley*, 2016 WL 3421402, at *2 (citing *Space Sys.*, 1995 WL 686369, at *2). To prevail on a motion to disqualify, the movant "need not show that [the expert] received direct information about its current litigation strategy." *Broadcom*, 2010 WL 11465478, at *3. "The critical question is whether [the expert] received confidential information <u>that is relevant</u> to the current . . . litigation during his lengthy employment with [the movant]." *Id.* (emphasis in original) (internal quotations omitted).

"In addition to these two factors, the Court also should consider whether disqualification would be fair to the affected party and would promote the integrity of the legal process." *Hewlett-Packard*, 330 F. Supp. 2d at 1093. To do so, "courts balance the policy objectives that favor

disqualification—ensuring fairness and preventing conflicts of interest—against policies militating against disqualification, including guaranteeing that parties have access to witnesses who possess specialized knowledge and allowing witnesses to pursue their professional callings." *Oracle*, 2012 WL 2244305, at *5 (citing *Space Sys.*, 1995 WL 686369, at *2).

IV.  **ARGUMENT**

    A. **Dr. Libert Should Be Disqualified Because He Acquired Confidential Information Relevant to This Lawsuit Through His Confidential Relationship with Google.**

        1. *Confidential Relationship*

Dr. Libert had a confidential relationship with Google. His work at Google was governed by an employment agreement in which he expressly promised not to disclose Google's confidential information, including after his employment's termination. Flynn Decl., ¶ 4. In addition, Dr. Libert worked closely with Google in-house counsel on sensitive privacy matters and was often a party to privileged communications. It was thus wholly reasonable for Google "to expect that any communications" it had with Dr. Libert during his employment "would be maintained in confidence." *See Staley*, 2022 WL 3013210, at *2; *Packet Intelligence LLC v. Juniper Networks, Inc.*, 2020 WL 4001460 (N.D. Cal. July 15, 2020), at *3 (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1093) (finding "no real dispute" about the existence of a confidential relationship in the face of a relevant "formal agreement").

        2. *Confidential Information relevant to this Lawsuit*

"This court has repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert because such an expert is substantially likely to inflict unfair prejudices which the former employer cannot realistically discover or guard against." *Corley*, 2016 WL 3421402, at *2. This is true even where "the expert may not think" the confidential information acquired during his or her employment with the adverse party "will be relevant." *Pellerin*, 2012 WL 112539 at *2. Simply possessing confidential information relevant to the case warrants disqualification because "the danger" remains that the expert might use that information, even if "inadvertently." *Id.* at *3. An expert cannot be expected to "parse his knowledge of [the former

employer's] confidential information to only rely on what's provided to him" in his capacity as an expert witness. *Id.* After all, "the human brain does not compartmentalize information in that manner." *Id.*

Here, as explained above, Dr. Libert received confidential and privileged information from Google during his employment, so the sole question is whether any of that information is relevant to the issues in this case. The answer is plainly yes.

Plaintiffs accuse Google of "secretly" embedding its cookies' source code into healthcare-related websites. Consol. Compl. ¶ 4. By his own account of his work for Google, Dr. Libert "wrote the policy which governs all the Alphabet/Google-owned cookies on the planet." Santacana Decl., Ex. D. Plaintiffs further allege that "Google designs some of their cookies to be disguised" as if they belong to healthcare-related websites when in reality they "belong to Google, an unknown third party," and that Google "disguises" its analytics cookies in order to "circumvent security measures that would prevent third-party tracking via third-party cookies." Consol. Compl. ¶¶ 52–57. Relatedly, Dr. Libert's responsibilities as a Google employee included—again, in his own words—"authoring and enforcing the internal cookie and web storage policy" and "designing Google-scale cookie compliance architectures" to "process [a] huge percentage of all cookies on earth"—*i.e.*, Google's cookies. Santacana Decl., Ex D; *see also* Flynn Decl, ¶¶ 12–13 (describing Dr. Libert's responsibilities over "the development of internal policies on cookies and web storage"); *id.* ¶¶ 8–9 (describing Dr. Libert's leadership in designing the "essential-only mode" infrastructure to comply with regulatory obligations).

