**SIMMONS HANLY CONROY, LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
jaybarnes@simmonsfirm.com
atruong@simmonsfirm.com
ejohnson@simmonsfirm.com

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
Nicole Ramirez, State Bar No. 279017
Mahnam Ghorbani, State Bar No. 345360
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
koncius@kiesel.law
ramirez@kiesel.law
ghorbani@kiesel.law

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (admitted *pro hac vice*)
The Helmsley Building
230 Park Ave, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Michael W. Sobol, State Bar. No. 194857
Melissa Gardner, State Bar No. 289096
Jallé H. Dafa, State Bar No. 290637
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
msobol@lchb.com
mgardner@lchb.com

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, *et al.*, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>               Defendant.<br><br>**This document applies to: All Actions** | Case No.: 3:23-cv-02431-VC<br>Consolidated with: 3:23-cv-02343-VC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO GOOGLE'S MOTION TO DISQUALIFY PLAINTIFFS' EXPERT DR. TIMOTHY LIBERT**<br><br>Judge:  Hon. Vince Chhabria<br>Date:    September 21, 2023<br>Time:    10:00 AM<br>Ctrm:  4, 17th Floor |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................... 1

II.    RELEVANT BACKGROUND ................................................................. 3

     A.     Dr. Libert's Work on Behalf of Plaintiffs Is Narrow in Scope. ............................. 3

     B.     Google Challenges Dr. Libert's Service as an Expert in the Abstract, but not his Opinions or Analysis. ....................................................................... 4

     C.     Google's Gamesmanship Should not Be Rewarded. ............................................. 5

III.   ARGUMENT ............................................................................................ 6

     A.     Legal Standard ....................................................................................... 6

     B.     Google Fails to Meet Its Burden of Proof of Disclosures of Confidential Information Related to this Litigation. .......................... 7

     C.     Google Fails to Meet Its Burden of Proof of Disclosures of Confidential Information Related to Dr. Libert's Limited Declaration. ................... 9

     D.     Fundamental Fairness and Prejudice Weigh in Favor of Denying Google's Motion to Disqualify. ......................................................... 10

IV.    CONCLUSION ......................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Chamberlain Grp., Inc. v. Interlogix, Inc.*
2002 WL 653893 (N.D. Ill. Apr. 19, 2002) .............................................................................. 10

*City of Roseville Employees' Ret. Sys. v. Apple Inc.*
2022 WL 3083000 (N.D. Cal. Aug. 3, 2022) ............................................................................ 8

*Dolby Labs. Licensing Corp. v. Adobe Inc.*
402 F. Supp. 3d 855 (N.D. Cal. 2019) ...................................................................................... 8

*Dolby Labs. v. Lucent Techs.*
2003 WL 25686536 (N.D. Cal. Mar. 17, 2003) ........................................................................ 8

*Federal Trade Comm. v. Innovative Designs, Inc.*
2018 WL 1334830 (W.D. Pa. Mar. 15, 2018) ........................................................................ 12

*Hewlett-Packard Co. v. EMC Corp.*
330 F. Supp. 2d 1087 (N.D. Cal. 2004) ......................................................................... 6, 7, 11

*In re Bard IVC Filters Prod. Liab. Litig.*
2017 WL 6603467 (D. Ariz. Dec. 21, 2017) ........................................................................ 8, 9

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*
806 F.3d 125 (3d Cir. 2015) ...................................................................................................... 9

*In re Grand Jury*
23 F.4th 1088 (9th Cir. 2021) ................................................................................................... 8

*In re Incretin-Based Therapies Prod. Liab. Litig.*
721 Fed. Appx. 580 (9th Cir. 2017) ..................................................................................... 8, 10

*Oracle Corp. v. DrugLogic, Inc.*
2012 WL 2244305 (N.D. Cal. Jun. 15, 2012) ........................................................................... 7

*Paul By & Through Paul v. Rawlings Sporting Goods Co.*
123 F.R.D. 271 (S.D. Ohio 1988) ............................................................................................. 9

*Return Mail, Inc. v. U.S.*
107 Fed. Cl. 459 (2012) ............................................................................................................ 9

I.   **INTRODUCTION**

Google moves to disqualify Plaintiffs' expert Dr. Timothy Libert and strike his previously submitted expert declaration (Dkts. 42-2, 44) on the sole basis that "Dr. Libert's knowledge of confidential information relevant to this case creates a constant risk that such information could be disclosed to Plaintiffs[.]" Dkt. 46 at 1, Motion to Disqualify ("Motion"). Specifically, Google claims Dr. Libert's past work on investigations related to Google cookies, the policy that governs Alphabet/Google-owned cookies, and Google privacy trainings disqualify his limited testimony here, because this previous work concerned "confidential information relevant to this case." *Id.* at 5-7. Google is mistaken.

