**WILLKIE FARR & GALLAGHER LLP**
BENEDICT HUR (SBN 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO SANTACANA (SBN 281668)
  esantacana@willkie.com
DAVID D. DOAK (SBN: 301319)
  ddoak@willkie.com
JOSHUA D. ANDERSON (SBN: 312836)
  jpanderson@willkie.com
TIFFANY LIN (SBN 321472)
  tlin@willkie.com
HARRIS MATEEN (SBN 335593)
  hmateen@willkie.com
NAIARA TOKER (SBN 346145)
  ntoker@willkie.com
ZOE PACKMAN (SBN 347453)
  zpackman@willkie.com
One Front Street, 34th Floor
San Francisco, California 94111
Telephone:   (415) 858-7400
Facsimile:   (415) 858-7599

Attorneys for Defendant
**GOOGLE LLC**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 3:23-cv-02431-VC<br>(Consol. w/ 3:32-cv-02343-VC)<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFFS' EXPERT DR. TIMOTHY LIBERT**<br><br>**Date:    September 21, 2023**<br>**Time:   10:00 a.m.**<br>**Ctrm.:  4, San Francisco**<br><br>Consol. Complaint Filed: July 13, 2023 |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ...................................................................................................... 2

        A.      Dr. Libert Unquestionably Received Case-Relevant Confidential
                Information From Google ..................................................................... 2

        B.      Unable to Win Under the Applicable Standard, Plaintiffs Try to Move the
                Goalpost ................................................................................................. 6

        C.      Considerations of Fairness and Public Policy Favor Disqualification .................. 9

III.    CONCLUSION .................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bard IVC Filters Product Liability Litigation*,
  2017 WL 6603467 (D. Ariz. Dec. 21, 2017) ...................................................................3, 4, 7

*Bell N. Rsch., LLC v. ZTE Corp.*,
  2019 WL 1590472 (S.D. Cal. Apr. 12, 2019) ...........................................................................7

*Chamberlain Grp. v. Interlogix, Inc.*,
  2002 WL 653893 (N.D. Ill. Apr. 19, 2002) ..............................................................................8

*City of Roseville Employees' Ret. Sys. v. Apple Inc.*,
  2022 WL 3083000 (N.D. Cal. Aug. 3, 2022) ............................................................................5

*Corley v. Google, Inc.*,
  2016 WL 3421402 (N.D. Cal. June 22, 2016) ...........................................................................8

*Dolby Laboratories v. Lucent Technologies, Inc.*,
  2003 WL 25686536 (N.D. Cal. Mar. 17, 2003) ........................................................................4

*Dolby Labs. Licensing Corp. v. Adobe Inc.*,
  402 F. Supp. 3d 855 (N.D. Cal. 2019) ......................................................................................6

*In re Grand Jury*,
  23 F.4th 1088 (9th Cir. 2022) ...................................................................................................6

*Hewlett-Packard v. EMC Corp.*,
  330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004) ..........................................................................3

*In re Incretin-Based Therapies Products Liabilities Litigation*,
  721 F. App'x 580 (9th Cir. 2017) .............................................................................................3

*Kane v. Chobani*,
  2013 WL 3991107 (N.D. Cal. Aug. 2, 2013) ............................................................................9

*McCoy v. DePuy Orthopoedics, Inc.*,
  2023 WL 4551081 (S.D. Cal. July 14, 2023) ...........................................................................6

*Packet Intelligence LLC v. Juniper Networks Inc.*,
  2020 WL 4001460 (N.D. Cal. July 15, 2020).................................................................4, 5, 8, 10

*Paul By & Through Paul v. Rawlings Sporting Goods*,
  123 F.R.D. 271 (S.D. Ohio 1988) .........................................................................................7, 8

*Return Mail, Inc. v. United States*,
  107 Fed. Cl. 459 (2012) .............................................................................................7

*Space Sys./Loral v. Martin Marietta Corp.*,
  1995 WL 686369 (N.D. Cal. Nov. 15, 1995) ...........................................................8

