**WILLKIE FARR & GALLAGHER LLP**
BENEDICT HUR (SBN 224018)
  bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO SANTACANA (SBN 281668)
  esantacana@willkie.com
DAVID D. DOAK (SBN: 301319)
  ddoak@willkie.com
JOSHUA D. ANDERSON (SBN: 312836)
  jpanderson@willkie.com
TIFFANY LIN (SBN 321472)
  tlin@willkie.com
HARRIS MATEEN (SBN 335593)
  hmateen@willkie.com
NAIARA TOKER (SBN 346145)
  ntoker@willkie.com
ZOE PACKMAN (SBN 347453)
  zpackman@willkie.com
One Front Street, 34th Floor
San Francisco, California 94111
Telephone:   (415) 858-7400
Facsimile:   (415) 858-7599

Attorneys for Defendant
**GOOGLE LLC**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE I, et al., individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>       vs.<br><br>GOOGLE LLC,<br><br>              Defendant. | Case No. 3:23-cv-02431-VC<br>(Consol. w/ 3:32-cv-02343-VC)<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>**Date:   September 21, 2023**<br>**Time:  10:00 a.m.**<br>**Ctrm.: 4**<br><br>Consol. Complaint Filed: July 13, 2023<br><br>*District Judge Vince Chhabria*<br>*San Francisco Courthouse, Ctrm. 4* |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................- 1 -

II.    ARGUMENT ...................................................................................- 1 -

    A.    The heightened standard of Rule 9(b) applies. ..................................- 1 -

    B.    Plaintiffs' consent, given both to Google and the websites, bars all claims.......- 2 -

    C.    Plaintiffs' Wiretap and CIPA claims should be dismissed (Counts 1 and 2). ...................................................................................- 3 -

    D.    Plaintiffs' invasion of privacy claims should be dismissed (Counts 3 and 4). ...................................................................................- 5 -

    E.    Plaintiffs' fail to establish UCL standing (Count 5). ...........................- 6 -

    F.    Plaintiffs' trespass to chattels claim is frivolous (Count 6). ................- 7 -

    G.    Plaintiffs' shifting larceny theories all fail (Count 7). .........................- 7 -

    H.    California Comprehensive Data Access and Fraud Act (CDAFA) (Count 8) ......................................................................................- 9 -

    I.    Plaintiffs cannot sustain an aiding and abetting claim (Count 9). .......- 11 -

    J.    Breach of Contract (Count 10)......................................................- 12 -

        1.    Alleged Breach One ........................................................- 12 -

        2.    Alleged Breach Two .......................................................- 12 -

        3.    Alleged Breaches Three, Four, Five and Six .......................- 13 -

        4.    Alleged Breaches Five, Six, Eight, Nine, Ten, Eleven, and Twelve ....- 14 -

III.    CONCLUSION................................................................................- 15 -

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apumac, LLC v. Flint Hills Int'l,*
2015 WL 13306128 (C.D. Cal. Feb. 6, 2015) .......................................................................1

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015) ................................................................................................15

*Boegman v. Smith,*
2018 WL 3140469 (S.D. Cal. June 27, 2018) .......................................................................8

*Brown v. Google LLC,*
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ..................................................................6, 10

*Caraccioli v. Facebook, Inc.,*
167 F. Supp. 3d 1056,1063 (N.D. Cal. 2016) ........................................................................5

*Carrese v. Yes Online Inc.,*
2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ........................................................................4

*In re Carrier IQ, Inc.,*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................................9

*Casillas v. Berkshire Hathaway Homestate Ins. Co.,*
79 Cal. App. 5th 755,764 (2022) .....................................................................................7, 10

*Chavarria v. Ralphs Grocery Co.,*
733 F.3d 916 (9th Cir. 2013) ................................................................................................15

*Cottle v. Plaid Inc.,*
536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................................10

*Cousin v. Sharp Healthcare,*
2023 WL 4484441 (S.D. Cal. July 12, 2023) .........................................................................5

*CTC Real Estate Services v. Lepe,*
140 Cal. App 4th 856 (2006) ..................................................................................................8

*In re Facebook Privacy Litigation,*
572 F. App'x 494 (9th Cir. 2014) ...........................................................................................8

*In re Facebook, Inc., Cons. Privacy Litig.,*
402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................14

*In re Facebook, Inc. Internet Tracking Litigation,*
956 F. 3d 589 (9th Cir. 2020) .........................................................................................6, 10

GOOGLE'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:23-cv-02431-VC

*Facebook, Inc. v. Power Ventures, Inc.*,
  2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................................................................10

*Garmon v. County of Los Angeles*,
  828 F.3d 837 (9th Cir. 2016) ...............................................................................................15

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 787 (N.D. Cal. 2020) ..................................................................................13

*In re Google, Inc. Privacy Policy Litig.*,
  2015 WL 4317479 (N.D. Cal. July 15, 2015) ......................................................................6, 7

*Gorlach v. Sports Club Co.*,
  209 Cal. App. 4th 1497 (2012) ............................................................................................14

*Grace v. Apple Inc.*,
  2017 WL 3232464 (N.D. Cal. July 28, 2017) ..........................................................................7

*Graham v. Noom*,
  533 F. Supp. 3d 823 ...............................................................................................................4

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................................4, 15

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................................7

