**SIMMONS HANLY CONROY, LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
*jaybarnes@simmonsfirm.com*
*atruong@simmonsfirm.com*
*ejohnson@simmonsfirm.com*

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
Nicole Ramirez Jones, State Bar No. 279017
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
*koncius@kiesel.law*
*ramirezjones@kiesel.law*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (admitted *pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
*jguglielmo@scott-scott.com*

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
*clevis@lowey.com*
*afiorilla@lowey.com*

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Michael W. Sobol, State Bar. No. 194857
Melissa Gardner, State Bar No. 289096
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
*msobol@lchb.com*
*mgardner@lchb.com*

**LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP**
Douglas Cuthbertson (admitted *pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-950
Facsimile: (212) 355-9592
*dcuthbertson@lchb.com*

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE, *et al.*, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>GOOGLE LLC,<br><br>     Defendant.<br><br>**This document applies to: All Actions** | Case No. 3:23-cv-02431-VC<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO GOOGLE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Vince Chhabria<br>Date:  February 29, 2024<br>Time:  10:00 AM<br>Ctrm: 4, 17th Floor |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ...................................................... 1

III.   PLAINTIFFS' FACTUAL ALLEGATIONS.......................................................... 1

IV.   ARGUMENT .......................................................................................................... 4

     A.     Heightened Standards of Rule 9(b) ............................................................ 4

     B.     Plaintiffs Adequately Pled a Federal Wiretap Claim (Count 1) ............................ 4

            1.     Google's Consent Defense Fails.................................................... 4

                   a)     Google Cannot Show Health Care Providers' Consent ................ 4

                   b)     Google's Conduct Is Criminal and Tortious.................................. 6

            2.     Plaintiffs Adequately Allege Intentional Conduct.................................... 7

     C.     Plaintiffs Adequately Pled a State Wiretap (CIPA) Claim (Count 2)................... 8

            1.     There is No Vendor Exception to Liability Under Section 631................ 8

            2.     Google Recorded Confidential Communication Under Section 632....... 10

     D.     Plaintiffs Adequately Pled Privacy Claims (Counts 3 and 4)............................ 10

     E.     Plaintiffs Adequately Pled a UCL Claim (Count 5) ............................................ 12

     F.     Plaintiffs Adequately Pled Trespass to Chattels and Conversion Claims (Counts 6 and 12).................................................................................................... 13

     G.     Plaintiffs Adequately Pled a CDAFA Claim (Count 7)........................................ 16

            1.     Plaintiffs Have Standing Under Penal Code § 502(e)(1)........................ 16

            2.     Plaintiffs Allege the Requisite Scienter .................................................. 19

     H.     Plaintiffs Adequately Pled Breach of Contract (Count 8) ................................... 19

     I.     Plaintiffs Adequately Pled Breach of Implied Contract (Count 9)...................... 23

     J.     Plaintiffs Adequately Pled Implied Covenant of Good Faith and Fair Dealing (Count 10) ................................................................................................ 23

**<u>TABLE OF CONTENTS</u>**
**(continued)**

**Page**

K.      Plaintiffs Adequately Pled an Unjust Enrichment Claim (Count 11) .................. 24

V.    CONCLUSION ............................................................................................................ 25

**TABLE OF AUTHORITIES**
(continued)

Page

**Cases**

*Alderson v. U.S.*
  718 F. Supp. 2d 1186 (C.D. Cal. 2010) .................................................................... 14

*Ante v. Off. Depot Bus. Servs.*
  641 F. Supp. 2d 906 (N.D. Cal. 2009) ..................................................................... 25

*Astiana v. Hain*
  783 F.3d 753 (9th Cir. 2015) .................................................................................. 25

*Baggett v. Hewlett-Packard Co.*
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) .................................................................. 14

*Brown v. Google, LLC*
  2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .................................................... 12, 20

*Brown v. Google, LLC*
  2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ........................................................... 18

*Brown v. Google, LLC*
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) .............................................................. 5, 6, 7

*Byars v. Hot Topic, Inc.*
  2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ........................................................... 9

*Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*
  2019 WL 4450842 (N.D. Cal. Sept. 17, 2019) ......................................................... 23

*Calhoun v. Google, LLC*
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................................................ 5, 12, 14

*Caraccioli v. Facebook, Inc.*
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) .................................................................. 11

*Casillas v. Berkshire Hathaway Homestate Ins.*
  79 Cal. App. 5th 755 (2022) .................................................................................. 15

*Chauhan v. Google LLC*
  2023 WL 5004078 (N.D. Cal. Aug. 4, 2023) ...................................................... 23, 24

*Clark v. Yodlee*, Inc.
  3:20-cv-05991-SK, ECF No. 356 (N.D. Cal. Sept. 15, 2023) .................................... 25

# TABLE OF AUTHORITIES
**(continued)**

Page

*Cline v. Reetz-Laiolo*
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................. 15

*Cottle v. Plaid Inc.*
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................... 19

*Daniel v. Ford Motor Co.*
  806 F.3d 1217 (9th Cir. 2015) .............................................................................. 21

*Del Vecchio v. Amazon.com Inc.*
  2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) ..................................................... 19

*Desnick v. ABC*
  44 F.3d 1345 (7th Cir. 1995) .................................................................................. 5

*Deteresa v. ABC*
  121 F.3d 460 (9th Cir. 1997) .................................................................................. 6

*Doe v. Meta Platforms, Inc.*
  2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ...................................................... 6, 7

*eBay, Inc. v. Bidder's Edge, Inc.*
  100 F. Supp. 2d 1058 (N.D. Cal. 2000) ................................................................ 15

*Erhart v. BofI Holding, Inc.*
  612 F. Supp. 3d 1062 (S.D. Cal. 2020) ............................................................. 13, 14

*ESG Cap. Partners, LP v. Stratos*
  828 F.3d 1023 (9th Cir. 2016) .............................................................................. 24

*Facebook v. Power Ventures, Inc.*
  2010 WL 3291750 (N.D. Cal. July 20, 2010) ....................................................... 18

*Flores-Figueroa v. U.S.*
  556 U.S. 646 (2009) ............................................................................................. 19

*Flores-Mendez v. Zoosk, Inc.*
  2022 WL 357500 (N.D. Cal. Feb. 7, 2022) ........................................................... 13

*Gardiner v. Walmart Inc.*
  2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................................ 12

*Global-Tech Appliances, Inc. v. SEB, S.A.*
  563 U.S. 754 (2011) ............................................................................................... 8

## TABLE OF AUTHORITIES
### (continued)

Page

*Gonzales v. Uber Techs., Inc*.
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................. 12

*Grace v. Apple, Inc.*
   2017 WL 3232464 (N.D. Cal. Aug 21, 2017) ................................................... 15, 16

*Grace v. Apple, Inc.*
   2019 WL 3944988 (N.D. Cal. 2019) ..................................................................... 14

*Graham v. Noom*
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................ 8, 9, 11

*Griffith v. TikTok, Inc.*
   2023 WL 7107262 (C.D. Cal. Oct. 6, 2023)...................................................... 14, 16

*Hall v. FCA US LLC*
   2022 WL 1714291 (9th Cir. May 27, 2022) ........................................................... 21

*Hass v. Travelex Ins. Servs. Inc.*
   555 F. Supp. 3d 970 (C.D. Cal, 2021) .................................................................. 25

*In re Carrier IQ, Inc.*
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................. 17, 19

*In re Facebook, Inc.*
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................... 24

*In re Facebook, Inc. Internet Tracking Litig.*
   956 F.3d 589 (9th Cir. 2020) ..................................................................... 8, 10, 18

*In re Google Asst. Priv. Litig*.
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................... 7, 11

*In re Google Referrer Header Priv. Litig.*
   465 F. Supp. 3d 999 (N.D. Cal. 2020) ................................................................... 22

*In re iPhone Application Litig.*
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................... 14, 16, 19

*In re Meta Pixel Healthcare Litig.*
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................... 11

*In re Pharmatrak*
   329 F.3d 9 (1st Cir. 2003).................................................................................... 5

## TABLE OF AUTHORITIES
### (continued)

Page

*In re: Lenovo Adware Litig.*
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ........................................................................ 15

*Intel Corp. v. Hamidi*
    30 Cal. 4th 1342 (2003) ..................................................................................... 13, 15, 16

*Javier v. Assurance IQ, LLC*
    2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ................................................................... 9

*Ji v. Naver Corp.*
    2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) ............................................................... 12

*Johnson v. Blue Nile, Inc.*
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................................. 9

*Katz-Lacabe v. Oracle Am., Inc.*
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .................................................... 9, 11, 12

*Kissel v. Code 42 Software, Inc.*
    2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ............................................................. 13

*Kurowski v. Rush Sys. for Health*
    2023 WL 4707184 (N.D. Ill. July 24, 2023) ...................................................... 16, 17, 21

*Kwikset Corp. v. Superior Ct.*
    51 Cal. 4th 310 (2011) ............................................................................................... 12

*LaCourt v. Specific Media, Inc.*
    2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ............................................................. 16

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ..................................................................................... 10

