**WILLKIE FARR & GALLAGHER LLP**
Benedict Y. Hur (SBN: 224018)
Simona Agnolucci (SBN: 246943)
Eduardo E. Santacana (SBN: 281668)
Joshua Anderson (SBN: 312836)
David Doak (SBN: 301319)
Tiffany Lin (SBN: 321472)
Nadim Houssain (SBN: 335556)
Harris Mateen (SBN: 335593)
Naiara Toker (SBN: 346145)
333 Bush Street
San Francisco, CA 94104
Telephone:  (415) 858-7400
Facsimile:  (415) 858-7599
bhur@willkie.com
sagnolucci@willkie.com
esantacana@willkie.com
jdanderson@willkie.com
ddoak@willkie.com
tlin@willkie.com
nhoussain@willkie.com
hmateen@willkie.com
ntoker@willkie.com

*Attorneys for Defendant Google LLC*

**SIMMONS HANLY CONROY, LLC**
Jason 'Jay' Barnes (admitted *pro hac vice*)
Eric Johnson (admitted *pro hac vice*)
An Truong (admitted *pro hac vice*)
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
jaybarnes@simmonsfirm.com
ejohnson@simmonsfirm.com
atruong@simmonsfirm.com

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

*Attorneys for Plaintiffs and the Proposed Class*
*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

JOHN DOE I, et al. on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC,

Defendant.

**This Order applies to: All Actions**

Case No. 23-cv-02431-VC

**[STIPULATED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

Judge:        Hon. Vince Chhabria
Court:        Courtroom 4, 17th Floor

Action Filed: May 12, 2023
Trial Date:   Not Set

I.     **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

II.    **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

III.   **PROPORTIONALITY**

Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1).[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

IV.    **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

V.     **PRESERVATION**

A.     The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

B.     To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

1.     The Parties shall have a continuing obligation to take reasonable and proportional steps to preserve data sources that are known or reasonably believed to contain information that is relevant to the claims and defenses in this litigation.

2.     Except as otherwise set forth herein or agreed to by the parties, only ESI created, or received between May 12, 2019 and May 12, 2023, including systems and tools necessary to link,  use and understand the information regardless of date created or received will be preserved.  The parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary; The parties have agreed/will agree on the number of custodians per party for whom ESI will be preserved.

The following provision of Section V.B.2 will not apply to data sources agreed to by the parties: the following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention but not searched, reviewed, or produced,

(a)     Backup systems and/or tapes used for disaster recovery;

(b)     Systems no longer in use that cannot be accessed;

(c)     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(e)     Dynamic fields of databases or log files that do not contain user data;

(f)     On-line access data such as temporary internet files, history, cache, and the like, and that do not contain user data;

(g)     System, server, and network logs that do not contain user data;

(h)     Data in metadata fields that are frequently updated automatically, such as last-opened dates;

(i)     Deleted, slack, fragmented data;

(j)     Automatically saved versions of documents or emails; and

(k)     Any other sources of Documents ordered by the Court or agreed upon by the parties throughout the course of this litigation.

3.      The parties agree that personal/non-business data maintained by corporate custodians are not discoverable, need not be preserved, and are not subject to the terms of this Order. Examples of personal/non-business data the Parties agree not to preserve as to corporate custodians include items (a) through (d) below:

(a)     Voice messages;

(b)     Information from handsets, mobile devices, personal digital assistants, and tablets;

(c)     Instant messaging[2]; and

(d)     Any other sources of Documents ordered by the Court or agreed upon by the parties throughout the course of this litigation.

## VI.    SEARCH

A.      The parties will meet and confer relating to the process of searching for documents responsive to discovery, including, specifically, the identification of search terms and custodians to the extent they are necessary in responding to specific discovery requests. The parties will meet and confer on these issues as necessary to ensure that discoverable, responsive, non-privileged documents are identified and produced as efficiently as possible.

B.      In addition, the parties will meet and confer with regard to any proposed use of technology assisted review ("TAR") to search or filter for ESI and the terms of any additional case management orders that may be needed to address issues relating to searches of electronically stored information.

C.      Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc

---

[2]      This excludes "Google Chat."

Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. Source code files will be provided according to the Protective Order and not included in custodial data productions.

D.      A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI globally. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment. An attachment is a file associated with an email for retention and storage as a single message unit.

