UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE I, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 23-cv-02431-VC (SVK)<br><br>**ORDER RE DISCOVERY DISPUTE AT DKT. 252**<br><br>Re: Dkt. No. 252 |

The Court has reviewed the Parties' Joint Submission and the Joint Discovery Dispute Chart which includes positions of compromise, including Plaintiff's Compromise Health Verticals. Dkt. 251-1, 251-2.[1] At this juncture, the matter is suitable for resolution without oral argument, (*see* Civil L.R. 7(b)-1), although the Parties have more work to do, as ordered below.

This putative class action arises out of Defendant Google LLC's ("Google") alleged collection of private medical information from health-related websites. *See* Dkt. 159-3 ("SAC"). In the dispute at hand, Plaintiffs seek the identification of Web Properties,[2] in addition to the six identified in the operative complaint, "on which Google collects information that it has categorized as being associated with a Health Vertical…." Dkt. 251-2 at 1-2 (Request for Production ("RFP") 16).[3] Plaintiffs identify a list of Health Verticals that it requests Google to search for responsive Web Properties.[4] *Id.* Plaintiffs argue that the expansive identification is

---

[1] The Parties' Joint Statement and the accompanying joint chart are filed provisionally under seal, pursuant to this Court's Order Granting as modified the Parties' Stipulation authorizing an Omnibus Sealing Order, (Dkt. 220). In the interest of public access, this Order does not contain any of the proposed-to-be-redacted portions of the Parties' filings.

[2] Defined as domains and apps. Dkt. 251-1 at 1.

[3] RFP 17 similarly seeks identification of Web Properties where "the developer identified the property as belonging to the health industry during the Google Analytics sign-up process." Dkt. 251-2 at 2-4. Both RFP 16 and 17 identify specific sub-categories of information Plaintiffs seek as to each Web Property identified. *Id.* at 1-4.

[4] Plaintiffs do not identify the number of requested verticals; Google claims it is 64; the Court counts 75. Dkt. 251-2. Given that each vertical has an unknown number of domains and apps

supported by the allegations in the SAC and essential to both class certification and ultimate issues of liability. Dkt. 251-1 at 3-6. Google counters in the first instance that discovery should be limited to the six websites specifically identified in the operative complaint. Dkt. 251-1 at 8. Google further argues that Plaintiffs' compromise list of Health Verticals would capture "hundreds of millions" of websites, many of which would be irrelevant to issues in this case and may not have ever used a Google product which resulted in the transfer of medical information to Google." *Id.* at 6, 8-9.

The Court finds that, generally, the identification of additional Web Properties is relevant in light of allegations in the SAC and the proposed class definitions. SAC, ¶¶ 79, 98, 191. The case management order in this case also supports class-wide discovery in advance of class certification by virtue of the limited discovery period following class certification. Dkt. 218. As for proportionality, the use of a set of Health Verticals to identify responsive Web Properties is at least a first step in the right direction. Where to go from here, requires a robust meet and confer effort by the Parties on the following points:

- In the Joint Submission, Plaintiffs twice state that they have identified specific websites for which they want the information delineated in RFPs 16 and 17. *See* Dkt. 251-1 at 3:4, 6:9. It is not clear if Plaintiffs are referring to their compromise list of Health Verticals, or if they have identified to Google specific domains for which they want the listed sub-categories of data. The latter would obviously present a significant step towards proportionality.
- Google points out that the Health Verticals are subject matter categories and are not "limited to websites/apps that use a Google product, and nor was it created for Google Analytics." *See* Dkt. 251-1 at 7. However, Google never proffers a means to refine Plaintiffs' use of Health Verticals. For example, for any given Health Vertical, can Google identify and eliminate the Web Properties that did not use a Google product? If so, then this may be a sensible further step to proportionality.

---

associated with it, the difference between 64 and 75 is highly likely to be immaterial.

2

- Google also argues that even if a Web Property uses Google Analytics, there is no showing "that the Google Analytics is present on webpages that could potentially reveal Health Information." Dkt. 251-1 at 9. This level of detail may be significant for proof of issues related to class certification or liability; however the standard for discoverability is not so exacting. Nevertheless, if Google has the means to refine identification of Web Properties at this level of detail, that may further inform proportionality.

- It is not clear to the Court where the Parties stand on the sub-categories in RFP 16 and 17. In the Joint Statement, Plaintiffs cryptically state that, "The parties do not have a current dispute about the other aspects of these two RFPs." Dkt. 251-1 at 1 n. 1. Google complains about the "17" sub-categories of information sought for each RFP and urges that they are "unclear, unjustified, and plainly unworkable…." *Id.* at 7-8. Yet, in compromise, for the six domains in the SAC, Google offers to provide the data for subcategories 1-2 and 5-7 for RFP 16 and subcategories 1-3 and 6-7 for RFP 17. So at least these categories are not "unclear" and are likely not as "unworkable" as initially suggested.

Accordingly, the Court **ORDERS** as follows:

1. Google will ultimately produce information regarding additional Web Properties, beyond the six specifically identified in the SAC. The use of Health Verticals is the first step, but not the last, to identify the relevant and proportional Web Properties for which additional data will be produced.

2. **No later than February 24, 2026**, the Parties are to meet and confer in accordance with this Court's standing order to address the issues identified above. Google must come to the meet and confer with at least one technical proposal to further refine the use of Health Verticals to identify additional relevant websites. If Plaintiffs have sufficient information from Google's productions thus far to propose further refinement, they must do so. No proposal will be presented as a "black box." Both sides must be prepared to explain their proposals at a sufficient level of detail that the other understands the selection criteria. The Protective Order in place in this action provides a sufficient protection for an informative discussion.

3. **No later than March 3, 2026,** the Parties are to provide the Court with a status report **not to exceed six pages** indicating whether the dispute has been resolved, discussions are continuing or outlining any remaining issue for the Court to resolve.
4. The Parties may agree to modest extensions of the deadlines above to facilitate resolution without further Court intervention.

**SO ORDERED.**

Dated: February 17, 2026

SUSAN VAN KEULEN
United States Magistrate Judge