Plaintiffs further allege that Google violated various privacy regulations and misrepresented its compliance both with these regulations and with its own policies. Consol. Compl. ¶¶ 233, 461–531. As relevant to this allegation, Dr. Libert spent nearly two years leading technical teams that partnered with Google's attorneys to investigate, assess, and ensure Google's compliance with privacy regulations. *E.g.*, Flynn Dec., ¶¶ 6, 8–9. He participated in the internal process by which Google responds to regulatory investigations, some of which investigations (along with Google's internal process itself) remain confidential. *Id.* ¶¶ 8–11. Plaintiffs allege that

Google violates its own policies; Dr. Libert wrote Google's internal policies on cookies and cookie-like web storage objects, and audited Google cookie compliance with those policies. *Id.* ¶ 9.

Finally, as relevant to Plaintiffs' allegations regarding the sincerity of Google's privacy commitments, Dr. Libert "led privacy trainings," including regarding the company's framework for analyzing its responsibilities under various privacy regulations, as well as under its own policies. *Id.* ¶ 15. He contributed to a number of other internal privacy initiatives as well. *Id.* ¶ 16. In view of all these facts, it is clear that Dr. Libert received confidential information from Google that is relevant to the issues in this case.

### B. Dr. Libert's Testimony on Behalf of Plaintiffs is Fundamentally Unfair and Prejudicial to Google.

Courts also consider the "fundamental fairness" of disqualification, "especially any prejudice that might occur if an expert is or is not disqualified." *Kane v. Chobani, Inc.*, 2013 WL 3991107, at *7 (N.D. Cal. Aug. 2, 2013). Courts favor disqualification where it helps "achieve the goal of protecting the integrity of the adversary process," but they also consider the countervailing concerns of whether disqualification may "unduly burden[]" the opposing party, such as by hampering its access to witnesses with "specialized knowledge" "at late stages in the litigation," or impinge on the right of "witnesses to pursue their professional callings." *Id.* at *7. These factors favor disqualification here.

Plaintiffs would not be "unduly burdened" by Dr. Libert's disqualification. *See id.* This case is still in its infancy, so Plaintiffs have ample time to hire another expert. To the extent Plaintiffs might contend Dr. Libert's value is unique, it could only be because he is a Google insider. Nor would disqualification unreasonably limit Dr. Libert's ability to "pursue [his] professional callings." *See id.* He still would be free to serve as an expert witness in any case where Google is not a party, or to apply his expertise outside the litigation context.

In contrast, allowing Plaintiffs to offer Dr. Libert as an expert witness would cause Google severe prejudice. Dr. Libert's fresh and extensive knowledge of Google's confidential and

privileged information relevant to issues in this lawsuit (including information that may inform Google's legal strategy) creates a risk of disclosure, intentional or not. This risk ratchets up the stakes of this litigation for Google and hands corresponding leverage to Plaintiffs.

Public policy likewise favors disqualification here. The adversary system would be undermined by allowing employees entrusted with confidential information to turn around and wield it against their employers. Such double-agency is anathema to the integrity of the judicial system and, ironically, to the very notion of informational security that Dr. Libert purports to champion. Further, given how closely Dr. Libert's experience at Google relates to the substance of Plaintiffs' claims, his participation in this lawsuit would invite a jury to infer that those claims are meritorious because they are supported by a Google insider. In other words, the nature of Dr. Libert's experience at Google creates a risk that his testimony could be accorded undue weight or considered for a purpose beyond that for which it is purportedly offered by Plaintiffs. No prophylactic short of disqualification will suffice.

## V. CONCLUSION

For all of the foregoing reasons, Google respectfully requests that the Court grant its motion to disqualify Dr. Libert.

Dated:  August 3, 2023                    WILLKIE FARR & GALLAGHER LLP

                                          By:     /s/ Simona Agnolucci

                                          BENEDICT HUR
                                          SIMONA AGNOLUCCI
                                          EDUARDO SANTACANA
                                          TIFFANY LIN

                                              *Attorneys for Defendant Google LLC*