As explained herein (and as Plaintiffs previously explained to Google), there is no such risk at all, much less a "constant risk," because Dr. Libert's work on this case has concluded. *See* Truong Decl. at ¶¶ 6-8. Nor is there any risk that Dr. Libert violated his confidentiality obligations to Google for the declaration he has already provided. Dr. Libert's past work for Google *has no relevance whatsoever* to the discrete and targeted declaration supporting Plaintiffs' Preliminary Injunction ("PI") Motion (Dkt. 42). This is because Dr. Libert's work relied entirely on web-crawling technology that he began developing *six years prior to his employment with Google* to analyze over 6,000 non-Google web properties and identify which of them contained Google Source Code. *See* Dkt. 44, Libert Corrected Decl. ISO Mot. for Prelim. Inj., at ¶ 20. Dr. Libert's testimony identifies the presence of Google cookies on these web properties but offers no opinions or analysis as to Google's general use of cookies, nor whether Google's use of those cookies violate any policies, privacy requirements, or matters of regulatory compliance. *See* Libert Corrected Decl.

Plaintiffs rely on Dr. Libert's declaration for the following core facts in support of their PI Motion:

1.   Google Source Code, as that term is defined in Plaintiffs' Consolidated Class Action Complaint ("CCAC"; Dkt. 41 at 2 n.3), is embedded on thousands of Health Care Provider web properties in the United States; and

2.      Google Source Code was present on 87% of the 6,046 Health Care Provider web properties in the United States analyzed by Plaintiffs.

It is not clear that the facts on which Dr. Libert opines are in dispute.

What is clear is that the purported risks discussed in Google's Motion do not account for the current circumstances before the Court. Google fails to make the requisite showing that "confidential information" was disclosed and does not even attempt to explain how Dr. Libert's knowledge about cookies and privacy trainings relates to his opinions. Indeed, Google's only discussion of Dr. Libert's declaration, which is the only opinion he intends to offer to the Court, pertains to Dr. Libert's *curriculum vitae*—not his analysis. *See* Dkt. 46 at 1, 3. Google seeks legal support for its arguments in "general principles" applied in this District's case law, but stretches those principles beyond recognition. And Google ignores the prejudice to Plaintiffs—a fundamental part of any disqualification analysis—that would result if its Motion were granted. Google asserts that because Dr. Libert previously worked on issues arguably relevant to the case as a whole, he *may* have learned "confidential information" that he *could* rely upon that *might* prejudice Google at some later stage of the litigation, and so must not be permitted to offer *any* opinion to the Court, even for the limited purposes he has done so. In other words, Google seeks drastic relief based on theoretical risks that have not, will not, and cannot materialize.

Upon reviewing Google's disqualification motion, filed simultaneously with other briefing in violation of this Court's standing order ¶ 39, it appeared to Plaintiffs that Google misunderstood the scope of Dr. Libert's retention for this case. As such, Plaintiffs' counsel clarified the scope to Google's counsel by email on August 14. *See* Truong Decl. at ¶ 17. When the parties conferred regarding filing deadlines for the Motion, they also agreed to confer about whether the parties could resolve this issue without burdening the Court. Dkt. 56 at 2. At that meeting, Plaintiffs proposed a stipulation and subsequently drafted one whereby the Libert declaration and this Motion both could be withdrawn if the parties would stipulate to the two facts referenced above (for purposes of the Preliminary Injunction Motion only). *See* Truong Decl. at ¶ 21. Google did not agree, suggesting that Plaintiffs simply withdraw the competent evidence submitted in support of their motion, *and* agree to different facts favorable to Google instead. *See id.* at ¶ 22.

Google does not and cannot make the requisite showing of prejudice to Google, or any risk to these proceedings so as to obtain the drastic relief that it seeks. Granting that relief would result in immediate prejudice to Plaintiffs. Retaining another expert for the Court's hearing on the PI Motion would upset the case schedule and needlessly delay relief to Plaintiffs and the putative Class. In contrast, allowing Dr. Libert's limited opinions in support of the PI Motion would not prejudice Google, as there is no assertion that Dr. Libert's *already concluded expert work* is related in any way to his prior employment. For these reasons, and as set forth more fully below, Google's Motion should be denied.