*Staley v. Gilead Sciences, Inc.*,
  2022 WL 3013120 (N.D. Cal. July 29, 2022)................................................1, 6, 8

*Tabaian v. Intel Corp.*,
  2018 WL 4566257 (D. Or. Sept. 22, 2018) ...........................................................4

**Statutes**

HIPAA .............................................................................................................................5

## I.   <u>INTRODUCTION</u>

Plaintiffs' expert Dr. Timothy Libert should be disqualified.   Until just weeks before signing his declaration in support of Plaintiffs' motion for a preliminary injunction, he was employed as a Staff Privacy Engineer by Google, where he specialized in cookie-compliance issues and received confidential information directly relevant to this lawsuit.   The governing law makes clear that Dr. Libert's service as an expert in this matter is inappropriate.

The prospect of Dr. Libert's disqualification is a problem of Plaintiffs' own making, as they knew when they hired him that he had recently worked for Google on issues relevant to their claims.   Moreover, Google apprised Plaintiffs of its objection to Dr. Libert's participation in this case *before* they filed their pending motion for a preliminary injunction and offered Dr. Libert's declaration in support.   Whether Plaintiffs hired Dr. Libert despite his status as a Google insider or because of it is unknown.   But Plaintiffs' intent is ultimately beside the point, because disqualification is governed by a straightforward, objective standard: "courts in this district generally disqualify experts based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation."   *Staley v. Gilead Sciences, Inc.*, 2022 WL 3013120, at *3 (N.D. Cal. July 29, 2022) (quotation omitted).   This standard is met here.

In opposing disqualification, Plaintiffs argue that the Flynn Declaration, submitted in support of Google's motion, does not identify the confidential information Dr. Libert received from Google with enough specificity.   But the cases Plaintiffs cite for this argument do not support it.   Several involve instances where the expert disputed having received relevant confidential information from the adversary—often in the context of a superficial, long-ago consulting relationship.   These cases not only are distinguishable, but they also betray a critical weakness in Plaintiffs' position:   Dr. Libert himself does not deny having received relevant confidential information from Google.   In the face of Ms. Flynn's uncontroverted testimony, this is dispositive.

Unable to win under the applicable standard, Plaintiffs next try to move the goalpost, arguing that Dr. Libert should not be disqualified because, even if he received confidential

information from Google that is relevant to this lawsuit, such information is not relevant to his opinions.  For this argument, Plaintiffs lean heavily on stray remarks in unpublished, out-of-circuit cases, none of which can sustain its weight.  Courts in this Circuit consistently hold that the relevant inquiry is whether the confidential disclosures are relevant *to the case as a whole*, not just to the expert's testimony, and have rejected invitations like Plaintiffs' to narrow the standard.

The final consideration—prejudice—weighs strongly in Google's favor.  Dr. Libert's involvement in the case is unfair and prejudicial to Google for all the reasons set forth in Google's motion. (*See* Dkt. 46, at 11–12.)  Given that Plaintiffs have known of Dr. Libert's conflict at least since hiring him, their claim that they will suffer prejudice if he is disqualified now should not inspire sympathy.  Plaintiffs have repeatedly refused to withdraw Dr. Libert and substitute another expert in his place, including in the months since Google first raised its objection, even when convenient opportunities to do so arose.  Their prejudice argument rings hollow.

## II.   **ARGUMENT**

### A.   **Dr. Libert Unquestionably Received Case-Relevant Confidential Information**

Plaintiffs argue that, despite Dr. Libert's role at Google, Google must point to "specific and unambiguous disclosures that if revealed would prejudice [Google]," and that "the declaration of Kristie Chon Flynn . . . fails to establish that Google disclosed 'confidential information' to Dr. Libert relevant to this litigation" because it "contains only vague and broad assertions regarding Dr. Libert's work with Google cookies and his communications with in-house counsel and regulators" and does not cite any specific documents. (Dkt. 59, at 7.)  Their argument is wrong for two reasons.  *First*, Plaintiffs incorrectly suggest that the legal standard requires the confidential information to be identified by specific documents, whereas it in fact requires only that the party seeking disqualification show that the expert received case-relevant confidential information via a confidential relationship.  The law does not dictate how to make that showing; there are no magic words.  *Second*, Ms. Flynn's declaration unquestionably satisfies this standard.