*Jewell v. NSA*,
  673 F.3d 902 (9th Cir. 2011) ..............................................................................................5, 6

*Kearns v. Ford Moto Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................................................2

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..........................................................................................................6

*Kurowski v. Rush Sys. for Health*,
  2023 WL 4707184 (N.D. Ill. July 24, 2023) ................................................................. *passim*

*Kwikset Corp. v. Superior Court.*,
  51 Cal. 4th 310 (2011) ............................................................................................................6

*LaCourt v. Specific Media, Inc.*,
  2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ..........................................................................7

*Lantis Laser, Inc. v. Ice Cold Stocks, LLC*,
  2008 WL 11338191 (C.D. Cal. Sept. 23, 2008) .....................................................................12

*Lindsay-Stern v. Garamszegi*,
  2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) .........................................................................9

GOOGLE'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:23-cv-02431-VC

*Metzger v. Wells Fargo Bank, N.A.*,
    2014 WL 1689278 (C.D. Cal. Apr. 28, 2014) .......................................................................14

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ..............................................................................10

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ..................................................................................11

*People v. Beaver*,
    186 Cal. App. 4th 107 (2010) ................................................................................................8

*People v. Kozlowski*,
    96 Cal. App. 4th 853 (2002) ................................................................................................10

*People v. Kwok*,
    63 Cal. App. 4th 1236 (1998) ................................................................................................8

*People v. Williams*,
    57 Cal. 4th 776 (2013) ...........................................................................................................8

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) ......................................................................................................3

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ................................................................................................3

*Pratt v. Higgins*,
    2023 WL 4564551 (N.D. Cal. July 17, 2023) .......................................................................9

*Puchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) .........................................................................................6

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .............................................................. *passim*

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003) ..............................................................................................13

*San Miguel v. HP Inc.*,
    317 F.3d 1075 (N.D. Cal. 2018) ...........................................................................................7

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ...............................................................................15

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. May 9, 2017)..................................................................2, 13

*Soo v. Lorex Corp.*,
    2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) .......................................................................7

*Stanley v. Univ. S. Cal.*,
    178 F.3d 1069 (9th Cir. 1999) ........................................................................................14, 15

*United States v. Collazo*,
    984 F.3d 1308 (9th Cir. 2021) ................................................................................................11

*United States v. Olson*,
    856 F.3d 1216 (9th Cir. 2017) ................................................................................................11

*Welter v. Med. Pro. Mut. Ins. Co.*,
    2023 WL 2988627 (D. Mass. Feb. 23, 2023) .........................................................................10

*Wesch v. Yodlee, Inc.*,
    2021 WL 6206644 (N.D. Cal. July 19, 2021) .........................................................................10

*WhatsApp Inc. v. NSA Grp. Tech. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) .......................................................................................7

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .....................................................................4, 8

*Zenith Ins. Co. v. O'Connor*,
    148 Cal. App. 4th 998 (2007) ..................................................................................................14

## Statutes

18 U.S.C. § 1030(e)(8), (11) ............................................................................................................9

18 U.S.C. § 1030(g) ..........................................................................................................................9

18 U.S.C. § 2511(2)(d) ......................................................................................................................3

Cal. Bus. & Prof. Code § 17204 .......................................................................................................6

Cal. Civ. Code § 680 .......................................................................................................................11

Cal. Civ. Code § 1621 .....................................................................................................................14

Cal. Penal Code § 632(a) ..................................................................................................................5

Cal. Penal Code § 496 .......................................................................................................................8

## Other Authorities

Federal Rule of Civil Procedure 9(b) .......................................................................................1, 2, 4

## I.      INTRODUCTION

Just as in their Complaint, Plaintiffs' opposition to Google's motion to dismiss offers a tangled mess of inconsistent and sometimes nonsensical arguments. Such is their grip on the kitchen sink that they assert arguments to support one claim that fatally undermine another, only to reverse course when it suits them. As just one example, to get around the one-party consent defense of the Wiretap Act, Plaintiffs allege that the Health Care Providers ("providers") did not consent to the alleged collection of data because there is no indication they were aware of the collection. But when it comes time to defend their aiding and abetting claim—which requires an underlying tort by the providers—Plaintiffs change their tune and say the providers intended to violate their privacy by using Google's products.

That is hardly the only inexplicable inconsistency in the Opposition. For instance, seeking to make up for their lack of allegations, Plaintiffs improperly try to shore up their pleadings with their expert declarations. Yet even as they do so, and even as they tell the Court they are likely to succeed on the merits, Plaintiffs claim they cannot be expected to make concrete allegations about what data Google *actually* collected (as opposed to what it *could* have collected) because, according to them, without discovery, only Google can know what it collected. They therefore ask to be excused from Rule 8's plausibility requirement, to say nothing of Rule 9(b), which applies given the fraud-based assertions throughout the Complaint. Just like their allegation that Google surveils "billions of Americans," CAC ¶ 6, Plaintiffs' overreach undermines the plausibility of their claims. The Court should grant Google's motion.

## II.      ARGUMENT

### A.      The heightened standard of Rule 9(b) applies.

Plaintiffs nakedly assert that Rule 9(b) does not apply because their claims "do not sound in fraud." Opp. at 27. But it is the nature of the allegations, not the *ipse dixit* of a plaintiff, that determines whether a claim "sounds in fraud." *Apumac, LLC v. Flint Hills Int'l*, 2015 WL 13306128, at *5 (C.D. Cal. Feb. 6, 2015) (noting that "Rule 9(b) applies to *allegations* of fraud, not just claims of fraud").