*Lindsay-Stern v. Garamszegi*
    2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) ........................................................... 17

*LMC v. ABC*
    1997 WL 405908 (D. Ariz. Mar. 27, 1997) ................................................................... 6

*Low v. LinkedIn Corp.*
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................................................... 11

*McDonald v. Kiloo ApS*
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ...................................................................... 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Mintz v. Mark Bartelstein & Assocs. Inc.*
  906 F. Supp. 2d 1017 (C.D. Cal. 2012) ................................................... 18

*Monster Energy Co. v. Integrated Supply Network, LLC*
  533 F. Supp. 3d 928 (C.D. Cal. 2021) ..................................................... 25

*Myers v. Stephens*
  233 Cal. App. 2d 104 (Ct. App. 1965) ..................................................... 16

*Nguyen v. Barnes & Noble Inc.*
  763 F.3d 1171 (9th Cir. 2014) ................................................................. 10

*NovelPoster v. Javitch Canfield Grp.*
  140 F. Supp. 3d 954 (N.D. Cal. 2014) ..................................................... 17

*Olyaie v. Gen. Elec. Cap. Bus. Asset Funding Corp.*
  217 F. App'x 606 (9th Cir. 2007) ............................................................. 24

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*
  214 F. Supp. 3d 808 (N.D. Cal. 2016) .................................................. 6, 7

*Pratt v. Higgins*
  2023 WL 4564551 (N.D. Cal. July 17, 2023) ......................................... 17

*Price v. Carnival Corp.*
  2024 WL 221437 (S.D. Cal. Jan. 19, 2024) .............................................. 9

*Ribas v. Clark*
  38 Cal.3d 355 (1985) ............................................................................. 8, 9

*Rodriguez v. Google*
  2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ................................................ 18

*Rodriguez v. Google, LLC*
  2021 WL 2026726 (N.D. Cal. May 21, 2021) .......................................... 12

*Rogers v. Ulrich*
  52 Cal. App. 3d 894 (1975) ....................................................................... 9

*S. Cal. Gas Co. v. City of Santa Ana*
  336 F.3d 885 (9th Cir. 2003) ................................................................... 21

*San Miguel v. HP Inc.*
  317 F. Supp. 3d 1075 (N.D. Cal. 2018) ................................................... 15

## TABLE OF AUTHORITIES
### (continued)

Page

*Smith v. Facebook*
   262 F. Supp. 3d 943 (N.D. Cal. May 9, 2017)..................................................... 22

*Sonner v. Premier Nutrition Corp.*
   917 F.3d 834 (9th Cir. 2020) ....................................................................... 24, 25

*Soo v. Lorex Corp.*
   2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ...................................................... 15

*Sussman v. ABC*
   186 F.3d 1200 (9th Cir. 1999) ............................................................................. 7

*Svenson v. Google, Inc.*
   2015 WL 1503429 (N.D. Cal. April 1, 2015)....................................................... 13

*Swallow v. Roberts*
   2020 WL 1428231 (Cal. Ct. App. Mar. 24, 2020)........................................... 17, 18

*Theofel v. Farey-Jones*
   359 F.3d 1066 (9th Cir. 2003) ............................................................................. 5

*U.S. v. Christensen*
   828 F.3d 763 (9th Cir. 2015) ............................................................................... 7

*U.S. v. Johnson*
   529 U.S. 53 (2000)............................................................................................... 8

*U.S. v. McTiernan*
   695 F.3d 882 (9th Cir. 2012) ............................................................................... 6

*U.S. v. Olson*
   856 F.3d 1216 (9th Cir. 2017) ........................................................................... 19

*U.S. v. Price*
   980 F.3d 1211 (9th Cir. 2019) ........................................................................... 19

*UPPI LLC v. Cardinal Health, Inc.*
   2022 WL 3594081 (9th Cir. Aug. 23, 2022) ....................................................... 20

*Vance v. Church & Dwight Co.*
   2023 WL 2696826 (E.D. Cal. Mar. 29, 2023)..................................................... 24

*Warden v. Kahn*
   99 Cal. App. 3d 805 (1979) ................................................................................. 9

**TABLE OF AUTHORITIES**
(continued)

Page

*WhatsApp Inc. v. NSA Grp. Techs. Ltd.*
   472 F. Supp. 3d 649 (N.D. Cal. 2020) ...................................................................... 16

*Williams v. What If Holdings, LLC*
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......................................................... 9

*Yale v. Clicktale, Inc.*
   2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ........................................................... 9

*Yoon v. Lululemon USA, Inc.*
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................................................................... 10

*Zaslow v. Kroenert*
   29 Cal.2d 541 (1946) ................................................................................................ 13

**Statutes**

18 U.S.C § 1030(c)(4)(A)(i)(I) ......................................................................................... 19

18 U.S.C § 1030(e)(11) .................................................................................................... 19

18 U.S.C § 1030(e)(8) ...................................................................................................... 19

18 U.S.C. § 2511(a) ............................................................................................................ 4

18 U.S.C. § 2511(c) ............................................................................................................ 4

18 U.S.C. § 2520 ................................................................................................................. 4

42 U.S.C. 1320d-6 .............................................................................................................. 7

8 U.S.C. § 2511(2)(d) ........................................................................................................ 6

Cal Civ. Code § 1798.91 .................................................................................................. 13

Cal. Civ. Code § 3336 ...................................................................................................... 16

Cal. Pen. Code § 502(c)(1-3) ..................................................................................... 17, 19

Cal. Pen. Code § 502(c)(5) .............................................................................................. 17

Cal. Pen. Code § 502(c)(6-7) ........................................................................................... 19

Cal. Pen. Code § 502(c)(6-8) ........................................................................................... 17

Cal. Pen. Code § 502(e)(1) .............................................................................................. 17

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Pen. Code § 502(e)(2) ................................................................ 18

Cal. Pen. Code § 631(a) ................................................................... 8

Cal. Pen. Code § 632 .................................................................. 8, 10

**Other Authorities**

Cal. Civ. Jury Instruction 1812 ....................................................... 19

Restatement (Second) of Torts § 218 .............................................. 16

Restatement (Second) of Torts § 218, cmt. h ................................... 15

Restatement (Second) of Torts § 892A(3), cmt. g ............................. 5

**Rules**

Fed. R. Civ. P. 12(B)(6) ................................................................ 10

Fed. R. Civ. P. 8(d)(2) .................................................................. 25

Fed. R. Civ. P. 8(d)(3) .................................................................. 25

Fed. R. Civ. P. 9(b) ...................................................................... 13

## I.    <u>INTRODUCTION</u>

Plaintiffs adequately plead their claims. Google's motion to dismiss ignores large swaths of the complaint in order to reframe its intentional, self-interested privacy violations as merely the clerical activities of a disinterested service provider. Setting aside that the complaint details how Google intentionally tracks, collects *and uses* patients' Health Information acquired through at least seven different products for its own purposes, Google disputes its alleged "intent" as though none of Plaintiffs' factual allegations and evidence has weight. Google instead focuses almost entirely on how one product—Google Analytics—may incidentally provide Health Care Providers some benefit. Google's attempt to minimize the misconduct alleged by focusing on the unenforced paper prohibitions in policy documents attached to its motion, and hypothetical benefits of Google Analytics, is simply not supported by the robust allegations laid out in the complaint. Google cannot prevail on its motion by ignoring key allegations in the case.

Similarly, Google misconstrues case law, manufactures statutory exceptions that do not exist, and purports to raise legal defenses that have been squarely rejected in this District and California jurisprudence. Plaintiffs' allegations that Google intentionally tracked patients of at least 5,000 Health Care Providers; that its tracking, interception, and collection of patient Health Information includes individual identifiers, browsing history, and nearly every patient action and communication taken on the web property—spanning from patient status to their actual conditions and medical appointments; and that Google subsequently *uses* this private data through aggregation, association, and profiling of individuals' Health Information to feed its advertising systems, is sufficient under the law to state the twelve claims asserted in the operative complaint. Google's motion to dismiss should be denied.

## II.    <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Whether, in viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs have adequately stated claims upon which relief can be granted.

## III.    <u>PLAINTIFFS' FACTUAL ALLEGATIONS</u>

Plaintiffs allege, with substantial evidentiary support, that Google intentionally tracked and intercepted patient identifiers, browsing information, communications and other data containing

patient statuses, doctors, conditions, treatments, requests for appointments, and prescriptions ("Health Information") on an estimated 91% of all U.S. Health Care Provider (HCP) web properties. *See* Dkt. 86, First Am. Compl. ("FAC") ¶¶ 2, 33-36, 61, 155, 483-84, 486 (unless otherwise indicated, citations herein preceded by "¶" are to the FAC). The FAC chronicles Google's surveillance tools and systems that Plaintiffs' investigation has identified to date, which are the same in key respects: each time patients visit affected web properties, one or more of Google Ads, Google Display Ads, Google Analytics ("GA"), Google Tag and Tag Manager, Firebase SDK, Google APIs, and YouTube ("Google Source Code") deposits cookies on patients' computing devices, and commands them to re-direct identifiers and communications to Google's servers, where Google stores this private data. ¶¶ 5, 37-114; 123-155. These processes occur during patients' communications with their HCPs through GET and POST requests and other processes that are invisible to the patient. ¶¶ 5, 56-57, 70, 71, 106-114. The Health Information that Google captures is personally identifiable, because it is transmitted alongside unique identifiers and linked to other identifying information, such as a users' Google Account. ¶¶ 186-202.