E.      If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

## VII.   <u>PRODUCTION FORMATS</u>

The parties agree to produce documents in the formats described in Appendices 1 and 2 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

## VIII.  <u>DOCUMENTS PROTECTED FROM DISCOVERY</u>

A.      Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

B.      Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

C.      Nothing in this Agreement shall be construed or interpreted as precluding a producing party from performing review and analysis to determine if a document is in fact relevant to the requesting party's request or is privileged or otherwise protected. Further, any document that is in good faith reasonably deemed not relevant to the requesting party's request, or is privileged or otherwise protected, may be withheld.  However the parties are prohibited from redacting documents based on relevancy.

## IX.    **PRIVILEGE LOG**

a) Privileged Documents and Privilege Log: If a party reasonably determines that one or more responsive documents are not discoverable or a portion of a document needs to be redacted because it is subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall produce a log for each document withheld or redacted for privilege from that production.

b) Communications involving counsel, or experts retained for the purpose of this litigation, that post-date the filing of the first-filed complaint need not be placed on a privilege log.

## X.    **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

1

**IT IS SO STIPULATED**, through Counsel of Record.

2

3

4  Dated: June 11, 2024                              **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

5                                                          /s/ Joseph P. Guglielmo

6                                                          Joseph P. Guglielmo

7                                                          Joseph P. Guglielmo (admitted *pro hac vice*)
                                                              jguglielmo@scott-scott.com
8                                                          Ethan Binder (admitted *pro hac vice*)
                                                              ebinder@scott-scott.com
9                                                          230 Park Ave., 17th Floor
10                                                         New York, NY 10169
                                                           Telephone: (212) 223-6444
11                                                         Facsimile: (212) 223-6334

12                                                         Hal D. Cunningham (Bar No. 243048)
                                                              hcunningham@scott-scott.com
13                                                         Sean Russell (Bar No. 308962)
                                                              srussell@scott-scott.com
14                                                         600 W. Broadway, Suite 3300
15                                                         San Diego, CA 92101
                                                           Tel: (619) 233-4565
16                                                         Fax: (619) 233-0508

17

18  Dated: June 11, 2024                             **SIMMONS HANLY CONROY LLC**

19                                                         /s/ Jay Barnes

20                                                            Jason 'Jay' Barnes

21                                                         Jason 'Jay' Barnes (admitted *pro hac vice*)
                                                              jaybarnes@simmonsfirm.com
22                                                         Eric Johnson (admitted *pro hac vice*)
                                                              ejohnson@simmonsfirm.com
23                                                         An Truong (admitted *pro hac vice*)
                                                              atruong@simmonsfirm.com
24                                                         112 Madison Avenue, 7th Floor
25                                                         New York, NY 10016
                                                           Tel.: 212-784-6400
26                                                         Fax: 212-213-5949

27

28

1   Dated: June 11, 2024                    **LOWEY DANNENBERG, P.C.**

2                                           */s/ Christian Levis*

3                                               Christian Levis

4                                           Christian Levis (admitted *pro hac vice*)
                                                *clevis@lowey.com*
5                                           Amanda Fiorilla (admitted *pro hac vice*)
                                                *afiorilla@lowey.com*
6                                           44 South Broadway, Suite 1100
7                                           White Plains, NY 10601
                                            Tel: (914) 997-0500
8                                           Fax: (914) 997-0035

9   Dated: June 11, 2024                    **KIESEL LAW LLP**

10

11                                          */s/ Jeffrey A. Koncius*
                                               Jeffrey A. Koncius
12
                                            Jeffrey A. Koncius, State Bar No. 189803
13                                             *koncius@kiesel.law*
                                            Paul R. Kiesel, State Bar No. 119854
14                                             *kiesel@kiesel.law*
                                            Nicole Ramirez, State Bar No. 279017
15                                             *ramirez@kiesel.law*
                                            8648 Wilshire Boulevard
16                                          Beverly Hills, CA 90211-2910
17                                          Tel: 310-854-4444
                                            Fax: 310-854-0812
18

19  Dated: June 11, 2024                    **LIEFF CABRASER HEIMANN**
                                            **& BERNSTEIN, LLP**
20

21                                          */s/ Melissa Gardner*
                                            Melissa Gardner
22
                                            Michael W. Sobol (State Bar No. 194857)
23                                             *msobol@lchb.com*
                                            Melissa Gardner (State Bar No. 289096)
24                                             *mgardner@lchb.com*
                                            Jallé H. Dafa (State Bar No. 290637)
25                                             *jdafa@lchb.com*
                                            275 Battery Street, 29th Floor
26                                          San Francisco, CA 94111-3339
                                            Tel: 415 956-1000
27                                          Fax: 415-956-1008

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Douglas Cuthbertson (admitted *pro hac vice*)
 *dcuthbertson@lchb.com*
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 212 355-9500
Fax: 212-355-9592