## II.   RELEVANT BACKGROUND

Dr. Libert is a leading expert in the field of data forensics, Internet tracking technology and network transmissions, and data privacy. *See* Dkts. 42-3, 46-3, 46-5. His career spans over 24 years, during which he has held academic positions, distinguished fellowships, and published numerous peer reviewed articles. *See* Dkt. 42-3. Notably, Dr. Libert has published over a dozen data-privacy works including peer reviewed articles from 2015 related to data-privacy and health information, served as a lecturer and panelist on data-privacy, presented at various data-privacy conferences and seminars, and taught a course in data-privacy at Carnegie Mellon. *See id.* at p. 2-11.

As an outgrowth of his work, in 2015 (eight years prior to this litigation), Dr. Libert developed his webXray technology, which allows for effective and efficient analyses of large datasets. *See* Dkt. 44 at ¶ 20. This technology demonstrates the feasibility of identifying Google Source Code on health care provider web properties in the U.S. Specifically, in this case, Dr. Libert used his proprietary webXray technology to scan over 6,000 health care provider web providers. *See* Dkt. 44 at ¶¶ 16-19.

### A.   Dr. Libert's Work on Behalf of Plaintiffs Is Narrow in Scope.

Plaintiffs retained Dr. Libert to analyze large-scale web properties. *See* Dkt. 44 at ¶¶ 8, 11. Specifically, and as noted above, Dr. Libert was engaged to utilize his webXray technology to review over 6,000 health care provider web properties and determine if Google Source Code is present anywhere on these properties. *See id.* at ¶ 8. As a secondary step, Dr. Libert utilized

webXray to conduct an in-depth analysis of the site maps (*i.e.,* all the web pages within any one web property) for three sample health care providers – Kaiser Permanente, Gundersen Health, and MD Mercy. *See id.* at ¶ 11. The result of his analysis is an eleven-page declaration that provides data, methodology and conclusions on only these limited issues. *See id.*

Dr. Libert's expert work concluded in June 2023, when he completed his declaration, which contains all of the expert testimony Dr. Libert will offer in this action. *See* Truong Decl. at ¶¶ 5-8. Plaintiffs do not intend for Dr. Libert to serve as Plaintiffs' expert with respect to any other areas or issues in this litigation. *See* Truong Decl. at ¶ 7. He has neither requested, nor received access to, the confidential documents and information that have been disclosed in the course of briefing on Plaintiffs' PI Motion. *See id.* at ¶ 8.

**B.    Google Challenges Dr. Libert's Service as an Expert in the Abstract, but not his Opinions or Analysis.**

On August 3, 2023, Google opposed Plaintiffs' PI Motion. *See* Dkt. 48. Google's opposition made no substantive challenges to Dr. Libert's core conclusions*, i.e.,* that Google Source Code was present on approximately 6,000 web properties. To the contrary, Google argued that Dr. Libert should have done more work. *See* Dkt. 48 at 11. Specifically, Google argued that Dr. Libert should have analyzed whether Google received protected health information and whether the data was used for anything other than the Health Care Providers' own analytics. *See id.; see also* Dkt. 48-39, Zervas Decl., at ¶ 124 (asserting Dr. Libert's sample of 6,046 not sufficiently inclusive of all Health Care Providers in U.S.), ¶ 125 (asserting Dr. Libert should have "offer[ed] [a] feasible explanation for how Google (or any other third party provide) could use data from such transmissions to access health information about a specific individual"), ¶ 127 (asserting Dr. Libert should have analyzed "the many controls that users have to limit data transmissions during their browsing session.").

The only citations to Dr. Libert's declaration contained in Google's Motion to Disqualify are to Dr. Libert's *curriculum vitae*. *See* Dkt. 46. The Motion never addresses the actual substance of Dr. Libert's declaration.

## C.     Google's Gamesmanship Should not Be Rewarded.

Notwithstanding the lack of any imminent or potential prejudice to Google from Dr. Libert's limited opinions, and the undisputed fact that Dr. Libert's declaration is unrelated to any prior work with Google, Google moves to disqualify Dr. Libert.