First, as to the legal standard, none of Plaintiffs' cases stands for the proposition that a party must point to particular confidential documents that the expert received or provide any information beyond what Ms. Flynn has provided here.  Nor would such a requirement make sense, given that the very purpose of a disqualification motion is to protect confidential information.  Plaintiffs cite *Hewlett-Packard v. EMC Corp.*'s statement that the party seeking disqualification "should point to specific and unambiguous disclosures that if revealed would prejudice the party."  330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004).  But there, the court addressed the need for specificity and unambiguity under vastly different circumstances.  Unlike Dr. Libert— who has not disputed that he received relevant confidential information—the expert in *Hewlett-Packard* submitted a declaration disputing this fact.  *Id.* at 1096–97.  This required the court to evaluate the expert's and the movant's competing accounts of their prior relationship.  *Id.* at 1092.  In doing so, the court noted that there was "no evidence that [the expert] was paid any fees other than for his initial four hours of work" in which he spent "three hours reading six published patents and just one hour (about ten minutes per patent) discussing his impressions of the patents with [the movant's] counsel."  Although the movant "represent[ed] that it offered [the expert] information with respect to its litigation strategy" during this one-hour discussion, it "offered neither specific details of such discussion nor evidence contradicting [the expert's] version of the events."  *Id.* at 1097.  It was in this dissimilar context that the court criticized the movant's lack of specificity in describing its purported confidential disclosures.  Here, Ms. Flynn has testified that Dr. Libert received relevant confidential information during his nearly two years of employment with Google.  She has explained the information's subject matter and detailed the context in which he received it.  This is more than enough, especially given Dr. Libert's silence in response.

The other cases cited by Plaintiffs are equally distinguishable.  In *In re Incretin-Based Therapies*, the movant failed to "submit testimony or a declaration of anyone . . . who could attest to whether or how any information provided to [the expert] was relevant to the current litigation" and even conceded that the expert's "exposure to confidential information could not be 'entirely documented.'"  721 F. App'x 580, 584 (9th Cir. 2017).  Similarly, in *In re Bard IVC Filters*, the

court criticized the movant for having "provide[d] no declarations" from any person who might have shared confidential information with the expert (who had merely consulted for the movant nine years earlier), even though such people were "still involved in this litigation."  2017 WL 6603467, at *4 (D. Ariz. Dec. 21, 2017).  The movant also "made no effort to identify the confidential information [the expert] received," unlike here.  *See id.*

The facts in *Dolby Laboratories v. Lucent Technologies* are vastly different from those here as well.  *See* 2003 WL 25686536 (N.D. Cal. Mar. 17, 2003).  There, the expert had worked for the movant's corporate predecessor "for one year over a decade ago," and by the movant's own admission, "the value of [the confidential] information" that "could have passed to [him]" was "minimal." *Id.* at *2.  The court expressed concern that the movant asked it to "infer from a general description of the communications at issue over 12 years ago that confidential, relevant information must have been revealed," admonishing that "[d]isqualification cannot be premised on mere conjecture." *Id.*  Google offers no conjecture here—the Flynn Declaration details the confidential information Dr. Libert received during his nearly two years of very recent employment with Google.[1]  And Ms. Flynn, who reviewed the Consolidated Class Action Complaint, concluded that "while he worked at Google, Dr. Libert received confidential and privileged information directly relevant to Plaintiffs' allegations." (Dkt. 46-1 ¶ 5.)