Plaintiffs' allegations are substantively indistinguishable from those another Court in this district found to require application of Rule 9(b). *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021). The plaintiffs in *Rodriguez* alleged that Google used "secret scripts" to "surreptitiously" collect online activity through Google Analytics ("GA") on third-party apps. *Id.* at *2–3. This secret collection allegedly violated representations Google made in its Privacy Policy and elsewhere. *Id.* at *3. Here, Plaintiffs make the same allegations of "disguis[ed]" cookies "secretly embedded" through third-party websites, collecting data Google promises not to. CAC ¶¶ 4, 56, 59(c), 250–62; Opp. at 13 (Google made "misleading representations"), 17 ("Google pays [lip service] to the illegality of such conduct while secretly and simultaneously reaping the benefits of the illicit data flow."). Plaintiffs cannot allege "secretly" plotting to "mislead" users in order to "reap the benefits" of "illicit data" while avoiding Rule 9(b). Because each of Plaintiff's claims is premised on this alleged "unified course of fraudulent conduct," each claim is subject to Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

### B. Plaintiffs' consent, given both to Google and the websites, bars all claims.

Google's Privacy Policy discloses that Google can "collect information about your . . . [a]ctivity on third-party websites and apps that use our services." Dkt. 49-20 at 4. Plaintiffs argue that Google also promises not to collect "health-related information," but the health information Google says it won't collect is actual medical history and metrics data, not basic online browsing activity. *Id.* at 18; *infra* section II.J.2. Plaintiffs make only conclusory, cookie-cutter assertions about the information allegedly collected by Google. CAC ¶¶ 19–31. And their explanation of the "Health Information'" illustrates that it constitutes their internet activity—not the actual medical history Google said it would not collect. *Id.* ¶¶ 33–36; *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. May 9, 2017) (URLs for pages "containing information about treatment options for melanoma, information about a specific doctor, [or] search results related to the phrase 'intestine transplant'" are not PHI).

Further, Plaintiffs never dispute that their providers informed them that they used Google's services to collect information. They claim, however, that their assent to these policies

is not valid consent under HIPAA, and the consent did not extend to advertising or other purposes. But, again, Plaintiffs do not show *their* data falls within HIPAA's scope or was used for advertising, nor have they shown any data *about them* was used for advertising. *See Kurowski v. Rush Sys. for Health*, 2023 WL 4707184 (N.D. Ill. July 24, 2023) (plaintiffs' online activity collected by GA does "not in the least bit fit" into the category of protected health information).

### C.     Plaintiffs' Wiretap and CIPA claims should be dismissed (Counts 1 and 2).

<u>One-Party Consent</u>: Plaintiffs' own allegations and authorities establish that their providers consented, a complete defense to Plaintiffs' Wiretap claim. 18 U.S.C. § 2511(2)(d); *In re Pharmatrak, Inc.,*, 329 F.3d 9, 20 (1st Cir. 2003). As Plaintiffs note, *Pharmatrak* held that the mere use of a product is insufficient to infer consent, but the defendant there also assured the provider that its service could not collect PII. *Pharmatrak,* 329 F.3d at 20. The court distinguished cases in which consent was properly inferred, since those products were acquired for the complained-of purpose, or the purpose was "announced" or "self-evident." *Id.*

Plaintiffs' allegations fall in the latter category. They argue that Google: (1) makes its products available for third parties to "copy-and-paste" into their source code and that the "primary purpose" is to obtain information about users' communications; (2) discloses the analytics and advertising purposes of the technologies; and (3) "encourages" providers to use its products to collect and use health information. *See* CAC ¶¶ at 40–44, 266. Further, the providers' intent to collect this data is key to Plaintiffs' aiding and abetting claim. *See Kurowski*, 2023 WL 4707184, at *3 (Plaintiffs' counsel suing provider for intentionally disclosing data to Google through GA). Plaintiffs cannot claim the providers intended to use Google's products to collect their data while claiming the providers have no idea the collection was occurring.

<u>Tortious Purpose Exception</u>: Plaintiffs also fail to meet the criminal or tortious purpose exception with their argument that they allege other torts. Opp. at 15. Those torts are premised on the same interception, and do not vitiate consent. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording."). And besides, the purpose alleged is plainly not criminal or tortious. *Rodriguez*, 2021 WL 2026714 at *6 n.8 (Google's "purpose has

plainly not been to perpetuate torts on millions of Internet users, but to make money").

Vendor: Plaintiff's Wiretap and CIPA claims also fail because a vendor who provides a tool for a website to record user interactions is not "intercepting" a communication and cannot be liable for the recording under the Wiretap Act or CIPA.[1] *Graham v. Noom*, 533 F. Supp. 3d 823, 833; *Williams v. What If Holdings*, *LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Plaintiffs try to distinguish these authorities by arguing Google actively acquires information for its own purposes. Opp. at 15. But the allegations Plaintiffs cite make clear that those "purposes" are advertising providers' websites at their request, and that they require both the advertiser and users to take action that Plaintiffs never allege has occurred here. *See* CAC ¶¶ 105 (advertisers must upload customer lists), 151 (advertisers must link their Ads and Analytics accounts to enable data to flow between them), 156 (advertisers must enable remarketing),164 (advertisers must activate Signals); 166 (users must have consented to association of data in My Activity); 167 (users must enable Ads Personalization). That a website pays Google to engage in advertising does not dissolve Google's status as a vendor for the website.