Google Source Code fundamentally operates in service to Google. While offering some value to HCPs was a necessary prerequisite for Google to gain access to their websites, the massive scale of Google's data acquisition and subsequent use illustrates the incidental nature of any benefit to HCPs, which far exceeds their need for Google to "track" their own patients. ¶ 45. Google's self-serving uses of Health Information further emphasize the point: Google Ads employs Health Information to "customize" Google's highly profitable Search Ads campaigns for particular viewers, filtering patients into and out of audiences for advertisements on sites with no connection to HCPs, through positive and negative "remarketing" lists. ¶¶ 131-36, 141-42. Health Information flows directly through GA into Google's advertising systems whenever HCPs accept Google's pervasive invitations to "link" it to any of at least ten other Google advertising products. ¶¶ 46, 161-175. Even when HCPs take no such action, Google *still* uses *all* of the information it collects to research, refine, and improve its own products and services, which predominantly involve advertising by clients other than HCPs, on other websites. ¶¶ 7, 43-45, 117-119, 123-85.

Google knew and intended the Google Source Code to collect Health Information for these

purposes in the manner alleged. ¶¶ 204-224, 303-06, 410-11, 483, 484, 486. While Google has the capability to prevent Health Information from entering its systems, purports to prohibit the same, and promises to enforce such prohibitions, it chooses not to. ¶¶ 267-302. Instead, Google encourages HCPs to install its surveillance tools "on every page of [the] website" and "in the header, to ensure that Google has access to all communications exchanged on a web-property." ¶ 120. Google has benefited immensely from the expansion of Google Source Code into protected patient-provider interactions, honing its advertising services and systems and reaping significant revenues from Health Information. ¶¶ 361-63, 570-89. Design features of the Google Source Code, like Google's decision to disguise GA "_ga, _gid, and _gcl_au" cookies as "first party" cookies, effectively prevent patients from controlling Google's access to their devices and information when they visit HCP web properties. ¶¶ 45, 48, 54-56, 155.

Plaintiffs and similarly situated patients lacked awareness of these facts. ¶¶ 20-31. Plaintiffs reasonably expected that any Health Information exchanged with their HCPs would not be tracked and collected by Google, let alone be associated with their Google Accounts and other identifiers, used to power "remarketing" campaigns, or used to improve other revenue-generating services for Google. ¶¶ 226-28, 491. Plaintiffs' expectations are consistent with:

• Promises that Google posted to public forums for all Google users that Google would not "collect health information" unless "you choose to provide it," and would enforce rules prohibiting such collection and any advertising use. ¶¶ 281, 282-83, 289; Exs. 47-48;

• Corresponding public promises to HCPs that Google would use any information from their websites "in accordance with" the promises to Google users. ¶ 282;

• State and federal laws, directives, and regulations establishing that the "content" of online communications, "personal information" and "medical information" is protected from non-consensual acquisition. ¶¶ 231-65, 240, 244, 249-65; and

• Directives from the U.S. Dept. of Health and Human Services and the Federal Trade Commission that the activity alleged is illegal under HIPAA and the FTC Act. ¶¶ 241-43.

Plaintiffs would not be using the HCP web properties in the manner that they did, or would not have used them at all, if they had known the truth. ¶¶ 385-88, 468-70. As a result of Google's actions, Plaintiffs lost control of their Health Information along with the ability to profit from the market value of that data to Google. ¶¶ 341-68. Plaintiffs further were subjected to Google's use of their computing devices, without permission, and have had to expend time and resources to

investigate and understand who is responsible, what happened, and what they can do for a remedy. ¶¶ 20-31, 518. Because Google's interception is ongoing and cannot be prevented, it is not currently possible for Plaintiffs, or any reasonable person who wishes to keep communications with HCPs private, to use their computing devices free from Google's intrusions on HCP web properties at all. ¶¶ 101, 494.

## IV.   ARGUMENT

### A.   Heightened Standards of Rule 9(b)

Plaintiffs plead that Google violated privacy rights and property rights protected by statute and the common law, which do not sound in fraud. The pleading standards of Rule 9(b) do not apply. Nonetheless, the FAC meets the heightened standard because it sets forth the: *who* – Google's (¶ 32); *what*–unlawful tracking, interception, collection and use of patients' Health Information, (¶¶ 33-36); *when* and *where*–in real-time when patients are communicating with their HCPs via the HCPs' web properties, and Google's use of the data by aggregating and associating user information for purposes of advertising (¶¶ 37-114, 123-154) and *how* – via Google Source Code (¶¶ 37-114, 123-154). The FAC easily meets Rule 8(a)'s more liberal standard.

### B.   Plaintiffs Adequately Pled a Federal Wiretap Claim (Count 1)

The Electronic Communications Privacy Act prohibits a defendant from: (1) intentionally (2) intercepting (3) the contents of (4) an electronic communication (5) using a device. *See* 18 U.S.C. §§ 2511(a), 2520. The claim is subject to the affirmative defense of consent. 18 U.S.C. § 2511(c). Google does not challenge Plaintiffs' core allegation that it intercepted the contents of their electronic health communications. Instead, Google challenges the sufficiency of this claim by raising novel arguments of consent from HCPs, and proclaiming a lack of intent. As detailed below, neither of Google's fact-bound arguments support dismissal.

#### 1.   Google's Consent Defense Fails

##### a)   Google Cannot Show Health Care Providers' Consent

Google does not even try to argue that it obtained Plaintiffs' consent. Instead, Google claims that Plaintiffs' *Health Care Providers* consented to Google's interception of Plaintiffs' private Health Information. This argument fails.

Google bears the burden of proving its affirmative defense. *Calhoun v. Google, LLC,* 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). To obtain enforceable consent, a defendant must "explicitly notify" the individual of the "practice at issue." *Id.* (citations omitted). Because consent is not an "all or nothing proposition," partial disclosures do not carry the burden. *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *In re Pharmatrak*, 329 F.3d 9, 19  (1st Cir. 2003) (consent may be to interception of only "part" or "subset of" communications). Additionally, consent procured under false pretenses, by omission, or a known mistake, is invalid. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2003); *Desnick v. ABC,* 44 F.3d 1345, 1351 (7th Cir. 1995); *see also* Restatement (Second) of Torts § 892A(3), cmt. g ("the reasonable interpretation of consent may limit it to a reasonable time and place, or those reasonable in other respects").

Google ignores this legal framework. It contends that HCPs authorized Google to obtain patients' Health Information based on Google's interpretation of a TOS (not even properly before the Court) which, construed favorably to Google, might demonstrate partial disclosures that Google Source Code was present, but not the "practice at issue," *i.e.* intercepting Health Information. *See* MTD at 3. Contrary to Google's assertions, this Court has not held otherwise. Dkt. 76 (10/18/23 PI Order) at 3 (noting consent only to "the use of Google source code on their web properties"). Indeed, Google *denies* collecting Health Information and thus cannot claim that it "explicitly notif[ied]" HCPs, or anyone else, of the practices alleged. *See e.g.*, Dkt. 48 at 1-2, 7-8 (Google arguing to this Court that "none of the information" at issue "included . . . health details" and that the data is "pseudonymous, not personally identifiable").

Google further contends that HCPs provided consent through their conduct. MTD at 7-8 ("[a]s the Websites chose to use GA, they obviously consented to it"). Courts have repeatedly rejected the proposition that merely choosing to use a service automatical*y* conveys actual, broad consent to any and all misconduct stemming from that use. *See, e.g., Pharmatrak,* 329 F.3d at 20; *Brown,* 525 F. Supp. 3d at 1068. Google presents *no evidence* to support actual or implied consent, nor does it attempt to show how the general "use" of GA would reasonably encompass specific consent to the widespread interception of actual patients' identifiable Health Information. *See Doe*

*v. Meta Platforms, Inc.*, 2023 WL 5837443, *5 (N.D. Cal. Sept. 7, 2023) (rejecting argument that HCPs consented to interception of Health Information because it is dependent on what was "disclosed" how it was "described" and what HCPs "understood" about "information [that] . . . would be collected"). Whether HCPs would even have the legal authority to provide the consent that Google attempts to manufacture here is questionable, given the patient protections secured by HIPAA and similar statutes.