*Attorneys for Plaintiffs and the Proposed Class*

Dated: June 11, 2024          **WILLKIE FARR & GALLAGHER LLP**

                              */s/ Benedict Hur*
                              _____
                                Benedict Hur

                              Benedict Hur, State Bar No. 224018
                               *bhur@willkie.com*
                              Simona Agnolucci, State Bar No. 246943
                               *sagnolucci@willkie.com*
                              Eduardo Santacana, State Bar No. 281668
                               *esantacana@willkie.com*
                              Joshua Anderson, State Bar No. 312836
                               *jdanderson@willkie.com*
                              David Doak, State Bar No. 301319
                               *ddoak@willkie.com*
                              Tiffany Lin, State Bar No. 321472
                               *tlin@willkie.com*
                              Nadim Houssain, State Bar No. 335556
                               *nhoussain@willkie.com*
                              Harris Mateen, State Bar No. 335593
                               *hmateen@willkie.com*
                              Naiara Toker, State Bar No. 346145
                               *ntoker@willkie.com*
                              333 Bush Street, 34th Floor
                              San Francisco, California 94104
                              Telephone: (415) 858-7400
                              Facsimile: (415) 858-7599

                              *Attorneys for Defendant Google LLC*

          **IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____          _____
                                          HON. VINCE CHHABRIA
                                          United State District Judge

**APPENDIX 1**

**PRODUCTION DELIVERY REQUIREMENTS**

**I.      GENERAL PRODUCTION PROVISIONS**

The parties have agreed that ESI should be produced as TIFF images and in Native format where applicable with accompanying data and image load files.

A.      TIFF Image Files.

The parties agree that all Documents, with the exception of Documents produced in Native Format, will be produced as single-page Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (*i.e.*, portrait to portrait and landscape to landscape).

B.      Embedded documents.

To the extent feasible, substantive embedded files (*e.g.*, a spreadsheet within a Word document) in any ESI shall be extracted during processing and produced as separate documents. The Bates number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A.  To the extent a substantive embedded file cannot be extracted and processed, the Producing Party shall use reasonable efforts to locate and produce such files.

C.      Hyperlinked Files.[3]

For hyperlinked documents, if a Receiving Party reasonably believes the document to be responsive (and identifies the Bates number of the document within which the hyperlink is embedded) and seeks its identification or production, the Producing Party shall undertake reasonable efforts to locate the hyperlinked file. The Producing Party shall either identify by Bates number the hyperlinked document if already produced or collect the document if it still exists on

---

[3]      For purposes of this protocol, hyperlinked documents does not refer to hyperlinks to public sources or publicly-available information, rather it refers to hyperlinks to otherwise discoverable information within a party's possession, custody or control.

the Producing Party's systems and produce it, if responsive, non-privileged, and to the extent not unduly burdensome (either individually or cumulatively).

D.      Text Files.

Each Document produced under this Order shall be accompanied by a single multi-page text file. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files when possible and OCR text files from hard copy scanned documents as applicable. The load file shall include a link to the corresponding text file.

E.      OCR Text File.

The parties will provide searchable OCR text of any scanned, hard copy Documents, unless the party determines that the utility of the OCR is outweighed by the expense. In that case, the producing party will produce the documents as they are kept in the ordinary course of business.

F.      Extracted Text Files from ESI.

The parties shall extract the text of each ESI item directly from the ESI native file, where extracted text is reasonably available.

G.      OCR Text for Redacted Documents.

The parties will provide searchable OCR text for any redacted files.

H.      Bates Numbering.

1.      Each TIFF image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The producing party will identify the Bates number range of each production in an email, cover letter, or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a

production, the producing party will identify and note the gap in the email, cover letter, or production log accompanying the production.

2.     The producing party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the receiving party believes that a Bates number obscures the content of a Document, then the receiving party may request that the Document be produced with the Bates number in a different position.

I.     Re-Production of Prior or Other Litigation Documents.

Where a requesting party seeks re-production of a set of documents produced in a prior litigation or any other proceeding, or where a prior production of documents or ESI by a party in a prior litigation or any other proceeding is the only reasonably accessible source of those documents or ESI to be produced by a party in this litigation, the producing party may re-produce such documents in the manner in which they were produced in the prior case, including all objective coding or metadata fields required by this protocol to the extent reasonably available to the producing party as part of the productions set. For any such re-production in accordance with this Paragraph, the producing party is not obligated to re-format the prior production in accordance with the production specifications in ESI stipulation, but must provide Bates numbering and confidentiality designations specific to this litigation. Nothing in this Paragraph should be taken as a concession by the Parties that re-production of a set of documents produced in a prior litigation or any other proceeding is required or appropriate in this action.