Google asserts that Plaintiffs "rebuffed" its request to withdraw Dr. Libert as an expert. *See* Dkt. 46 at 7-8. This is inaccurate. Google received Dr. Libert's declaration when Plaintiffs filed it in support of their initial Motion for PI on June 13, 2023. *See* Dkt. 20. On June 23, 2023, Google informed Plaintiffs that it was "investigating" the circumstances of Dr. Libert's prior employment with Google and assessing whether it would seek disqualification. *See* Truong Decl. at ¶ 9. This was presented as a courtesy notice about an ongoing investigation, not a demand for an immediate withdrawal of Dr. Libert as an expert. *See id.*; *see also* Dkt. 46-2, Santacana Decl. (devoid of any assertion that request for withdrawal of Dr. Libert was made by Google and rebuffed by Plaintiffs). Google made similar representations to the Court in the Parties' Joint Case Management Conference Statement filed that same day. *See* Dkt. 33 at 5 ("Google's Opposition to the motion for preliminary injunction may also include a motion to disqualify one of Plaintiff's experts"). Plaintiffs explained to Google at the time that Dr. Libert's work in this case had nothing to do with his past employment at Google. *See* Truong Decl. at ¶ 9.

On June 30, 2023, the parties appeared for a case management conference before the Court, during which Google discussed its need for an extended period of time to brief its opposition to Plaintiffs' PI Motion and Google's Motion to Dismiss. *See* June 30, 2023 Hr'g Tr. at 18:4; 19:16-19; 23:11-16. At the conclusion of that hearing, the Court issued a briefing schedule that set a July 13, 2023 deadline for Plaintiffs to refile their PI Motion. *See* Dkt. 35. At no point during the case management conference, or any point thereafter, did Google indicate that Google had concluded its investigation into Dr. Libert's employment and determined that disqualification was warranted, or seek leave to file a simultaneous separate brief. *See* Truong Decl. at ¶¶ 11, 13.

On July 13, 2023, Plaintiffs filed Dr. Libert's declaration in support of their PI Motion. *See* Dkt. 42-2, 44. Plaintiffs did not hear from Google regarding the results of its investigation, even after the filing of Dr. Libert's declaration. *See* Truong Decl. at ¶ 15.

It was not until three weeks later, on August 3, 2023, after Plaintiffs had submitted (and could not alter) their evidence in support of the PI Motion, Google filed its Motion to Disqualify. In doing so, it appeared that Google was operating under the mistaken belief that Dr. Libert's involvement in this action is ongoing. *See* Truong Decl. at ¶¶ 16-17. Plaintiffs sought to clarify this misapprehension and resolve Google's disqualification motion between the parties so as to avoid burdening the Court and prejudicing Plaintiffs by withdrawing their evidentiary support for their Motion for PI. *See id* at ¶ 20. At the meet and confer call on August 17, 2023, Google rejected Plaintiffs' attempts to do so, maintaining that it seeks to exclude Dr. Libert from providing any testimony in this case at all, even though his completed work is wholly unrelated to any knowledge he acquired from Google during his prior employment. *See id.* at ¶¶ 18-19. On that same call, Plaintiffs further noted that since Google took no issue with the core findings in Dr. Libert's declaration, it may be possible to resolve the Parties positions by way of stipulation. *See id.* at ¶ 20. Google rejected the proposed stipulation that would have negated the need for these filings. *See id.* at ¶ 22. Google's gamesmanship is clear from the timing of its Motion, the content contained therein, Google's decision not to inform Plaintiffs about the outcome of its investigation at an earlier time, and Google's refusal to enter into a stipulation that would have eliminated any need for the Court to rule on Google's disqualification motion.

## III.   <u>ARGUMENT</u>

### A.   **Legal Standard**

While federal courts have the inherent power to disqualify expert witnesses, "disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). Explaining that there is no "brightline rule," *Hewlett-Packard* identified two "general principles" that Courts consider for disqualification based on a prior relationship with an adversary: (1) the adversary had a confidential relationship with the expert; and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation. *See id.* at 1093. "[I]f only one of the two factors is present, disqualification is likely inappropriate." *Id.* In addition to the above two-principles, courts should also be guided by whether disqualification would be fair

to the affected party and would promote the integrity of the legal process, *i.e.,* fundamental fairness and prejudice. *See id.* at 1093, 1094-96. This latter analysis includes consideration of policies militating against disqualification, such as guaranteeing that parties have access to witnesses who possess specialized knowledge and allowing witnesses to pursue their professional calling. *See id.* at 1094-96; *see also Oracle Corp. v. DrugLogic, Inc.*, 2012 WL 2244305, at *5 (N.D. Cal. Jun. 15, 2012).