Second, Google has met its burden because it has shown, with uncontroverted evidence, that Dr. Libert received confidential information from Google that is relevant to this case.  Ms. Flynn's four-page declaration explains in detail the nature of Dr. Libert's role at Google, the sensitivity of the matters he handled, the specific assignments he worked on, and why they were relevant to this litigation.  (Dkt. 46-1 ¶¶ 4–16.)  She identifies the Google product about which Dr.

---

[1] Although Plaintiffs quote *Dolby* and *In re Bard* for the fact that the movants in those cases did not submit material for review in camera, neither case devotes more than a stray remark to that detail nor suggests that such submissions would have changed the outcome, much less that are necessary generally; *Cf. Packet Intelligence LLC v. Juniper Networks Inc.*, 2020 WL 4001460 (N.D. Cal. July 15, 2020) (granting motion to disqualify expert based on attorney argument and declaration, without in camera review); *Tabaian v. Intel Corp.,* 2018 WL 4566257, at *6 (D. Or. Sept. 22, 2018) (disqualifying expert based on declaration by expert's prior employer).

Libert received relevant confidential information—cookies—and identifies a specific project Dr. Libert worked on that "gave him knowledge of Google's legal opinions regarding the compliance of our cookies and web storage technologies." (Dkt. 46-1 ¶ 9.)  She further explains that Dr. Libert received "confidential and privileged information regarding a number of investigations into Google's privacy practices and regarding Google's legal strategies in responding to privacy regulation and enforcement," *id.* ¶ 11; that he "developed Google's internal cookie and web storage policy" pursuant to "the legal team's interpretation of and advice regarding proper cookie storage, regulatory risk exposure, and potential legal costs associated with noncompliance," *id.* ¶ 12; that he subsequently "led an audit of each Google-owned cookie"—necessarily including cookies at issue in this case—"to determine whether any did not comply with the [cookie] policy" he had developed, *id.* ¶ 13; and that he received "input from in-house counsel" regarding "how Google navigates key privacy issues under . . . HIPAA . . . as well as under Google's own Privacy Policy," *id.* ¶ 15.  Ms. Flynn's declaration is at least as specific as the declaration in *Packet Intelligence LLC v. Juniper Networks, Inc.*, where the court found:  "Juniper provides more than conclusory statements that confidential information was disclosed.  McPhie's declaration describes the specific . . . products that Dr. Almeroth opined on . . . and . . . the amount of work that Dr. Almeroth performed for Juniper.  This evidence is sufficiently specific."[2]  2020 WL 4001460, at *3–4 (N.D. Cal. July 15, 2020).

Plaintiffs next assert that "[t]he mere fact that Dr. Libert communicated with in-house counsel and regulators does not render those communications *per se* confidential." (Dkt. 59, at 8.) Whether such communications are "*per se* confidential" is irrelevant.  Google has offered uncontroverted evidence that Dr. Libert's communications with in-house counsel and regulators were in fact confidential. (Dkt. 46-1 ¶¶ 10–11.)  Further, the cases Plaintiffs cite for this irrelevant proposition do not support it.  *See City of Roseville Employees' Ret. Sys. v. Apple Inc.*, 2022 WL

---

[2] In a side-by-side comparison, Ms. Flynn's declaration compares favorably to this declaration found to be sufficiently specific.  Ms. Flynn's declaration is similarly granular and nearly twice as long.  *See Packet Intelligence*, No. 3:19-cv-4741-WHO, at Dkt. 55-2 (N.D. Cal. May 29, 2020).

DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISQUALIFY PLAINTIFFS' EXPERT DR. TIMOTHY LIBERT
CASE NO. 3:23-cv-02431-VC

3083000 (N.D. Cal. Aug. 3, 2022) (considering the issue of privilege, not confidentiality, in the context of a motion to compel); *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855 (N.D. Cal. 2019) (same); *In re Grand Jury*, 23 F.4th 1088 (9th Cir. 2022) (same).