Intent: Plaintiffs assert Google's intent, but do not back it up with plausible allegations. To allege that Google *intended* to prohibit websites from sending it PII and PHI, but nevertheless *intended* that the websites would violate the prohibition so that it could monetize PII and PHI is a salacious allegation that must be supported by Rule 9(b) particularity. A mere assertion is not enough. *Rodriguez*, 2021 WL 2026726, at *6 (allegations of Google's "secret scripts" "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged").

CIPA Geographical Limits: Plaintiffs argue they meet CIPA's geographical requirement because Google is headquartered in California. This District has already held that is not enough. *Hammerling*, 2022 WL 17365255, at *10. The interception at issue in Plaintiffs' own authority was alleged to be within California. *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4–5 (C.D. Cal. Oct. 13, 2016) ("Only Carrese has statutory standing to bring her CIPA claims to the extent the relevant conduct (the alleged recordings) took place in California.").

---

[1] "The analysis for a violation of CIPA is the same as that under the [ECPA]." *Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (citation omitted).

CIPA Confidentiality: Plaintiffs assert that they had a reasonable expectation of privacy in health information, but they have not identified what information of *theirs* is PHI. The relevant privacy policies put Plaintiffs on notice that their internet activity would be collected, which is all Plaintiffs have alleged. CIPA is thus inapplicable. *See* Cal. Penal Code § 632(a).

### D.    Plaintiffs' invasion of privacy claims should be dismissed (Counts 3 and 4).

Plaintiffs do not remedy their failure to state a plausible invasion of privacy claim.

***First***, as to intent, Plaintiffs concede Google prohibits the collection they allege. That providers control what data is transmitted and how it is used negates rather than supports their claims that Google "intended" to violate their privacy. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056,1063 (N.D. Cal. 2016).

***Second,*** Plaintiffs do not identify the specific information collected about Plaintiffs, again pointing to generalized assertions about what Google's technologies *could* hypothetically do. That is not enough. *See Kurowski*, 2023 WL 4707184, at *3 (dismissing claims where Plaintiffs did not allege what specific data was collected); *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023) (assertions of disclosure of "sensitive medical information; communications and messages with doctors; medical test results; [and] payment information" insufficient). Plaintiffs do not try to distinguish *Kurowski* or *Cousin*, and instead claim the cases are inconsistent with Ninth Circuit authority. Opp. at 18 (citing *Jewell v. NSA*, 673 F.3d 902, 906 (9th Cir. 2011)). That is incorrect. The plaintiff in *Jewell*, a standing case, alleged specific communications were collected in a specific way in a specific location, and the plaintiff had not asserted "scattershot claims" or a "blanket policy challenge." *Id.* at 910. Nor had the plaintiff asserted fraud-based claims.

Plaintiffs have only plausibly alleged that Google collects pseudonymous identifiers and activity data, not actual PHI. While Plaintiffs complain they cannot be expected to know what data Google collects, they repeatedly tout their investigations, CAC ¶¶ 47, 75, 87, 437(c), and the expert declarations they improperly use to shore up their lacking allegations. Not to mention their preliminary injunction motion, premised on their claim they have enough evidence for a mandatory injunction right now. But, Plaintiffs' allegations demonstrate why they must provide

more detail. Plaintiffs purport to describe the data certain providers collect. *See* CAC ¶¶ 57–66. Contradicting Plaintiffs' assertion that Google's "Source Code" functions the same on all properties, *id.* ¶ 40, the data identified in the Medstar and Gundersen examples are not uniform. *See id.* ¶¶ 57–66. Further, while Plaintiffs say their claims concern a variety of technologies other than GA, Opp. at 1, Medstar and Gunderson are *only* alleged to be using GA. CAC ¶¶ 57–66. Plaintiffs assert the "blanket policy challenge" the Ninth Circuit eschewed in *Jewell*.

### E.    Plaintiffs' fail to establish UCL standing (Count 5).

The UCL's standing requirement is "substantially narrower" than Article III standing and embraces fewer kinds of injuries—namely, economic loss. *Kwikset Corp. v. Superior Court.*, 51 Cal. 4th 310, 324–25 (2011). Plaintiffs' reliance on *In re Facebook, Inc. Internet Tracking Litigation* is misplaced. 956 F.3d 589, 599 (9th Cir. 2020). That case found the plaintiffs had Article III standing because "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, *even where an individual has not suffered a corresponding loss.*" *Id.* at 599 (emphasis added). The UCL, however, requires by its own terms a showing of loss, and does not recognize a right to disgorgement of profits. Cal. Bus. & Prof. Code § 17204; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147 (2003).