Indeed, consistent with those laws and reasonable expectations, Google's actual representations to HCPs make clear consent is lacking. Google tells HCPs that it "does not want personally identifiable information" and purports to "prohibit" them from sharing this type of data. MTD at 8. It is more plausible to interpret Google's GA policy documents, if considered, to say that using GA (or Google's other services) would *not* result in, much less provide consent for, Google to intercept the very information from their patients it purports not to want and to *prohibit* HCPs from sending. In addition, Google points HCPs, like it does all users, to its privacy policy for specific information on its data collection and use practices. ¶ 287. This policy expressly states Google does not collect "Health Information" unless "you [users] choose to provide it[.]" ¶ 282; *see also* 279-89 (alleging various Google promises regarding health information and health-related advertising, all of which Google violates). Google's argument that HCPs make that choice *for* patients is inconsistent with Google's own purported evidence and the other facts alleged.

b)      Google's Conduct Is Criminal and Tortious

Even if Google could establish consent (it has not), consent is invalid when obtained "for the purpose of committing any criminal or tortious act." 8 U.S.C. § 2511(2)(d). This occurs when the "purpose" of the interception is to "facilitat[e] some further impropriety." *U.S. v. McTiernan*, 695 F.3d 882, 889 (9th Cir. 2012). "Criminal or tortious acts" include invading privacy, committing fraud, engaging in unfair business practices, trespass, and violating computer crime laws. *See, e.g. Deteresa v. ABC*, 121 F.3d 460, 467, n.4 (9th Cir. 1997) (invasion of privacy, fraud, unfair practice); *LMC v. ABC*, 1997 WL 405908, at *2 (D. Ariz. Mar. 27, 1997) (trespass); *Brown*, 525 F. Supp. 3d at 1067 (CDAFA and intrusion); *Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (privacy) *rev'd on other grounds*

51 F.4th 1123, 1136 (9th Cir. 2022). No partially "lawful purpose" can "sanitize" an interception "made for an illegitimate purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999).

Here, Google tortiously trespassed and intruded upon seclusion, violated the UCL and state computer crime laws, and violated state and federal prohibitions on obtaining patient information. 42 U.S.C. 1320d-6; ¶¶ 244, 338, 408-11. Google's interception occurs for the illegitimate purposes of compiling protected information to which it has no right, and subsequently *using* that Health Information to profile users and ultimately feed its advertising machine. ¶¶ 123-75. These purposes are inherently unlawful and, at a minimum, a further violation of users' privacy distinct from the interception itself. *See Brown,* 525 F. Supp. 3d at 1068 (rejecting consent defense because "purpose of [interception was to] associate[e] their data with user profiles" which is "criminal or tortious"); *Planned Parenthood*, 214 F. Supp. 3d at 828 (holding intent to commit "*further* invasion of privacy tort" through disclosure satisfies "tortious act" exception). Thus, Google's consent defense (even if valid) would still fail for this separate reason.

## 2.    Plaintiffs Adequately Allege Intentional Conduct

Plaintiffs' allegations regarding Google's intent are more than adequate. Intent is satisfied where a defendant is "aware [that the interception] was occurring." *See In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020); *U.S. v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) ("intentionally" means "purposefully and deliberately and not as a result of accident or mistake"). Google—as the designer and creator of the very technology that performs the interception, and the entity who receives, stores, and uses the intercepted Health Information— was well aware the interception was occurring. This is the entire point of the Google Source Code.

Google cannot negate its intent by pointing to its own self-serving policy where it purports to claim it does not want to intercept identifiable information. MTD at 8. What Google *actually* intends cannot be surmised by its own self-serving claims. *See Meta Platforms*, 2023 WL 5837443 at *3 (rejecting same argument because regardless of what a defendant may "tell third parties" about its "inten[t]" the defendant's "true intent" requires a "full evidentiary record"). As set out in the FAC, Google's policies did not, in fact, prevent the foreseeable transmission of protected information to Google, and were plausibly *intended* to do no more than provide a modicum of

deniability for Google, whose continued receipt and use of this information render any lack of knowledge "willful blindness" at best. *Global-Tech Appliances, Inc. v. SEB, S.A.*, 563 U.S. 754, 766-769 (2011) (finding defendant who "deliberately shield[s] themselves from clear evidence of critical facts … are just as culpable as those who have actual knowledge").

### C.    Plaintiffs Adequately Pled a State Wiretap (CIPA) Claim (Count 2)

The California Invasion of Privacy Act Section 631 prohibits using electronic means to "learn the contents or meaning" of any "communication" without the consent of all parties. Cal. Pen. Code § 631(a). Google incorrectly argues that the CIPA claim fails because: (1) it falls under a purported "vendor" exception; (2) that it did not record confidential communications under § 632; and (3) in any event did not act with intent. Google's intent argument should be rejected for the reasons stated in § IV.B.2. Plaintiffs address the remaining two arguments below.

### 1.    There is No Vendor Exception to Liability Under Section 631

Google dramatically overstates the holding of *Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) in claiming that "[a] vendor who provides a tool for a website to record user interactions is not 'intercepting' a communication and cannot be liable for the recording." MTD at 9. Section 631 makes no exception for "vendors," and *Noom* did not create one. *See In re Facebook, Inc. Internet Tracking Litig. ("FB Tracking")*, 956 F.3d 589, 608 (9th Cir. 2020) (refusing to recognize "exception" to CIPA that would deem interloper a "party" to communication); *U.S. v. Johnson*, 529 U.S. 53, 58 (2000) (Courts lack authority to create statutory exceptions).

California Supreme Court jurisprudence calls into question *Noom's* actual holding (that a third-party service provider or "vendor" *can* in limited circumstances, lawfully provide recording services), because the high Court has found liability in what might qualify as "vendor" cases. In *Ribas v. Clark*, 38 Cal.3d 355 (1985), liability was found when an attorney for one of the parties to a conversation (*i.e.,* a vendor) secretly listened in, at her client's request. The Court explained that the Act protected against any "simultaneous dissemination [of a communication] to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360 (citation omitted). The Court concluded: "it is probable that the Legislature viewed section 631 as a means of proscribing attempts to circumvent other aspects of the Privacy Act, e.g. by requesting

a secretary to secretly transcribe a conversation over an extension[.]" *Id.* at 361; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (rejecting *Noom* entirely as inconsistent with CIPA's plain language). Google's authority does not support its argument.

Putting aside the merits of *Noom's* reasoning as applied to the session replay software at issue there, Google's position defies the facts here. Far from exempting every software service provider from CIPA liability, *Noom* and every other Court evaluating this (questionable) defense distinguish between *passive* entities that do not, or could not, themselves process or otherwise use the data, and those who go beyond merely acting as a "tape recorder" and engage in pervasive data mining, usage, and aggregation. *See* MTD at 9 (citing *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (asking whether purported vendor "intercepted and used the data itself")). Nearly all of Google's cases draw the same distinction. *See* MTD at 9-10 (citing *Byars v. Hot Topic, Inc.,* 2023 WL 2026994, at *8 (C.D. Cal. Feb. 14, 2023); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021)). Google's final two cases do not discuss any type of third-party vendor exception, only liability of direct participants. *See* MTD at 9 (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)).

Here, Google's widespread and pervasive interception of Health Information, and subsequent use, association, and aggregation for its own gain support its CIPA liability. ¶¶ 117-19, 123-185; *see Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *9 (N.D. Cal. Apr. 6, 2023) ("weight of the authority in this Circuit teaches that [a data collector] is not a party" to communications with another entity); *Price v. Carnival Corp.*, 2024 WL 221437, at *3 (S.D. Cal. Jan. 19, 2024) (no "exception" for entity that allegedly processed data "to generate analytics").

Google refuses to confront this obvious distinction between its own conduct and the passive entities in *Noom* and *Williams*. Instead, Google argues its "use" was nevertheless permissible because it was "authorized" by HCPs. MTD at 10-11. This claim just regurgitates Google's failed consent defense (*see* § IV.B.1)—HCPs do not authorize Google's interception and use of their patients' Health Information. Nor could they under CIPA, which is a two-party consent statute.

At its core, Google's vendor argument is a barely clothed attempt to revive the "party to

the communication" defense that the Ninth Circuit squarely rejected in *FB Tracking*, 956 F.3d at 608. This Court should recognize and reject it as such.

### 2.    Google Recorded Confidential Communication Under Section 632

Section 632 prohibits Google from intentionally recording a "confidential communication" without consent through an electronic device. Google argues Section 632 does not apply because "the alleged recording was performed by the Websites, not Google." MTD at 11. But Google cites no authority and plainly ignores Plaintiffs' allegations that Google, via its Source Code, actually intentionally and without the consent of all parties intercepts confidential patient communications by redirecting this content to its servers. ¶¶ 37-114.

Next, Google claims the Health Information at issue is not confidential, because "each of the [HCPs] disclosed their data collection and use" such that "Plaintiffs had no reasonable expectation of privacy in their analytics data on the Websites." MTD at 11. This is wrong for at least three reasons. *First*, it relies on Google's preferred inferences from evidence that should not be considered under Rule 12. *See* Fed. R. Civ. P. 12(B)(6); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (explaining as a "general rule" a 12(b)(6) motion is limited to pleadings). Even if Google's documents were properly before the Court, no HCP could negate Google's own express promises to collect only health information users chose to provide. ¶ 282. *Second*, the Ninth Circuit has held that the mere existence or presence of terms, such as privacy policies, is insufficient to presume notice to users. *See Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1178-79 (9th Cir. 2014) (holding "terms" made "available via a conspicuous hyperlink" that "otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent" is "without more. . . insufficient to give rise to constructive notice"); *see also Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). And *third*, even if Google could establish that Plaintiffs were aware that HCP policies existed *generally* (it has not), it does not show that these policies would "disclose" to a reasonable user that Google would intercept and use their Health Information as alleged. *See* § IV.1 (enforceable disclosures must be explicit).