J.     Parent-Child Relationships.

Parent-child relationships within a document family (*e.g.*, the association between an attachment and its parent email, or a spreadsheet embedded within a word processing document), must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2.  For example, if a party is producing an email with attachments, the attachments must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Not all attachments must be produced – for example, privileged or nonresponsive

attachments may be removed, but a one-page slipsheet including a sequential Bates number must be provided identifying any responsive, privileged attachment that has been removed.

K.     Color Documents.

If an original ESI Document contains color text, markings or graphics, and the receiving party believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format and must explain in detail why color is needed to understand the document.  Upon receipt and review of the receiving party's request, the producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format if it is satisfied by the receiving party's explanation as to why color reproduction is required.  The parties will meet and confer in good faith should any disagreements arise regarding color reproductions. This section also applies to documents that are produced as TIFF images.

L.     Confidentiality Designations.

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document.  If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the Document. For each document that has a confidentiality designation, a Confidentiality field will be populated with the confidentiality designation in the load file. Also, any documents with a confidentiality designation must be handled in accordance with the Protective Order entered in this case.

## II.    PRODUCTION OF HARD COPY DOCUMENTS

Documents that exist only in hard copy shall be scanned and produced as TIFFs. Upon reasonable request by the Receiving Party, and where necessary and practicable, hard copy Documents in color will be scanned in color to ensure full information is communicated in the scanned copy. Scanned color documents will be provided in JPG file format.

A.    Unitization of Paper Document.

To the extent practicable, hard copy Documents shall be unitized using logical document determinations or "LDD."

B.    Identification.

Where a Document or group of Documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

C.    Custodian Identification.

The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

D.    Metadata.

The metadata associated with each hard copy Document need only identify the Bates number and any Confidential Designation or Redaction applied to that Document.

## III.    PRODUCTION OF "ESI"

A.    Native Files: Spreadsheet-application files (*e.g.*, MS Excel, .csv) and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi) will be produced in native format or MS excel.  For files produced in native format, the producing party shall provide a single-page TIFF slip-sheet with the applicable Bates stamp indicating that a native item was produced. In addition, the confidentiality designation will be indicated in the name of the native file where reasonably feasible.  Other than as specifically set forth above, a Producing Party need not produce other document types in Native Format.  If good cause exists for the Requesting Party to request production of certain documents in Native Format, the Requesting Party may request production in Native Format by providing (1) a list of the Bates numbers of documents it requests

to be produced in Native Format; and (2) an explanation of the need for reviewing such documents in Native Format.  The Producing Party shall not unreasonably deny such requests.

B.      Metadata Fields and Processing,

1.      ESI shall be processed in a manner that preserves the source native file and relevant metadata without modification.

2.      <u>Hidden text.</u> ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments.

3.      <u>Compressed Files and Encrypted Files</u>. Compressed file types (*i.e.*, .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

4.      <u>Metadata and Coded Fields.</u>  ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2.

This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, and (e) Custodian designation. These fields should be populated for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

## IV.      DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

Where a discovery request requires production of database or structured data, the Parties shall meet and confer on the content and format of a data sample from such structured data source including the information that will be disclosed.

1     **V.**      **RESPONSIVENESS, PRIVILEGE & REDACTIONS.**

2           A.      The parties agree that if an attachment to an e-mail is wholly nonresponsive to the

3 discovery requests, it need not be produced.  Non-privileged cover e-mails to responsive documents

4 will be deemed responsive and produced.

5           B.      To the extent that a party reasonably determines that e-mail or related attachments

6 that are responsive to a document request are not discoverable because they are subject to a

7 Privilege, the party shall produce a log treating each e-mail and attachment withheld separately.

8           C.      Redactions:

9           The parties agree that where ESI items need to be redacted, they shall be produced in TIFF

10 format with each redaction clearly indicated or where TIFF format is not practicable, in redacted

11 native format, as noted below. Any unaffected data fields shall be provided. The redaction of any

12 material for privilege or other reason shall be governed by the applicable rules and case law

13 regarding privilege and the provisions contained in the Protective Order entered in this action.

14 Documents that are to be produced in native format, but that require redactions may be produced

15 as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable

16 (*e.g.*, the file is a video or very large spreadsheet), the producing party may produce a copy of the

17 native file with the relevant portions replaced with "REDACTED" or a similar mark. If

18 modification of a native file is required for redaction purposes, metadata information associated

19 with that file should remain unchanged, unless it also requires redaction. For each document that is

20 redacted, a Redaction field will be populated with the word "REDACTED" in the load file.  Also,

21 the producing party will keep a pristine original copy of the native document.