The party seeking disqualification bears the burden of proof with respect to each of these factors, and it "may not meet its burden with mere conclusory or *ipse dixit* assertions." *See Hewlett-Packard Co.*, 330 F. Supp. 2d at 1096.

**B.    Google Fails to Meet Its Burden of Proof of Disclosures of Confidential Information Related to this Litigation.**

In order to obtain the drastic relief sought here (to the extent it is not *already* mooted by Plaintiffs' clarification that Dr. Libert will not be performing further expert work on the case), Google must point to "specific and unambiguous disclosures that if revealed would prejudice [Google]." *Hewlett-Packard*, 330 F. Supp. 2d at 1094. Google submits the declaration of Kristie Chon Flynn in an effort to make that showing, but fails to establish that Google disclosed "confidential information" to Dr. Libert relevant to this litigation, let alone to Dr. Libert's actual work on this case. Dkt. 46-1.

The Flynn declaration contains only vague and broad assertions regarding Dr. Libert's work with Google cookies and his communications with in-house counsel and regulators. *See, e.g.,* Dkt. 46-1 at ¶ 6 (Google's CS&E team "necessitates handling highly sensitive and often privileged information about Google's regulatory compliance…"); ¶ 7 (Dr. Libert "became one of the primary members of the team assisting with Google's cookie compliance and governance efforts"); ¶ 8 ("Dr. Libert…assumed responsibility for aiding our in-house regulatory lawyers in addressing governmental investigations into cookies" and "often worked under the guidance of in-house counsel…"); ¶ 10 ("Dr. Libert responded to follow-up inquiries from legal counsel regarding other cookie-related investigations, some of which remain confidential"); ¶ 15 ("Dr. Libert also conducted privacy trainings, with input from in-house counsel…"); and ¶ 16 ("He frequently

engaged with Google's in-house lawyers on regulatory topics and subscribed to email alerts for terms such as 'Google DOJ' and 'Google regulator'").

These general references to regulatory emails, communications with in-house counsel, privacy trainings, and confidential investigations do not sufficiently identify "specific and unambiguous" *disclosures* to support disqualification, particularly not in the limited context of Dr. Libert's actual work on this case. Google's motion may be denied on this basis alone. *See In re Incretin-Based Therapies Prods. Liab. Litig.*, 721 Fed. Appx. 580, 584 (9th Cir. 2017) (finding abuse of discretion in disqualifying expert where moving party did not show "specific and unambiguous" disclosures of confidential information); *Dolby Labs. v. Lucent Techs.*, 2003 WL 25686536 (N.D. Cal. Mar. 17, 2003) (noting "[t]hese communications are described too generally for the Court to make a determination that disqualification of [the expert] is appropriate…[The movant] has not set forth, *in camera* or otherwise, *specific* confidential information passed [to the expert] which is relevant to the current litigation"); *see also In re Bard IVC Filters Prod. Liab. Litig.*, 2017 WL 6603467, at *4 (D. Ariz. Dec. 21, 2017) (stating "[i]f Defendants were concerned about publicly disclosing the very information they seek to protect, they could have proposed an *in camera* submission, but they have not done so").

The mere fact that Dr. Libert communicated with in-house counsel and regulators does not render those communications *per se* confidential. *See City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *9-11 (N.D. Cal. Aug. 3, 2022) (noting corporation's compliance with regulatory requirements and corporate policy are neither *per se* legal advice nor *per se* business advice but, instead, their privileged status depend on the "content and context" of communications); *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866-68 (N.D. Cal. 2019) (holding communications with in-house counsel do not enjoy presumption of privilege given unique involvement of in-house counsel in "business decisions"); *see also In re Grand Jury*, 23 F.4th 1088, 1093-94 (9th Cir. 2022) (explaining "primary purpose" test for determining privilege of communications with in-house counsel, which safeguards against "perverse incentives for companies to add layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any future litigation").

Likewise, the fact that that Dr. Libert worked on Google cookies (itself a broad and amorphous field) is not confidential. The existence and fact of Google cookies, and their tracking capabilities, constitute public information. *See, e.g., In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015) (analyzing sufficiency of pleadings that openly discuss Google cookies and their related tracking capabilities); Dkt. 48-19 (supporting document submitted by Google in opposition to Plaintiffs' PI Motion which publicly discusses Google's "Cookies and User Identification"); Dkt. 48-20 (supporting document submitted by Google in opposition to Plaintiffs' Preliminary Injunction Motion which publicly discusses "How Google Uses Cookies"); Dkt. 48-26 (technical appendix submitted by Google's expert Dr. Zervas which openly discusses Google's cookies and tracking abilities).

Google's general assertions do not prove that Dr. Libert received confidential information that warrant the exclusion of his work in this case, let alone that the prior Google work could or did impact his limited opinions in any way.

### C.    Google Fails to Meet Its Burden of Proof of Disclosures of Confidential Information Related to Dr. Libert's Limited Declaration.

Even accepting the broad assertions of confidentiality as true, Google does not contend that Dr. Libert's prior work with Google is related to or reflected in Dr. Libert's declaration. Instead, Google focuses on theoretical conflicts and improprieties that *may* occur if he authored another, different, report (which he will not do). *See In re Bard*, 2017 WL 6603467, at *4 (noting, "[d]efendants make no effort to identify the… parts of [the] expert report that are based on Bard confidences"); *Return Mail, Inc. v. U.S.*, 107 Fed. Cl. 459, 463 (2012) (the confidential or privileged information must be relevant in context of expert's "expertise and expert opinion, as opposed to matters for which he could be a fact witness, as it is his presumptive expert opinion that is the subject of the disqualification motion"); *Paul By & Through Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 281 (S.D. Ohio 1988) ("[e]ven if I were to…assume that additional matters covered by the work product privilege were communicated [to the expert], the fact that none of those matters appears to have leaked into [the expert's] report or appears to have affected in any significant way his conclusions about the matter at issue persuades me that any such

presumption [that confidential communications would be used to the movant's detriment] has been overcome by the specific facts of this case").

Google *never* discusses the substance of Dr. Libert's declaration and makes no showing as to how the declaration infringes on any confidential information that he received during his employment at Google. Nor could it. There is no dispute that Dr. Libert's work, limited to the analysis he conducted for the PI Motion, is based entirely on independent investigation and testing – unrelated to his Google employment – that uses technology Dr. Libert began developing six years prior to his Google employment. *See* Dkt. 44 at ¶ 8; *id.* at p. 5 n.1. Aside from confirming the presence or absence of Google Source Code on any particular web property, Dr. Libert's declaration includes no analyses, opinions, or conclusions regarding how that source code functions and whether it complies with any privacy or regulatory guidance. Simply put, Dr. Libert's prior employment with Google has no bearing on his expert work in this case at all. Thus, even if Google had met its burden to establish that Dr. Libert gained access to confidential information from Google (which it has not), any purportedly confidential information is wholly unrelated to the analysis and opinions he actually offers here. *See In re Incretin-Based Therapies Prod. Liab. Litig.*, 721 Fed. Appx at 584 (finding abuse of discretion in disqualifying expert where moving party did not show "specific and unambiguous" disclosures of confidential information and expert averred that in reaching his opinions "he did not rely on any information, confidential or otherwise[.]"); *Chamberlain Grp., Inc. v. Interlogix, Inc.*, 2002 WL 653893, at *3 (N.D. Ill. Apr. 19, 2002) ("Interlogix must establish a substantial relationship between [the expert's] purported knowledge of business information and the subject matter of [his] testimony.").

### D. Fundamental Fairness and Prejudice Weigh in Favor of Denying Google's Motion to Disqualify.

While Google fails to meet its burden at the threshold, the applicable policy considerations also weigh strongly against disqualification. Here, Courts consider the "integrity of the judicial process, avoidance of conflicts of interest, ensuring access to expert witnesses with specialized knowledge, and allowing experts to pursue their professional calling." *Hewlett Packard*, 330 F.

Supp. 2d at 1095. Google's Motion seeks to prejudice Plaintiffs, not to avoid any real or potential prejudice to Google.

*First*, Google primarily bases its Motion on arguments about *prospective* prejudice to Google should Dr. Libert be permitted to continue working on this case, arguing that Dr. Libert *will* be unable to "parse his knowledge" of "confidential information." Dkt. 46 at p. 9-10. But no compartmentalization is necessary. Dr. Libert's expert work in this case is complete, and Google makes no claims that the existing declaration is impaired by any use of confidential information.[1] Dr. Libert does not rely on – nor has Google identified any – confidential information relevant to Dr. Libert's declaration in this case. There is no prejudice to Google in allowing Dr. Libert's declaration to stand.

*Second*, disqualifying Dr. Libert would not promote the integrity of the judicial process or avoid a conflict of interest. Dr. Libert's identification of web properties that deploy Google Source Code will not impact the Court's consideration of the issues in a manner that undermines judicial integrity. Although Google claims the Court should not permit Dr. Libert to "turn around and wield" confidential information against his former employer (Dkt. 46, p. 16), there is no danger of this whatsoever. Dr. Libert's completed analysis does not leverage *any* purportedly confidential information.

*Third*, Dr. Libert's disqualification would severely prejudice Plaintiffs. Google delayed moving for disqualification until Plaintiffs had already re-filed their PI Motion. *See* Truong Decl. ¶¶ 10-16. In doing so, Google wields this procedural protection as a sword to excise an otherwise competent and unconflicted expert declaration. These tactics should not be rewarded. Google argues that Dr. Libert's value to Plaintiffs derives from his status as a purported "Google insider" (Dkt. 46 at p. 11), but this is not true, and intentionally ignores the facts. Plaintiffs engaged Dr. Libert to utilize his unique webXray technology, which Dr. Libert began developing six years before his Google employment to quickly and effectively analyze large data sets. Because Dr. Libert's webXray technology predates his work with Google, and because his analysis depends

---

[1] Any attempt to do so in Google's reply is disingenuous and should be rejected by the Court.

entirely on the use of this technology and no more, his analysis does not and cannot relate to any alleged confidential information. Plaintiffs would be incredibly challenged to find another reliable, efficient manner in which to analyze source code on 6,000 web-properties, and it would be impossible to do so in time to offer that analysis in support of the PI Motion that is scheduled for hearing on September 21, 2023.

There is simply no conflict or prejudice at issue, and Google's Motion should be denied. *See Federal Trade Comm. v. Innovative Designs, Inc.*, 2018 WL 1334830, at *9 (W.D. Pa. Mar. 15, 2018) (denying motion to disqualify noting movant "dragged its feet in bringing this motion" and "the Court does not believe that disqualification is necessary to prevent conflicts of interest or preserve judicial integrity since…his report is based entirely on discoverable and publicly-available information").

## IV.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Google's Motion to Disqualify Plaintiffs' Expert Dr. Timothy Libert.

Dated: August 24, 2023

**SIMMONS HANLY CONROY LLC**

*/s/ Jason 'Jay' Barnes*
Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
Eric Johnson (admitted *pro hac vice*)
*ejohnson@simmonsfirm.com*
An Truong (admitted *pro hac vice*)
*atruong@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: 212-784-6400
Fax: 212-213-5949

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
*clevis@lowey.com*
Amanda Fiorilla (admitted *pro hac vice*)
*afiorilla@lowey.com*
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
Nicole Ramirez, State Bar No. 279017
*ramirez@kiesel.law*
Mahnam Ghorbani, State Bar No. 345360
*ghorbani@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel.: 310-854-4444
Fax: 310-854-0812

**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
Michael W. Sobol, State Bar No. 194857
*msobol@lchb.com*
Melissa Gardner, State Bar No. 289096
*mgardner@lchb.com*
Jallé H. Dafa, State Bar No. 290637
*jdafa@lchb.com*
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: 415 956-1000
Fax: 415-956-1008

Douglas Cuthbertson (admitted *pro hac vice*)
*dcuthbertson@lchb.com*
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212 355-9500
Fax: 212-355-9592

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Hal D. Cunningham, State Bar No. 243048
*hcunningham@scott-scott.com*
Sean Russell, State Bar No. 308962
*srussell@scott-scott.com*
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508

Joseph P. Guglielmo (admitted *pro hac vice*)
*jguglielmo@scott-scott.com*
Ethan Binder (admitted *pro hac vice*)
*ebinder@scott-scott.com*
230 Park Ave., 17th Floor
New York, NY 10169

Tel.: (212) 223-6444
Fax: (212) 223-6334

*Attorneys for Plaintiffs and the Proposed Class*

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated: August 24, 2023                    *_/s/Jeffrey A. Koncius_____*

                                       Jeffrey A. Koncius