Plaintiffs' assertion that "the fact that that [sic] Dr. Libert worked on Google cookies . . . is not confidential" is likewise irrelevant.  (*See* Dkt. 50, at 9.)  Google is not arguing that the *description* of Dr. Libert's job is confidential; it is the *substance* of the information he received that matters.  That Dr. Libert so publicly trumpeted his status as Google's internal cookie expert makes Plaintiffs' decision to engage him all the more troubling.

### B.    Unable to Win Under the Applicable Standard, Plaintiffs Try to Move the Goalpost

Plaintiffs argue that Dr. Libert should not be disqualified because any confidential information he received from Google does not form the basis of his opinions.  This is not the relevant inquiry; "courts in this district generally disqualify experts" if "the adversary had a confidential relationship with the expert and . . . disclosed confidential information to the expert that is *relevant to the current litigation*."[3]  *Staley*, 2022 WL 3013120, at *3 (emphasis added); *see also McCoy v. DePuy Orthopoedics, Inc.*, 2023 WL 4551081, at *8 (S.D. Cal. July 14, 2023) ("The Court cannot make a determination as to whether the report itself discloses confidential information conveyed by DePuy's counsel to Dr. Li; however, that is not the relevant inquiry for purposes of the present Motion.  The . . . documents tend to evidence that attorney work-product information related to the instant litigation was shared between DePuy's counsel and Dr. Li, which

---

[3] Plaintiffs also incorrectly assert that "[t]here is no dispute that Dr. Libert's work . . . is based on independent investigation and testing – unrelated to his Google employment."  (Dkt. 59, at 10.) Google does not agree that Dr. Libert's opinions did not make use of Google's confidential information; a departing employee cannot erase that information from his mind.  For example, Dr. Libert characterizes Google's cookies as engaging in "comprehensive and indiscriminate data collection."  (Dkt. 20 ¶ 10.)  This appears to reflect a subjective judgment (that Google does not share), not any "analysis" performed with "webXray technology."  As for the "webXray technology," Dr. Libert states that it "has been in development since 2015." (Dkt. 20 ¶ 20 n.1.) This includes the period of his employment with Google.  Further, Google does not know the extent of Dr. Libert's interactions with Plaintiffs' counsel, including knowledge, information, or opinions he might have shared with them in addition to the content in his declaration.

is the relevant inquiry."); *Bell N. Rsch., LLC v. ZTE Corp.*, 2019 WL 1590472, at *7 (S.D. Cal. Apr. 12, 2019) ("[T]he relevant inquiry is whether [the expert] has access to confidential information that is relevant to the present case.").

None of Plaintiffs' cases supports the application of their novel standard here.  Using an ellipsis in their parenthetical for *In re Bard*—"(noting, '[d]efendants make no effort to identify the… parts of [the] expert report that are based on Bard confidences')"—Plaintiffs omit the standard the court actually applied.  (Dkt. 59, at 9.)  The court's complete statement was: "Defendants make no effort to identify *the confidential information Dr. Kinney received* or the parts of his expert report that are based on Bard confidences."  *In re Bard*, 2017 WL 6603467, at *4 (emphasis added).  Read in context, the court's secondary observation—that the movant also had made no effort to identify "the parts of his expert report that are based on Bard confidences"— was surplusage.  *See id.*  The court correctly recognized that "the essential factors" for disqualification are "a confidential relationship, disclosure of confidential information, and policy considerations."  *Id.*  It then determined that, on the facts presented, the "key question" was "whether the evidence shows that Dr. Kinney received confidential information from Bard."  *Id.* The sole basis for the court's decision was that it answered this "key question" in the negative.  *Id.*

*Return Mail, Inc. v. United States*, 107 Fed. Cl. 459, 467 (2012), does not support Plaintiffs' advocacy for a different standard either.  There, the Article I tribunal recognized that "where an expert was a former employee and learned of technical information that relates to the lawsuit, most courts have disqualified the expert."  *Id.* at 466.  *Return Mail* also is distinguishable because the expert "affirmatively denie[d] any knowledge of relevant confidential information."  *Id.*at 467. Dr. Libert has offered no such denial here—because he cannot.

Next, Plaintiffs cite *Paul By & Through Paul v. Rawlings Sporting Goods*, 123 F.R.D. 271, 277 (S.D. Ohio 1988)—an anachronistic, out-of-circuit decision in which the court laments, "There appears to be little case law dealing with the issue of disqualification of expert witnesses," and thus undertakes its own freewheeling analysis.  In that case, the court declined to disqualify the expert, whom the movant had briefly retained in connection with other matters, because their

confidential relationship "was both attenuated and informal, involved very little in the way of specific tasks or work product, and involved very little in the way of privileged communications." *Id.* The court's remarks also suggest that the expert—unlike Dr. Libert—never entered a confidentiality agreement. *See id.* The nature of the confidential relationship at issue there was not comparable to the relationship between Google and Dr. Libert.

Finally, Plaintiffs quote an unpublished, decades-old, out-of-circuit case for its dictum that "Interlogix must establish a substantial relationship between [the expert's] purported knowledge of business information and the subject matter of [his] testimony." (Dkt. 59, at 10 (quoting *Chamberlain Grp. v. Interlogix, Inc.*, 2002 WL 653893, at *3 (N.D. Ill. Apr. 19, 2002)).) But elsewhere in the opinion, the court invokes the proper standard and criticizes the movant for its failure to "address the manner in which that business information is relevant to the issues *in this action*." *Id.* (emphasis added). The court ultimately declined to disqualify the expert because, inter alia, the movant offered "nothing more than conclusory affidavits that state [the expert] was exposed to confidential business strategy" and failed to explain the "type of confidential business information that [the expert] received" or how such "business information" related to the parties' *patent* dispute. *Id.* These facts are far afield. In any event, to the extent *Chamberlain* might have looked for a link between the confidential information disclosed to the expert and the substance of the expert's testimony, it departed from the accepted standard in this District today. *See, e.g.*, *Staley*, 2022 WL 3013120, at *3; (*Space Sys./Loral v. Martin Marietta Corp.*, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) ("Muhlfelder must be disqualified as an expert witness in this litigation. Muhlfelder was privy to substantial confidential information from Martin Marietta that is relevant to the issues in this case."); *Packet Intelligence*, 2020 WL 4001460, at *5 (disqualifying expert because the movant "provided evidence that it had a significant and longstanding relationship with [him]" "related to the products . . . at issue in this case"); *Corley v. Google, Inc.*, 2016 WL 3421402, at *2 (N.D. Cal. June 22, 2016) ("This court has repeatedly ruled that it is usually improper to hire an opponent's former employee as an expert . . . .").

**C.      Considerations of Fairness and Public Policy Favor Disqualification**

Plaintiffs knew from their first contacts with Dr. Libert that he had recently worked for Google.  *Cf. Kane v. Chobani*, 2013 WL 3991107, at *7 (N.D. Cal. Aug. 2, 2013) ("Plaintiffs' Counsel knew from their initial contacts with EAS that EAS had a conflict with Chobani.").  They hired him anyway.  Plaintiffs also knew by June 23, 2023—almost three weeks *before* they refiled their preliminary-injunction motion—that Google objected to his participation.  At that point, they dismissed Google's objection, saying (in as many words) that "whatever he did at Google had nothing to do with what this case is about."  (Dkt. 46-2 ¶ 4.)  After reviewing Google's disqualification motion, Plaintiffs changed their tune.  They asked for a meet-and-confer and proposed to withdraw Dr. Libert in return for Google withdrawing its motion, pursuant to a joint stipulation.  But when Google requested revisions to the stipulation stating that Plaintiffs could not *consult* further with Dr. Libert and declined to stipulate to disputed "facts" (that would have converted Dr. Libert's disputed opinions into undisputed facts), Plaintiffs dropped their proposal.  (*See* Doak Decl.)  They then filed their opposition brief, which tries to weaponize Google's good-faith efforts to meet and confer.  As in *Kane*, the Court should "not find that Plaintiffs' Counsel will be prejudiced by the imposition of restrictions that Plaintiffs' Counsel should have voluntarily implemented as soon as they became aware of this conflict."  *See* 2013 WL 3991107, at *7.

Plaintiffs have willfully violated the conflicts rules applicable to expert witnesses, shrugged off Google's objection, and forced litigation of the issue.  Nonetheless, Plaintiffs have the gall to accuse Google of "gamesmanship."  (Dkt. 59, at 6.)  Plaintiffs never should have engaged Dr. Libert in the first instance.  But even more relevant for purposes of evaluating Plaintiffs' claim of prejudice is that, after Google objected to Dr. Libert's involvement in this case, and after the Court ordered Plaintiffs to refile their motion for a preliminary injunction, Plaintiffs had every opportunity to hire a different expert, and they chose not to do so.  Plaintiffs knowingly assumed the risk that Dr. Libert would be disqualified.

Plaintiffs' suggestion that Google "dragged its feet" in moving to disqualify Dr. Libert is baseless.  (Dkt. 59, at 12.)  Google first objected to Dr. Libert in June 23, 2023, well before

Plaintiffs refiled their preliminary-injunction motion. After Plaintiffs refiled that motion, Google promptly prepared its disqualification motion, its motion to dismiss, its response to Plaintiffs' preliminary-injunction motion, and other substantive filings. *Cf. Packet Intelligence*, 2020 WL 4001460, at *5 (movant was reasonably prompt in objecting to expert where it learned of expert on March 20 and provided notice of its objection on April 30). It is Plaintiffs who dragged their feet with respect to Dr. Libert by declining every opportunity to rectify a flagrant conflict of interest. Plaintiffs insist that there is "simply no conflict or prejudice" associated with Dr. Libert's participation in this case because "Dr. Libert's expert work in this case is complete." (Dkt. 59-1, at 11–12.) Yet they do not attempt to reconcile their apparent willingness to limit Dr. Libert's future participation with their refusal to stipulate to not consulting with him further or with their representation that they "would be incredibly challenged to find another reliable, efficient manner in which to analyze source code on 6,000 web-properties." (Dkt. 59, at 12.) In any event, the distinction Plaintiffs attempt to draw between "prejudice" and "*prospective* prejudice" is illusory and has no basis in law. (*See* Dkt. 59, at 11.) Plaintiffs cite no authority for such a distinction. The law recognizes that Dr. Libert's participation is inappropriate and prejudicial, full stop.

Simply "allowing Dr. Libert's declaration to stand," as Plaintiffs request, would invite future willful violations of conflicts rules. And it would reward Plaintiffs for forcing litigation over a flagrant conflict of interest, declining every opportunity to timely rectify it, and then, at the eleventh hour, invoking the temporal proximity of the preliminary-injunction hearing to cry prejudice. Finally, it would perpetuate the appearance of impropriety inherent in Dr. Libert's support of Plaintiffs' claims and thereby undermine the integrity of the adversary system and contribute to the erosion of public confidence in the judiciary. *See Packet Intelligence*, 2020 WL 4001460, at *5 (finding that "prejudice to Packet does not weigh against disqualification" given that the expert's "significant and longstanding relationship" with Juniper "would not simply pose a risk to Juniper, but would also create an appearance of impropriety").

/ /

III.     **CONCLUSION**

For all of the foregoing reasons, Google respectfully requests that the Court grant its motion to disqualify Dr. Libert.


Dated:  September 7, 2023                    WILLKIE FARR & GALLAGHER LLP
                                             Benedict Hur
                                             Simona Agnolucci
                                             Eduardo Santacana
                                             David Doak
                                             Joshua Anderson
                                             Tiffany Lin
                                             Harris Mateen
                                             Naiara Toker
                                             Zoe Packman


                                      By:    */s/ Benedict Hur*
                                             Benedict Hur

                                             Attorneys for Defendant
                                             GOOGLE LLC