In *Brown*, Judge Koh re-affirmed her decision in *Calhoun,* holding "there is no precedent which suggests that 'economic injury' has a different meaning in the UCL context than it does in the Article III context." 2021 WL 6064009, at *17  (N.D. Cal. Dec. 22, 2021). But the UCL does not use the term "economic injury"—it uses the phrase "lost money or property." Cal. Bus. & Prof. Code §17204. That was the type of "economic injury" *Kwikset* reviewed. 51 Cal. 4th at 324 ("Notably, lost money or property—economic injury—is itself a classic form of injury in fact."). And *In re Facebook* demonstrated that "economic injury" for purposes of Article III does not have to involve a loss. 956 F.3d at 599. Further, the Ninth Circuit has since held that the external value of data does not show the plaintiff suffered loss. *Puchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614–15 (9th Cir. 2021). The court cited *In re Google, Inc. Privacy Policy Litig.*, which rejected standing because the plaintiffs had not established they suffered an injury where they had not alleged a market for the data or any impairment of their ability to participate

in it, which Plaintiffs do not show here. 2015 WL 4317479, at *5 (N.D. Cal. July 15, 2015).

### F.     Plaintiffs' trespass to chattels claim is frivolous (Count 6).

Plaintiffs clarify that the theory underlying their trespass claim is that Google lodged
cookies on Plaintiffs' computing devices, which resulted in the collection of data, reduced
storage, and some unidentified impairment of the devices' value and functionality. Opp. at 28.
Plaintiffs' clarification makes short work of this claim; these theories have been flatly rejected.
*See, e.g.*, *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755,764 (2022)
(copying data did not constitute sufficient injury); *WhatsApp Inc. v. NSA Grp. Tech. Ltd.*, 472 F.
Supp. 3d 649, 685–86 (N.D. Cal. 2020) (malware that intercepted communications did not
impair function); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012)
(reduction in memory from unauthorized placement of files insufficient); *LaCourt v. Specific
Media, Inc.*, 2011 WL 1661532, at *7 (C.D. Cal. Apr. 28, 2011) (placement of tracking cookies
insufficient).  Moreover, creating a technology and making it available to anyone who can copy
and paste it, *see* CAC ¶ 40, cannot support an "intent" to trespass.

Plaintiffs cite readily distinguishable cases to support injury. The trespass in *Grace v.
Apple Inc.* disabled video-call functionality on iPhones, which the court distinguished from the
mere consumption of memory. 2017 WL 3232464, at *11 (N.D. Cal. July 28, 2017). Plaintiffs'
remaining authorities likewise involve actual loss of function. *Soo v. Lorex Corp.*, 2020 WL
5408117, at *1, 9 (N.D. Cal. Sept. 9, 2020) (trespass rendered cameras non-functional). *San
Miguel v. HP Inc.*, 317 F.3d 1075, 1088 (N.D. Cal. 2018) (trespass disabled printers). Plaintiffs
are left with the alleged privacy intrusion, but "trespass to chattels [does] not lie to protect
interests in privacy." *Casillas*, 79 Cal. App. 5th at 765. This claim should be dismissed.

### G.     Plaintiffs' shifting larceny theories all fail (Count 7).

Plaintiffs switch gears with their larceny claim: the "property" is data, not personal
devices. Opp. at 29–30. This new theory does not work any better.

Plaintiffs again rely on *Calhoun*, ignoring Google's arguments that *Calhoun* was decided
incorrectly under California law. MTD at 40 n.19. None of the authorities *Calhoun* relied upon
actually held that data is "property" that falls within the scope of section 496 of the Penal Code.

First, the dictum in *CTC Real Estate Services v. Lepe*, which state that a person's "personal identifying information" is a "valuable asset" that can be subject to theft, was in the context of *identity theft* statutes, not statutory larceny. 140 Cal. App. 4th 856, 860 (2006). As Google pointed out, if section 496 covered the theft of data, there would be no need to have enacted separate data-theft statutes. *Calhoun*'s second authority did not involve personal data, but instead the copying of a physical key. *People v. Kwok*, 63 Cal. App. 4th 1236, 1248–49 (1998).

The other Ninth Circuit case *Calhoun* relies on demonstrates that data is not necessarily property. In *In re Facebook Privacy Litigation*, the Ninth Circuit held that allegations of personal data collection and dissemination failed to show the plaintiffs had "lost money or property" under the UCL. 572 F. App'x 494, 494 (9th Cir. 2014). But if data is "property" that may be "stolen" through allegedly unauthorized interception, then the plaintiffs necessarily would have shown lost "property." *Id.; see also Rodriguez*, 2021 WL 2026726, at *8 ("[N]o federal court has wedged individual digital data into the UCL's 'money or property' box . . . .").

But even if digital data could be considered "property" under California law, Plaintiffs' theft-by-larceny theory still fails because this theory is available only for tangible property which may be physically taken away. *People v. Beaver*, 186 Cal. App. 4th 107, 122 (2010). Plaintiffs' cite a few paragraphs of their Complaint concerning so-called "data flow." Opp. at 30 (citing CAC ¶¶ 48–50). But the "data flow" is a metaphor; the internet is not, in fact, a series of tubes. Nothing in the Complaint establishes Google physically took anything from anyone.

Finally, Plaintiffs' claim that they did not consent to the alleged data collection dooms their false pretenses claim, which requires proof of a consensual transfer of title. *Boegman v. Smith*, 2018 WL 3140469, at *9 (S.D. Cal. June 27, 2018). Selectively quoting the California Supreme Court, Plaintiffs try to sidestep this requirement by arguing that creation of statutory larceny dispensed with the common-law elements of the consolidated offenses. *People v. Williams*, 57 Cal. 4th 776, 785–86 (2013). But the *very next sentence* following their quote explains "[t]he elements of the several types of theft included within section 484 have not been changed." *Id.* at 786. Directly contrary to Plaintiffs' argument, *Williams* held the different elements of the types of larceny did not evaporate through codification, were "significant to [its]

analysis," and that theft by false pretenses requires a consensual transfer of title. *Id.* at 786–88. Plaintiffs do not and cannot make this showing.[2]

### H.    California Comprehensive Data Access and Fraud Act (CDAFA) (Count 8)

Standing: Plaintiffs' allegations are indistinguishable from those made in *Kurowski*, wherein the court found no "injury to or interference with" the plaintiff's devices where the plaintiffs alleged the collection of data "in complete and utter secrecy." 2023 WL 4707184, at *10. Plaintiffs' cited case based standing on the "systemic" impact on users' devices, including slow performance and reduced battery—none of which is alleged here. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, at 1056, 1067 (N.D. Cal. 2015). Plaintiffs next cite a case holding that "emotional damages" are cognizable under CDAFA in order to say their damaged relationships with providers support standing. *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *6 (C.D. Cal. Oct. 13, 2016). Plaintiffs, however, have not alleged "emotional damages." And even if they had, *Lindsay-Stern* was incorrect because it conflated standing with remedies.

Courts apply the definitions of "damage" and "loss" found in the federal Computer Fraud and Abuse Act. *Id.* "Damage" means "impairment to the integrity of availability of data, a program, a system, or information" and "loss" means "any reasonable cost to any victim[.]" 18 U.S.C. § 1030(e)(8), (11). Standing thus requires impairment or actual loss. *See id.* Despite this, *Lindsay-Stern* found "emotional damages" support standing because CDAFA allows recovery of "compensatory damages," which could include "emotional damages." *Id.* This erroneously conflates the defined term "damage" with the general concept of legal damages. *See* 18 U.S.C. § 1030(g). Anyone who sues could contend to be "emotionally" aggrieved. For CDAFA's standing limitation to have any force, it must require some actual harm before "emotional damages" may be sought. *See also Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (accessing medical information gave rise to no cognizable loss under CDAFA).

Plaintiffs also argue that they incurred "expenditures" in responding to the alleged cookies, but such expenditures are nowhere referenced in the Complaint, and the allegations that

---

[2] Plaintiffs do not respond to Google's argument that they had not adequately alleged an intent to steal. Their allegations show the opposite.

exist show the absence of a compensable investigation. *See, e.g.*, CAC ¶¶ 333 (plaintiffs "have no practical way of knowing" if communications are intercepted). Plaintiffs cite *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010), for the proposition that a "few clicks of a mouse" and some "keystrokes"' support standing. Setting aside that Plaintiffs do not allege even that much, that court found standing because the plaintiff had to implement technical safeguards to stop the defendant's access. *Id.* at *5. Similarly, the plaintiff in *Mintz* had to spend time resetting his password and personally investigating a hacking incident, none of which Plaintiffs allege here. *See Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012). Attorneys' fees are also outside the scope of cognizable loss. *Welter v. Med. Pro. Mut. Ins. Co.*, 2023 WL 2988627, at *10 (D. Mass. Feb. 23, 2023).

Finally, Plaintiffs claim the diminution of value constitutes "damage or loss," citing *Facebook Tracking* and another court's recent decision in *Brown v. Google LLC*, 2023 WL 5029899, at *19 (N.D. Cal. Aug. 7, 2023). However, *Facebook Tracking* analyzed Article III standing, and *Brown* improperly brushed this distinction aside. 956 F.3d at 599–601. In the related UCL context, a benefit to the defendant does not constitute a "loss" to the plaintiff unless the plaintiff alleges a market for the data that the plaintiff was ready and willing to participate in, which they do not establish here. *See, e.g.*, *Cottle v. Plaid Inc.,* 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021); *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *5 (N.D. Cal. July 19, 2021).

<u>Owners or Lessees</u>: Plaintiffs claim that they have some "ownership interest" in the activity data stemming from state and federal privacy protections for "Health Information." Opp. at 33.  Even assuming Plaintiffs identified what "Health Information" was collected *from them*— a privacy interest is not the same as a property interest. *See Casillas*, 79 Cal. App. 5th at 765.

Plaintiffs cite cases holding that the term "property" is broad. *See* CAC ¶ 295 n.129 (quoting *People v. Kozlowski*, 96 Cal. App. 4th 853, 866 (2002)). But even these cases hold that property requires "the exclusive right to use or possess a thing or the exclusive ownership of a thing." *Kozlowski*, 96 Cal. App. 4th at 866. Plaintiffs cannot show that they had an exclusive right to use or possess the URLs of third-party websites, for example. *See* CAC ¶ 36(a). Even assuming HIPAA applies to the data at issue, *but see Kurowski*, 2023 WL 4707184, at *4, its

restrictions merely mean that the providers' ownership of the data is qualified. *See* Cal. Civ. Code § 680 ("The ownership of property is qualified . . . when the use is restricted.").

Scienter: Plaintiffs claim they need not allege that Google was aware it acted without authorization. Opp. at 33. But where, as here, a penal statute introduces its elements with "knowingly," the scienter presumptively applies to all elements. *United States v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017). Plaintiffs assert that the Ninth Circuit "explicitly rejected" this presumption or confined it to "particular grammatical contexts." Opp. at 33 (citing *United States v. Price*, 980 F.3d 1211, 1220–21 (9th Cir. 2019)). Not so. The Ninth Circuit continues to hold that "[it] recognizes the presumption . . . that 'Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." *United States v. Collazo*, 984 F.3d 1308, 1324 (9th Cir. 2021).

## I.     Plaintiffs cannot sustain an aiding and abetting claim (Count 9).

Plaintiffs do not clarify the basis of their aiding and abetting claim. They vaguely assert that their providers owe duties arising from the California Constitution, their receipt of health information, and their status as fiduciaries. Opp. at 33. As Plaintiffs recognize, they must show that Google was aware the providers' conduct constituted a breach of duty, and nonetheless gave substantial encouragement of assistance. Opp. at 33. Yet Plaintiffs fail to point to any allegations plausibly suggesting Google was aware of the unpled "breach" by the providers. Plaintiffs claim that Google must have been aware because their information allegedly went to Google. Opp. at 33. But Plaintiffs do not allege that Google was aware it received Plaintiffs confidential health information, nor would such an inference be reasonable given the allegations that Google's policies prevent that data sharing and that Google allegedly does not use available systems to detect potential receipt of protected information. CAC ¶¶ 266, 434, 435(e).

Plaintiffs erroneously rely on *Opperman v. Path, Inc.*, which concerned unauthorized access to users' iPhone contacts. 84 F. Supp. 3d 962, 971–72 (N.D. Cal. 2015).  Apple allegedly developed APIs that allowed developers to access users' iPhone contacts, discouraged developers from seeking consent, and exercised control over the development and functions of third-party apps. *Id.* at 972–73, 986. Plaintiffs' allegations here reflect the inverse. Google did

not develop APIs to allow third parties to access users' Google data; it developed tools that allows third-parties to understand their own data. CAC ¶ 44. Google did not encourage providers to collect data without permission; Google's policies forbid this. *Id.* ¶ 435(e). Google exercised no control over the third-party developers; Plaintiffs claim that Google's tools are freely available and that developers choose the data that is collected. *Id.* ¶ 40.

Plaintiffs thus fall far short of establishing a claim for aiding and abetting.

### J.      Breach of Contract (Count 10)

#### 1.      Alleged Breach One

Plaintiffs claim that they agreed to Google's TOS in exchange for Google's promise that *other* users must comply with all laws, respect privacy, and refrain from bad behavior. Opp. at 35–36. That is not what the TOS says. In the section titled "What we expect from you," it says "you"—not "other users"—"must agree to these basic rules of conduct." Dkt. 49-13 at 5. This is a promise made by Plaintiffs, not Google. Nothing in the agreement suggests Google undertook to become a global law enforcer. *See id.* at 5 ("*If* we act on a report of abuse . . .").

Plaintiffs argue the contract would fail for lack of mutuality if Google is not required to act as the world police. Mutuality is satisfied, however, because Google has set forth its obligations in the section called "What you can expect from us." Dkt. 49-13 at 3–4; *Lantis Laser, Inc. v. Ice Cold Stocks, LLC*, 2008 WL 11338191, at *2 (C.D. Cal. Sept. 23, 2008) (mutuality requires both parties to have definite obligations).

#### 2.      Alleged Breach Two

Plaintiffs claim that the scope of "health information" covered by Google's Privacy Policy is ambiguous and requires resolution of fact disputes. Not so. Google's Privacy Policy defines health information as "your medical history, vital signs and health metrics (like blood glucose levels), and other *similar* information related to *your* physical and mental health." Dkt. 49-20 at 18 (emphasis added). On its face, this language does not encompass all conceivably health-related information, such as event metadata concerning Plaintiffs' activity on healthcare websites. It refers to *actual* medical history or metrics about the specific user. Plaintiffs' interpretation of this language reads the limiting term "similar" right out of the Privacy Policy.

Plaintiffs claim they have alleged the collection of *actual* medical history information, but that is wrong. Plaintiffs make only conclusory, cookie-cutter assertions about the information allegedly collected by Google. CAC ¶¶ 19–31. And their explanation of the "Health Information" illustrates that it constitutes their internet activity. *Id.* ¶¶ 33–36. This is not the actual medical history encompassed by Google's Privacy Policy. *See Smith,* 262 F. Supp. 3d at 954–55 (N.D. Cal. May 9, 2017) (health-related internet activity data not PHI); *Kurowski*, 2023 WL 4707184, at *4 (browsing metadata on healthcare provider's website "does not in the least bit fit" into the category of individually identifiable health information covered by HIPAA).

Plaintiffs seek to distinguish *Smith* on the basis that the class was not "limited to" patients, the relevant websites were not "limited to" HIPAA-covered entities, and did not involve a similar policy. Opp. at 36. They do not explain how these differences impact the court's conclusion about the *nature* of the subject data, which equally involved data regarding specific doctors, treatments, and conditions. *Smith*, 262 F. Supp. 3d at 954–55. And of course, *Kurowski* involved the very same class and entities and alleged data at issue here.

Plaintiffs do not dispute that Google's Privacy Policy discloses that it collects internet activity information, or that it identifies controls that govern such collection. They argue, however, that the Court should disregard these because the "specific" term governing health information prevails over the "general" terms about web activity. Opp. at 36. Plaintiffs omit that this canon of interpretation only applies when the two terms conflict. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 892 (9th Cir. 2003). Plaintiffs do not identify a conflict, and *Smith* and *Kurowski* show there is none. Plaintiffs cannot state a claim simply by ignoring the rest of the Privacy Policy. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 787, 832–33 (N.D. Cal. 2020) (dismissing claim that Google breached Privacy Policy by sharing data without consent where Plaintiffs failed to address other circumstances enabling Google to share data).

### 3. Alleged Breaches Three, Four, Five and Six

Plaintiffs make no effort to identify any allegation that they received a personalized advertisement based on their health data. They point to their expert declarations in an effort to cure what their pleadings lack. Opp. at 37. This failure is unsurprising. The Complaint itself

identifies the settings that both the advertisers and the plaintiffs must enable in order to make their claim remotely possible. This includes advertisers linking analytics and ads accounts and activating Signals, and users enabling relevant My Activity and Ads Personalization controls. *Id.* ¶¶ 150–56, 166, 167. Plaintiffs do not allege any of this occurred.

### 4. Alleged Breaches Five, Six, Eight, Nine, Ten, Eleven, and Twelve

Plaintiffs do not dispute that Google's Privacy Policy did not identify the documents allegedly supporting alleged breaches five, six, and eight through twelve. Rather, they contend it is enough that they be linked within the Privacy Policy or linked to documents accessible from it. That is incorrect. *Rodriguez*, 2021 WL 6621070, at *4 (no incorporation by reference where Google linked to a document with a hyperlink reading "learn more here" but did not reference the document itself). Plaintiffs' sole cited authority does not hold otherwise; the incorporated document there was named unequivocally, as the law requires, and repeatedly. *See in re Facebook, Inc., Cons. Privacy Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (Data Use Policy was part of contract where the document was named and discussed multiple times).

## F. Breach of Implied Contract (Counts 11 & 12)

An implied contract is created by conduct, not words. Cal. Civ. Code § 1621; *Stanley v. Univ. S. Cal.*, 178 F.3d 1069, 1078 (9th Cir. 1999). Plaintiffs still have not identified what conduct—not words—created an implied contract. The Opposition merely incants the word "conduct" before pointing to words ("Google's various promises"). Opp. at 39. Aside from this, Plaintiffs identify their own expectations and various laws to support their claim. But neither unilateral expectations nor statutes create an implied contract. *See Zenith Ins. Co. v. O'Connor*, 148 Cal. App. 4th 998, 1010 (2007) (plaintiff did not adequately allege implied contract based on subjective belief); *Metzger v. Wells Fargo Bank, N.A.*, 2014 WL 1689278, at *7 (C.D. Cal. Apr. 28, 2014) ("[A]n implied covenant is based on the terms of the contract, rather than statutory duties imposed."). Plaintiffs' argument that their unilateral expectations were objectively reasonable is irrelevant; it does not show *mutual* agreement and intent. *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1508 (2012). In fact, Plaintiffs' assertion that Google "encourages" and "assists" providers to violate their rights negates any assertion of mutual intent.

Plaintiffs claim their implied contract claim is not duplicative because they allege the very same promises and breaches in the alternative, in case the TOS and Privacy Policy are not an "express contract." Opp. at 39. But an implied contract is a distinct species of contract, not a second bite at the apple when a plaintiff cannot show an express contract is enforceable. Because Plaintiffs base their claim on Google's words, not conduct, they must bring an express contract claim or none at all. *See Stanley*, 178 F.3d at 1078; *Hammerling*, 615 F. Supp. 3d at 195–96.

## G.    Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 13)

Plaintiffs' explanation of their implied covenant claim makes no sense. Plaintiffs state, without elaboration, that Google "'abused its power' to define key terms within the contract that are relevant to the collection and use of their Health Information." Opp. at 39. What does that even mean? Neither the Complaint nor Plaintiffs' opposition elucidates.

Perhaps the argument that Google "abused its power" in crafting the definition sounds in unconscionability. *See Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013) ("California law regarding unconscionable contracts . . . reflects a generally applicable policy against abuses of bargaining power."). But the invalidity of Google's TOS and Privacy Policy also invalidates Plaintiffs' contract claims. Plaintiffs cannot have it both ways, and in neither case have Plaintiffs stated a valid implied covenant claim.

## H.    Unjust Enrichment (Count 13)

Unjust enrichment is unavailable in these circumstances. *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020) (an unjust enrichment claim is unavailable where a contract governs "unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid"). Plaintiffs' sole cited authority is inapposite because it did not involve allegations of a binding contract that rendered a quasi-contract claim unavailable. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

## III.    CONCLUSION

Because Plaintiffs made no effort to assert factually consistent allegations, they cannot amend to state a claim without contradicting their allegations. The Court should grant the motion without leave to amend. *Garmon v. County of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016).

Dated:  September 7, 2023

WILLKIE FARR & GALLAGHER LLP
Benedict Hur
Simona Agnolucci
Eduardo Santacana
David Doak
Joshua Anderson
Tiffany Lin
Harris Mateen
Naiara Toker
Zoe Packman


By:  */s/ Benedict Hur*
     Benedict Hur

     Attorneys for Defendant
     GOOGLE LLC