### D.    Plaintiffs Adequately Pled Privacy Claims (Counts 3 and 4)

Google incorrectly argues that the Privacy Claims fail for failure to plead intent. As

discussed above (§ IV.B.2), Google's claim that self-serving statements in its policies "negate" Plaintiffs' supported factual allegations raises, at most, questions that warrant an evidentiary record. That the Court in *Caraccioli v. Facebook, Inc.* (cited by Google), did not credit a *pro se* plaintiff's legal conclusion that Facebook "published" defamatory content, where Facebook's Terms of Service disclaimed publishing content, says nothing about whether Google's policies in this case are the sole evidence of its true intent. 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016).

With respect to unauthorized access, Google's claim that HCPs "authorized" its access to Plaintiffs' Health Information is a red herring. *See* IV.B.1. None of Google's authority stands for the proposition that HCPs can unilaterally authorize privacy invasions for patients. This is not surprising, as there is no single party or proxy "consent" defense to invasion of privacy claims.

Moreover, Plaintiffs' privacy claims are premised on not only Google's "access" to their Health Information, but also the analytical processing, storage, and highly offensive use that Google simultaneously makes of it. ¶¶ 6, 20-31, 594. Google's authority does not involve Health Information (at issue here) and the information at issue in those cases were not afforded a reasonable expectation of privacy. *See* MTD at 12-13 (citing *Noom*, 533 F. Supp. 3d at 835, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024–25 (N.D. Cal. 2012); *Google Asst.*, 457 F. Supp. 3d at 830)). There can be no credible dispute that Plaintiffs have a reasonable expectation of privacy in their *Health Information*, or that the collection and use of this information is highly offensive. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022) (rejecting argument by Meta in factually similar case: "Meta does not point to a single case where a court found that the collection of the kinds of [health] information at issue here did not constitute a highly offensive invasion of privacy"); *see also Katz-Lacabe*, 2023 WL 2838118 at *7-8 (upholding privacy claims in part due to collection of "vast repository of personal data" including health information and noting "determinations of the egregiousness of the privacy intrusion are not usually resolved at the pleading stage"); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035-1036 (N.D. Cal. 2019) (allegations that "data was secretly collected, how the collection was done, and how the harvested data was used" supported highly offensive element at pleading stage).

E.       **Plaintiffs Adequately Pled a UCL Claim (Count 5)**

Plaintiffs adequately plead their claims under the unlawful and unfair prongs of the UCL.

Google disputes Plaintiffs' standing allegations, but Plaintiffs plead both loss of property and economic injuries, including loss of control over and diminishment in value of their Health Information as a result of Google's unlawful and unfair conduct. *See* ¶¶ 346-59, 374 (violation of limited "data license"); ¶ 373 ("right to disgorgement and/or restitution damages for the value of the stolen data"); ¶ 374 ("loss of control over property which has marketable value"); ¶ 467 (alleging stolen property, *i.e.* personal data, which is recognized as property under California law). Contrary to Google's contention that some financial expenditure is required (MTD at 14), these allegations suffice. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323-24 (2011) (holding "the quantum of lost money or property necessary to show [UCL] standing is only so much as would suffice to establish [Art. III] injury in fact"); *Ji v. Naver Corp.*, 2023 WL 6466211, at *9 (N.D. Cal. Oct. 3, 2023) (finding UCL standing met where plaintiffs alleged "collection and use of [] data deprived [plaintiffs] of the benefit of their bargain and diminished the value of their personal data," which "is property under California law"); *Calhoun*, 526 F. Supp. 3d at 613 (loss of personal information is "economic injury" and lost "property interest"); *see also Brown v. Google, LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021). Google's authority is distinguished by a lack of such factual allegations. *See Katz-Lacabe*, 2023 WL 2838118 at *5 (plaintiffs failed to allege personal data is property that is valuable with an active marketplace or the value of stolen personal data was diminished); *Rodriguez v. Google, LLC*, 2021 WL 2026726 at *8 (N.D. Cal. May 21, 2021) (same); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (same); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *4, 6 (N.D. Cal. Mar. 5, 2021) (injury allegations too conclusory to establish damages for any claim or UCL standing).

Google argues that Plaintiffs fail to allege a "fairly traceable" injury from Google's misrepresentations because Plaintiffs do not allege they saw and took action based on them. MTD at 14. Plaintiffs' UCL unlawful claim, to be clear, is *not* predicated on Google's misrepresentations or fraud, but on Google's numerous statutory and common law violations (¶ 462). As such, the UCL unlawful claim does not require allegations of reliance. *See, e.g.*, *Svenson v. Google, Inc.*,

2015 WL 1503429, at *9-10 (N.D. Cal. April 1, 2015); *Kissel v. Code 42 Software, Inc.*, 2016 WL 7647691, at *8 (C.D. Cal. Apr. 14, 2016). As to the UCL unfairness claim, Plaintiffs do allege they relied on Google's representation that it would not collect Health Information unless they chose to provide it, and they would not have used the Health Care Provider web properties in the manner that they did or would not have used them at all, if possible, if they had known the truth. ¶¶ 468-70; *see also* ¶¶ 385-88. Such allegations suffice. *See, e.g.*, *Flores-Mendez v. Zoosk, Inc.*, 2022 WL 357500, at *3 (N.D. Cal. Feb. 7, 2022) (finding UCL standing where plaintiff alleged that he would have cancelled his subscription had defendant disclosed its practices).

On the substance of the UCL claims, the predicate violations to Plaintiffs' UCL unlawful and otherwise unfair conduct claim are well pled. *See* §§ IV.B-D. Indeed, Google does not challenge and therefore concedes that the predicate violations under the HIPAA, CMIA, CCPA, Cal Civ. Code § 1798.91 to the UCL unlawful claim (¶ 462(c)-(d)) are adequately alleged. Google's assertion that Plaintiffs' UCL unfairness claim sounds in fraud and implicates Rule 9(b) merely because they allege Google "***knows*** (or should have known) that the Google Source Code" are being improperly used "on HCP web properties" is wrong. MTD at 14 (citing ¶ 463). Knowledge "may be alleged generally" (Fed. R. Civ. P. 9(b)) and drawing all inferences in Plaintiffs' favor, it is well pled. ¶¶ 221-24, 303-06, 410-11; *see also* § IV.B.2, *supra,* (regarding sufficiency of intent allegations). Even if required, Plaintiffs' satisfy Rule 9(b). *See* § IV.A, *supra*.

### F.    Plaintiffs Adequately Pled Trespass to Chattels and Conversion Claims (Counts 6 and 12)

A claim for trespass requires an intentional but "minor interference[]" with personal property that causes "measurable" harm and "does not amount to a substantial interference with possession or the right thereto." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1357 (2003); *Zaslow v. Kroenert*, 29 Cal.2d 541, 551 (1946). A claim for conversion requires: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1123 (S.D. Cal. 2020). Despite their differences, Google challenges these claims together. Google makes four arguments in support of dismissing these claims, none of which pass scrutiny.

Intent.[1] Intent is established because it is *Google* who designed and programmed its Source Code (¶ 483), *Google* who created, controlled, and placed Google Cookies on Plaintiffs' devices (¶ 484, 486), and *Google* who intercepted and used Plaintiffs' Health Information (¶ 487). *See Grace v. Apple, Inc.,* 2019 WL 3944988, at *7 (N.D. Cal. 2019); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1269 (C.D. Cal. 2007) *see also* § IV.B.2, *supra.*

Personal Property. Google does not dispute that Plaintiffs' devices are personal property. MTD at 15. Instead, Google argues that Health Information is not property. This argument is inconsistent with the current state of the law. *See, e.g., Griffith v. TikTok, Inc.,* 2023 WL 7107262, at *10 (C.D. Cal. Oct. 6, 2023) (sustaining conversion claim based on "[p]laintiff's allegation that she had a property right in the data [d]efendants collected"); *Erhart v. BofI Holding, Inc.,* 612 F. Supp. 3d at 1123 (sustaining conversion claim where plaintiff alleged defendant "converted nonpublic personal information of [the plaintiff's] customers and employees"); *Calhoun,* 526 F. Supp. 3d at 635 ("California courts have [] acknowledged that users have a property interest in their personal information" and finding "property interest" in "personal information" for statutory larceny claim). Moreover, Google's outdated citations do not involve the type of Health Information at issue here. *See* MTD at 15-16 (citing *Alderson v. U.S.*, 718 F. Supp. 2d 1186, 1197 (C.D. Cal. 2010) (evaluating whether knowledge of employer wrongdoing is "property" in action assessing tax consequences of *qui tam* recovery); *In re iPhone Application Litig. ("iPhone App.")*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (location, zip code, and device identifiers)).

Google's separate claim that Plaintiffs cannot have a property interest in their own Health Information because it *actually* belongs to HCPs is wrong. MTD at 16. Google cites no authority for this argument, which, in fact, has been squarely rejected.[2] *Griffith*, 2023 WL 7107262 at *10

---

[1] Google erroneously argues that intent is a requirement for a conversion claim. It is not. *See Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998) (explaining "[c]onversion is a strict liability tort" and "[t]he foundation of the action rests neither in the knowledge nor the intent of the defendant."); *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014) (same). Nowhere in *Doe v. Roblox Corp.* (cited by Google) does the court speak of an intent requirement for conversion. 602 F. Supp. 3d 1243, 1264 (N.D. Cal. 2022).

[2] Under Google's logic, no one ever has electronic health information, as it is always the health information of the medical provider. This would be inconsistent with HIPAA. ¶¶ 231-32.

(rejecting argument that plaintiff's data is not property as "it belongs to []the websites she visits" and sustaining conversion claim).[3]

    <u>Harm</u>. Harm for trespass includes any "measurable" loss. *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1053 (N.D. Cal. 2018) (citing *Intel Corp.*, 30 Cal.4th at 1357). Measurable loss can arise from conduct that impairs the condition, quality, value, or otherwise deprived plaintiff of the ability to use their property. *Grace v. Apple, Inc.*, No. 17-CV-00551-LHK, 2017 WL 3232464, at *5 (N.D. Cal. Aug 21, 2017). Measurable loss need not impair the property's physical functioning, it can also arise, as here, from conduct that renders it useless from the perspective of a reasonable property owner, even where it is functionally intact. *See* Restatement (Second) of Torts § 218, cmt. h ("the use of a toothbrush by someone else may lead a person of ordinary sensibilities to regard the article as utterly incapable of further use by him"). Here, Plaintiffs allege (among other things) inability, as persons of ordinary sensibilities, to use their devices for communicating with HCPs (¶ 492) and impairment to their devices through decreased performance and storage (¶ 488). These allegations are sufficient to allege harm. *See Soo v. Lorex Corp.*, 2020 WL 5408117, at *9 (N.D. Cal. Sept. 9, 2020) (inability to use camera and cloud storage constitutes harm); *In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *9 (N.D. Cal. Oct. 27, 2016) ("degraded the performance" of device constitutes harm); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1088 (N.D. Cal. 2018) (software rendering ink cartridges unusable sufficient to constitute harm); *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1070 (N.D. Cal. 2000) (decreased bandwidth/capacity even in "small amount[s]" constitutes harm).

    Google's cited cases are inapposite, because in those cases no impairment or inability to use was alleged. *See* MTD at 16-17 (citing *Casillas v. Berkshire Hathaway Homestate Ins.,* 79 Cal. App. 5th 755, 764–65 (2022) (finding no impairment or inability to use as a result of one-time

---

[3] Google's claim that Plaintiffs do not have a property interest so long as it only engaged in "copying" is wrong. MTD at 16. Neither of the two cases it cites evaluate the property interest requirement. *See Casillas v. Berkshire Hathaway Homestate Ins.,* 79 Cal. App. 5th 755, 764–65 (2022) (evaluating whether copying of "litigation files" causes injury for purposes of trespass); *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1361-62 (2003) (evaluating if "unwelcome message[s]" cause injury for purposes of trespass). And in any event, *Calhoun* squarely rejected the argument that "copying" does not result in a "deprivation of property." 526 F. Supp. 3d at 635.

copying of "litigation files"); *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1361-62 (2003) (failure to show "unwelcome communications" caused impairment or inability to use computer); *WhatsApp Inc. v. NSA Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 685–86 (N.D. Cal. 2020) (failure to allege loss of value in server and only alleging expenditure of resources and loss of goodwill as result); *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *7 (C.D. Cal. Apr. 28, 2011) (accepting "value" of personal information may constitute harm, but finding no such allegations or allege computer performance was "compromised" beyond "loss of ability to delete cookies"); *iPhone App.*, 844 F. Supp. 2d at 1069 (failure to show injury by consumption of device memory); *Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *10 (N.D. Ill. July 24, 2023) (finding no allegation of "injury" or "interference" that could "conceivably diminish [the] value, but cabining analysis to "physical disruption" without considering other viable theories of loss)).

Lastly, Google's claim that there is no harm because the "intercept[ion]" only occurs when Plaintiffs use their devices gets it backwards. MTD at 17. It is *because* of Google's ongoing interception that Plaintiffs are now unable to use their devices as intended, that is, to privately communicate with HCPs. This constitutes harm. *Grace*, 2017 WL 3232464, at *5; Restatement (Second) of Torts § 218.

Damages. Google fails to meaningfully address whether Plaintiffs' conversion damages are sufficient, limiting its argument solely to "harm" required for the trespass claim. MTD at 17 (claiming in passing Plaintiffs do not allege "damage" without elaboration or authority). Nevertheless, conversion damages are presumed to be "[t]he value of the property at the time of the conversion." *Myers v. Stephens*, 233 Cal. App. 2d 104, 116 (Ct. App. 1965) (citing Cal. Civ. Code § 3336). Plaintiffs allege the Health Information Google wrongfully obtained has value, and therefore adequately allege damages. ¶¶ 341-368; *see also Griffith,* 2023 WL 7107262 at *10 (sustaining conversion claim based on allegations that personal information has "value").

### G.    Plaintiffs Adequately Pled a CDAFA Claim (Count 7)

#### 1.    Plaintiffs Have Standing Under Penal Code § 502(e)(1)

Plaintiffs adequately allege that they suffered "damage or loss by reason of" Google's

alleged violations of CDAFA §§ 502(c)(1-3) and (6-8). ¶ 518; Cal. Pen. Code § 502(e)(1).

Interruption and preclusion of communications with HCPs, and inability to use devices for that purpose, are well pled. ¶ 518(f), (j). Google argues, based solely on *Kurowski*, that Plaintiffs must allege they were aware of the violation in real time. This is not true. *Kurowski* was not interpreting the CDAFA. Rather, it dismissed a trespass to chattels claim under Illinois law for failure to adequately plead "physical disruption" of the chattels at issue. 2023 WL 4707184 at *9-10. In contrast, standing for the CDAFA is shown through any damages "by reason of" a violation. § 502(e)(1). The statute prohibits *both* violations that "cause[] the disruption of computer services" (§ 502(c)(5)), *and* the misconduct alleged in this case based on access, taking, and use of computer systems and data, some consequences of which materialize only after the violation is discovered, as alleged here. *Cf. In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015) (sustaining CDAFA claim involving "deeply hidden" conduct); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014) (stating "any amount of damage or loss caused by the defendant's CDAFA violation is enough to sustain the plaintiff's claims").

Plaintiffs' alleged sense of violation and invasion and loss of trust in HCPs are also well pled. ¶ 518(g), (h). Plaintiffs' privacy-related injuries caused by the transmission of Health Information without their consent suffice for standing because the CDAFA has "at [its] core the principle that [prohibited] access causes injury through an invasion of privacy." *Swallow v. Roberts*, 2020 WL 1428231, at *17 (Cal. Ct. App. Mar. 24, 2020) (explaining that privacy harms are "an important form of injury"). Thus "there is no reason to artificially constrict the scope [of damages] … and no binding precedent mandates such a holding." *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *6 (C.D. Cal. Oct. 13, 2016) ("emotional damages are cognizable" damage or loss). *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023), on which Google relies, only held that the plaintiffs failed to allege facts from which damage or loss could be inferred; not that damage based on emotional or dignitary harms is insufficient as a matter of law.

Plaintiffs plausibly allege their expenditure of time and resources to investigate and respond to Google's CDAFA violations. ¶ 518(a). In addition to investigating their use of affected HCP websites (*see* ¶¶ 20-31) and changing how (and whether) they use their computers to

communicate with Healthcare Providers, Plaintiffs retained counsel to pursue an injunction. ¶¶ 414, 521. Each response required work. *See Facebook v. Power Ventures, Inc.*, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010) (CDAFA standing established where plaintiff "expended resources," even if only a few "clicks of a mouse" and "keystrokes"); *Swallow*, 2020 WL 1428231 at *17 (devoting "time and effort to determining what data [defendant] had accessed ... is a form of [CDAFA] injury"). Google's argument that this work was unnecessary merely disputes the facts alleged. Google's contention that § 502(e)(1) *limits* compensable expenditures is specious. "[T]he statute provides for compensatory damages *including* victim expenditures." *Rodriguez v. Google*, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024) (emphasis original, rejecting identical argument); *see also e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012). Attorneys' fees are not superfluous—they compensate *counsel's* work, not Plaintiffs' expenditures of time and resources. Cal. Pen. Code § 502(e)(2).

The <u>diminution in value</u> of Plaintiffs' Health Information are adequately pled. ¶ 518(e), (i). Unlike the cases Google cites, Plaintiffs allege a market for the data and that they "have a stake in the value of their misappropriated data" sufficient to allege standing. ¶¶ 341-360; *Brown v. Google, LLC*, 2023 WL 5029899, at *19 (N.D. Cal. Aug. 7, 2023) ("Because plaintiffs proffer evidence that there is a market for their data ... the Court cannot rule, as a matter of law, that plaintiffs suffered no damages under CDAFA."). Google's Third Circuit authority predates *FB Tracking*, which, as *Brown* observed, demonstrates "plaintiffs can state an economic injury for their misappropriated data." *Id.*; *see also Rodriguez*, 2024 WL 38302, at *6 (plaintiff need not suffer a corresponding loss because "California law recognizes a right to disgorgement of profits resulting from unjust enrichment") (quoting *FB Tracking,* 956 F.3d at 599-600).

Plaintiffs' <u>uncompensated use of storage space, computer speed, and computer resources</u> are also well pled. ¶ 518 (b)-(d). Plaintiffs specifically plead that Google Source Code deposits cookies on patients' computing devices, and "commands the patient's communications device to re-direct the content of the communication." ¶¶ 5, 41, 49, 53-54, 58, 77, 89. These unauthorized uses of Plaintiffs' property are compensable. Some impairment resulting from Google's co-opting of Plaintiffs' devices is plausible, even if it was not visible to the ordinary consumer in real time;

the full extent and impact are subjects for expert testimony. Google's reliance on cases interpreting the Computer Fraud and Abuse Act (CFAA), specifically *iPhone App.*, 844 F. Supp. 2d at 1048, and the cases cited therein, is misplaced. Those decisions turned on statutory requirements not present in the CDAFA: *i.e.,* narrow definitions of "damage" as "impairment to the integrity or availability" of systems of data, and of "loss" limited to "consequential damages incurred *because of* interruption of service," and the requirement that any damage or loss must meet a $5,000.00 minimum statutory threshold. *See* 18 U.S.C § 1030(e)(8), (e)(11), (c)(4)(A)(i)(I); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021) (CDAFA lacks these requirements). The reasoning of those courts in evaluating the CFAA's separate requirements have no bearing here. The analysis should instead be consistent with Plaintiffs' authority, which supports a broad conception of "damage or loss" for CDAFA standing. *See e.g.*, *Del Vecchio v. Amazon.com Inc.*, 2011 WL 6325910, at *4 (W.D. Wash. Dec. 1, 2011); *compare In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1066 (allegations that conduct diminished and consumed resources, such as storage sufficient).

### 2.    Plaintiffs Allege the Requisite Scienter

Plaintiffs allege Google took specified actions "knowingly" *and* "without permission," which is all the law requires. Cal. Pen. Code § 502(c)(1-3), (6-7); Cal. Civ. Jury Instruction 1812; ¶¶ 510-11, 516. Google incorrectly contends that Plaintiffs must plead "Google knew it acted without permission," relying on a principle of statutory interpretation. *See U.S. v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017) (quoting *Flores-Figueroa v. U.S.*, 556 U.S. 646, 652 (2009)). When interpreting statutes with grammatical construction of the CDAFA, the Ninth Circuit explained: "it is most natural to read the adverb 'knowingly' . . . to modify the verbs that follow." *U.S. v. Price*, 980 F.3d 1211, 1219 (9th Cir. 2019). There is no reason to controvert the California legislature and create a "good faith" exception to the "without permission" element, because accessing Plaintiffs' data, knowingly and*, separately,* without permission is culpable conduct in itself. *See id.* at 1247 ("[A]n action is not 'innocent' simply because it could have been even more wrongful than it was").

### H.    Plaintiffs Adequately Pled Breach of Contract (Count 8)

Plaintiffs predicate their breach of contract claim on the applicable terms in Google policy

webpages set forth in the FAC.  ¶¶ 272-290; Exs. 42-43 (TOS, Privacy Policy), 47-51 (advertising, analytics, data use); *Brown*, 2021 WL 6064009 at *10 ("[T]he contract need only 'guide' users to incorporated documents). Google disputes that the terms apply, but even the two static print-outs on which it relies (RJN Exs. 3 and 5) state that they "help define Google's relationship with you as you interact with our services" (Ex. 41 at 1), describing those services to include "[p]roducts that are integrated into third-party apps and sites, like ads [and] analytics." Ex. 42 at 1.

Google's remaining arguments dispute Plaintiffs' reasonable interpretation of Google's well-pled obligations. "[T]he Court's task at the motion to dismiss stage is to determine whether Google's contract with Plaintiffs is 'reasonably susceptible' to Plaintiffs' interpretation." *Brown*, 2021 WL 6064009 at *12 (quotation omitted). "[T]he contract language must be assessed objectively, from the perspective of a reasonable [Google] user." *Id.* "Any dispute over the meaning of contractual terms is a question inappropriate for resolution at the motion to dismiss stage." *UPPI LLC v. Cardinal Health, Inc.*, 2022 WL 3594081, at *2 (9th Cir. Aug. 23, 2022).

Breach 1. In the TOS, Google promised to enforce "rules of conduct" which prohibit using Google services to violate privacy laws and privacy rights in the Google "environment." ¶ 280, 289 (summary of Promise 1). Google does not address Plaintiffs' allegations that it breached this promise by using and permitting use of its services out of compliance with applicable laws and privacy rights.  ¶¶ 267, 290, 543.  Google's assertion that it never agreed to enforce its own "rules" defies other provisions of the contract. *See e.g.*, ¶ 280 ("**We** want to maintain a respectful environment for everyone"); *id.* ("After you submit a report, **we'll** investigate it and take the appropriate action"); ¶ 281 ("**Google** requires that advertisers comply with all applicable laws and regulations") (emphasis added in all); ¶¶ 282-283, 289; Exs. 47-48. Contrary to Google's urging, nothing in the TOS defines reporting to Google as Plaintiffs' "remedy," let alone the sole remedy for Google's or third parties' rule violations. The term providing that Google may not act on "reports" does not negate Google's promise to take *appropriate* action to enforce its rules, it only reflects that a *report* could be false or incorrect. Satisfying this obligation would not make Google the "global enforcer of all laws," as Google suggests: the breach concerns Google's obligations with respect to misuse of *Google services*, consistent with its authority and other provisions in the

TOS ¶ 280 ("Google reserves the right to suspend or terminate your access to the services").

Breach 2: In the Privacy Policy, Google promised that it only collects health information "if you [users] choose to provide it." Ex. 42 at 18; ¶ 282, 289. This statement—*if you choose*—creates the reasonable expectation of an "opt-in" environment. The corresponding examples confirm that Google would respect the individual's choice—not any third party's—for these disclosures: "if *you* choose to provide . . . *your* medical history, vital signs and health metrics (like blood glucose levels), and other similar information related to *your* physical or mental health." By giving Plaintiffs no actual choice in this respect, Google breached this promise.

Google denies that it collected "health information," but Plaintiffs' understanding of this term and Google's breach is reasonable. Google's description of "pseudonymous event level data and URLs" ignores detailed allegations that Google collected data about Plaintiffs' patient statuses, doctors, conditions, treatments, requests for appointments, and prescriptions (¶¶ 20-31, 36, 61)—all of which constitute "information related to [Plaintiffs'] physical or mental health"; none of which are "markedly dissimilar" to other broadly enumerated items, such as "medical history." *See* MTD at 21. Google points to a different provision in its policies covering "Internet, network, and other activity information" (Ex. 42 at 17), but Google's *specific* promise that it would collect "health information" only if Plaintiffs "choose to provide it" limits any applicability of such general statements, where health information is concerned. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003) ("specific terms control over general ones."). Google's argument that it did not obtain "actual medical information," as Google defines it, improperly asks the court to resolve fact disputes, draw inferences, and resolve ambiguities in its adhesion contract in Google's favor. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) ("The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party applies with peculiar force in the case of the contract of adhesion") (citation omitted); *see also Hall v. FCA US LLC*, 2022 WL 1714291, at *1 (9th Cir. May 27, 2022) (and cited cases). Google cites no authority holding otherwise. *Kurowski* upheld the plaintiffs' breach of contract claim, even though that court had determined that the data alleged did not "fit" the legal  definition of individually identifiable health information under HIPAA, because – consistent with the

allegations here ("information relating to … health") – the contractual definition was broader. 2023 WL 4707184 at *4. In *Smith v. Facebook*, the court evaluated whether the plaintiffs "consented" to certain tracking based on Facebook's policy provisions; the policies at issue contained no promises relating to "health information" so there were no ambiguities or fact disputes to resolve, the putative class was not limited to patients, and the healthcare websites were not limited to covered entities. 262 F. Supp. 3d 943, 954 (N.D. Cal. May 9, 2017).

Breach 3: In the Privacy Policy and incorporated documents, Google promises that it does not use information pertaining to health for advertising or permit others to do so. Plaintiffs allege that Google breached these promises by utilizing Health Information for advertising purposes and by failing to disable remarketing lists that do not comply with Google's personalized advertising policy. ¶¶ 105, 135 290. Plaintiffs allege that Google builds and refines its advertising systems with Health Information, improperly using all such data it collects. ¶ 7, 43-45, 124. A decision *not* to show Plaintiffs particular ads based on their health status is just as "personalized" a misuse of their data. Google's arguments that the advertising purposes to which it puts Health Information are not "personalized" or based on "users'" data dispute the facts alleged, at most raising questions to resolve on the merits, not here. Google's argument about whether Plaintiffs *received* offending advertisements raises fact questions that are not even relevant to this breach, which concerns Google's *use* of Plaintiffs' Health Information in violation of its express promises; not which ads Google showed as a result, or to whom. "[A] breach of contract claim accrues at the moment of breach and the injury, for standing purposes, is the breach itself." *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1010 (N.D. Cal. 2020).

Breach 4: Google promised to use the data received from third-party websites to enforce its rules of conduct: "Google uses the information shared by sites and apps to … protect against fraud and abuse[.]" ¶ 288, Ex. 51. Google breached Promise 4 by obtaining data transmitted by HCP websites and using Health Information therein for advertising purposes in violation of Plaintiffs' privacy rights, instead of using the data to protect against violation of the same. ¶ 543. The FAC explains this breach arises from Google's promise on its "Technologies" page presented alongside its TOS, and hyperlinked from the Privacy Policy, as the source to learn "[h]ow Google

uses information from sites or apps that use [Google] services." ¶¶ 272-273, 288; Ex. 51. Google's arguments are non-responsive. The FAC does not cite or quote from the portion of the Privacy Policy that Google discusses in its motion (RJN Ex. 3 at 18/Ex. 42 at 18).

## I.      Plaintiffs Adequately Pled Breach of Implied Contract (Count 9)

"A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Cal. Spine & Neurosurgery Inst. v. United Healthcare Ins. Co.*, 2019 WL 4450842, at *3 (N.D. Cal. Sept. 17, 2019) (citation omitted). Here, Plaintiffs' implied contract claim is based on Google's conduct and the surrounding circumstances such as Google's various promises on public-facing webpages that it will not track, collect, or use Health Information, legal protections regarding Health Information (*i.e.,* federal, state, and common law protections), and reasonable expectations of privacy. ¶¶ 225-265. Google's conduct in posting the alleged promises in a public forum and in taking no action to address common expectations that it would act differently than it did (*see supra*, V-D) created its implied contract obligations.

Google is wrong that this claim must be dismissed as duplicative because it is properly pled in the alternative. ¶ 546; *Cal Spine*, 2019 WL 4450842 at 4 ("[a]t the pleading stage, a plaintiff should be permitted to alternatively plead both an implied contract claim and an express contract claim even though they are inconsistent theories").

Lastly, Google is wrong that non-accountholders have no claim. Google states in its Privacy Policy that no Google Account is required to use its services, and the terms apply regardless. ¶ 270. These factual allegations plausibly establish that Google intended its promises to form the basis of its agreement, and there can be little doubt that Google will argue, when it suits Google, that non-users should be held to have read and be bound by those terms.

## J.      Plaintiffs Adequately Pled Implied Covenant of Good Faith and Fair Dealing (Count 10)

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Chauhan v. Google LLC*, 2023 WL 5004078, at *3 (N.D. Cal. Aug. 4, 2023) (citations omitted). The covenant obligates parties not to "'do anything which injures

the right of the other to receive the benefits of the agreement.'" *Olyaie v. Gen. Elec. Cap. Bus. Asset Funding Corp.*, 217 F. App'x 606, 611 (9th Cir. 2007) (citation omitted). Evading "the spirit of the bargain," "lack of diligence and slacking off," and "abuse of a power to specify terms" are actionable violations. *Id.* Google violated the implied covenant separate and apart from its alleged breaches of contract by drafting and selectively interpreting its contracts as requiring no enforcement of "rules" ostensibly intended to protect users, and as permitting conduct inconsistent with transparency and user control of their information (and indeed, reasonably prohibited by the same policies), such as collecting "health information" and "personal information" and using it for "personalized" advertising. ¶ 565. In its motion to dismiss, Google even goes so far as to argue that the protections set forth in its TOS do not apply when users interact with Google services on third-party websites. MTD at 21; *but see Chauhan*, 2023 WL 5004078 at *3 (implied covenant claim not "redundant" where *"*Defendant itself argued there was no contract term"). Google's overstepping of the reasonable boundaries of the contract frustrated Plaintiffs' rights to contractual benefits—which included being able to understand what, where, and how Google collects their data, and what Google does with it. ¶¶ 566-67. Plaintiffs' implied covenant claim is well pled.

## K.      Plaintiffs Adequately Pled an Unjust Enrichment Claim (Count 11)

Plaintiffs allege Google was unjustly enriched by monetizing Health Information (¶¶ 361-63, 570-89), entitling them to seek restitution and disgorgement of Google's wrongful gains. *See, e.g.*, *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (allowing unjust enrichment claim "even if the plaintiffs suffered no economic loss from the disclosure of their information").

Google's argument that unjust enrichment is not a standalone claim (MTD at 25) is wrong. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (holding an unjust enrichment claim "states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution"). Contrary to Google's assertion, *Sonner v. Premier Nutrition Corp.*, 917 F.3d 834 (9th Cir. 2020) does not preclude this claim. MTD at 25. Courts post-*Sonner* have found plaintiffs may pursue equitable relief at the same time as claims for damages when the equitable relief sought is not available at law. *Vance v. Church & Dwight Co.*, 2023 WL 2696826, at *5 (E.D. Cal. Mar. 29, 2023) (allowing plaintiffs pursuing both consumer protection and unjust

enrichment claims to seek non-restitution disgorgement of profits because there is "alternative legal remedy" for this claim); *Monster Energy Co. v. Integrated Supply Network, LLC*, 533 F. Supp. 3d 928, 934 (C.D. Cal. 2021) (allowing disgorgement as a remedy not available at law); *Clark v. Yodlee*, Inc., 3:20-cv-05991-SK, ECF No. 356 (N.D. Cal. Sept. 15, 2023) (explaining disgorgement not barred by *Sonner* because legal remedy would not "reach the profits that Defendant earned from . . . misappropriation . . of Plaintiff's sensitive private data"). As in these examples, the equitable "relief" Plaintiffs seek is non-restitutionary "disgorgement of all revenues, earnings, and profits that Google obtained as a result of its unlawful and wrongful conduct" that would not be encompassed within or addressed by an award of damages. *See, e.g.* ¶¶ 19, 375, 573, 582. Plaintiffs also seek prospective injunctive relief, which is not a remedy at law. ¶¶ 413, 431. *See Hass v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 976 (C.D. Cal, 2021) ("[I]njunctive relief is not an available remedy at law" and "distinguishes this case from *Sonner*").

Lastly, that Plaintiffs also allege an express contract has no bearing on the viability of Plaintiffs' unjust enrichment claim. *See* MTD at 25. Plaintiffs can plead both express contract and unjust enrichment claims in the alternative. *Astiana v. Hain*, 783 F.3d 753, 762 (9th Cir. 2015); *see also* Fed. R. Civ. P. 8(d)(2)-(3).

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Google's Motion to Dismiss the First Amended Complaint in its entirety. In the alternative, Plaintiffs respectfully request leave to amend. *Ante v. Off. Depot Bus. Servs.*, 641 F. Supp. 2d 906, 908 (N.D. Cal. 2009).

Dated: January 25, 2024           **SIMMONS HANLY CONROY LLC**

<u>*/s/ Jason 'Jay' Barnes*</u>
Jason 'Jay' Barnes (admitted *pro hac vice*)
*jaybarnes@simmonsfirm.com*
An Truong (admitted *pro hac vice*)
*atruong@simmonsfirm.com*
112 Madison Avenue, 7th Floor
New York, NY 10016
Tel.: 212-784-6400
Fax: 212-213-5949

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
*clevis@lowey.com*
Amanda Fiorilla (admitted *pro hac vice*)
*afiorilla@lowey.com*
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
Nicole Ramirez Jones, State Bar No. 279017
*ramirez@kiesel.law*
Mahnam Ghorbani, State Bar No. 345360
*ghorbani@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel.: 310-854-4444
Fax: 310-854-0812

**LIEFF CABRASER HEIMANN**
**& BERNSTEIN, LLP**
Michael W. Sobol, State Bar No. 194857
*msobol@lchb.com*
Melissa Gardner, State Bar No. 289096
*mgardner@lchb.com*
Jallé H. Dafa, State Bar No. 290637
*jdafa@lchb.com*
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: 415 956-1000
Fax: 415-956-1008

Douglas Cuthbertson (admitted *pro hac vice*)
*dcuthbertson@lchb.com*
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212 355-9500
Fax: 212-355-9592

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Hal D. Cunningham, State Bar No. 243048
*hcunningham@scott-scott.com*
Sean Russell, State Bar No. 308962
*srussell@scott-scott.com*

600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
Fax: (619) 233-0508

Joseph P. Guglielmo (admitted *pro hac vice*)
*jguglielmo@scott-scott.com*
Ethan Binder (admitted *pro hac vice*)
*ebinder@scott-scott.com*
230 Park Ave., 17th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334

*Attorneys for Plaintiffs and the Proposed Class*

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


Dated: January 25, 2024                         _____/s/Jeffrey A. Koncius_____
                                                                    Jeffrey A. Koncius