22           D.      Printing Specifications for Excel and PowerPoint files:

23           For Excel-type and PowerPoint files that are printed to TIFF, the producing party will

24 ensure that hidden sheets, hidden columns and rows, comments, hidden slides, and hidden note

25 pages are visible (*e.g.*, the producing party will ensure that notes, hidden slides, and comments are

26 visible).

27           For Excel and PowerPoint type files that are printed to TIFF for redaction and redacted, the

28 following printing options shall be enabled:

| Excel Print to TIFF Options |
| --- |
| • Unhide columns and rows<br>• Unhide worksheets<br>• Autofit columns and rows, settings to be over by columns first and, then down by rows<br>• Print gridlines<br>• Do not apply Autofilter<br>• Display headings<br>• Display comments<br>• Header and Footer filename field handling: Show field code |

| PowerPoint Print to TIFF Options |
| --- |
| • Print notes pages<br>• Print hidden slides<br>• Print comments |

The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible. For redacted items which were originally ESI, all metadata fields noted in this protocol that do not contain privileged or protected information will be provided and will include all non- redacted data. A document's status as redacted does not relieve the producing party from providing all of the metadata required herein.

    E.    De-duplication and Document Families:

        1.    ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash.  For emails, de-duplication may be performed using a hash calculated using a combination of metadata fields.  Such hash shall, at a minimum, account for all sender and recipient metadata including BCC recipients, the email subject, date sent, and attachment names.

    The parties are permitted to produce the longest unique email chain and do not need to separately produce the lesser-included emails unless those lesser-included emails have bcc recipients or unique attachments not included in the longest chain.  If a lesser-included email has a bcc recipient or unique attachment, then the lesser-included email must be separately produced with the attachments

If a party produces only inclusive email, the parties agree to redact any privileged content or message component and produce in full the rest of the conversation in the inclusives.

"Near duplicate" documents shall be produced rather than removed. The producing party need only produce a single copy of a particular ESI.

The hash value for each item shall be reflected in the load file in the HashValue field specified in Appendix 2. If a producing party elects to de-duplicate globally, the producing party shall identify custodians who were in possession of a de-duplicated Document in the Custodian metadata field specified in Appendix 2. This means that the field "Custodian" will be populated showing all custodians who had a copy of the same document which is not being produced because of de-duplication.

2.     De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments and files with extracted embedded OLE documents all constitute family groups.  The producing party agrees that the presence of a custodian's name contained in the "Custodian" field in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

F.     Metadata Files and Image Load Files:

The metadata load file should be in a format that can be loaded into commercially acceptable production software (*e.g.*, .DAT, .TXT, or .CSV). The .DAT file shall contain a relative path to the corresponding produced Native file.

The metadata load file shall be delimited according to the following characters:

- Delimiter - ¶ (ASCII 020);
- Text-Qualifier - þ (ASCII 254);
- New Line - ® (ASCII 174);
- Multi-value delimiter (ASCII Code 059).
- The first line of the metadata load file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible.

Date fields may be combined date/time fields

- All produced attachments should sequentially follow the parent Document/email.

The image load file must be in a format that can be loaded into commercially acceptable production software (*e.g.*, .OPT) and shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

OCR/Extracted Text Files:

- OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The metadata load file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the metadata load file.

**APPENDIX 2**

**ESI METADATA AND CODING FIELDS**

The chart below describes the metadata fields to be produced, where reasonably available, in generic, commonly used terms which the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic Documents and are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| FILESIZE | Size (in kilobytes) of the source native file |
| HASHVALUE[4] | The MD5 or SHA-1 or IntMsgID hash value of the item. |
| FILEEXTENSION | Indicates file extension of the file *e.g.*, .docx, .pptx |
| DATESENT | Date email was sent (format: MM/DD/YYYY HH:MM:SS) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |

---

[4] Deduplication should follow the parameters outlined in Section V.E of Appendix 1.

| Field Name | Field Description |
|---|---|
| BCC | All recipients that were included on the "BCC" line of the email |
| OWNER | Any value populated in the Owner field of the document properties |
| FILENAME | Filename of document |
| DATEMOD | Date an electronic document was last modified or created (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment) |
| TITLE | Any value populated in the Title field of the source file metadata or item properties |
| SUBJECT | Any value populated in the Subject field of the source file metadata or document properties  (*e.g.*, subject line of email or calendar item) |
| REDACTED | User-generated field that will indicate redactions. With the  word "REDACTED". Otherwise, blank |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality. Otherwise, blank. |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |