COOLEY LLP
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY LIN (321472)
(tiffany.lin@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE I, et al., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>GOOGLE LLC,<br><br>          Defendants. | Case No. 3:23-cv-02431-VC<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE RE: DKT. 266**<br><br>Judge:    Hon. Vince Chhabria<br>Room:    Courtroom 4 –17th Floor |

Defendant Google LLC ("Google") moves for relief from Judge van Keulen's February 17, 2026 Order (Dkt. 266 (the "Order")) pursuant to Rule 72(a) and 28 U.S.C. § 636(b)(1)(A).

## I.    INTRODUCTION

Google seeks relief from the Order's finding that "Google will ultimately produce information regarding additional Web Properties, beyond the six specifically identified in the [Second Amended Complaint ('SAC')]."  This finding is based not on any *factual allegations* in the SAC—which identifies only six healthcare providers—but rather Plaintiffs' *class definition*, namely: "All persons in the United States and its territories whose Health Information was obtained by Google through Google Source Code from their Health Care Provider."  The Order is thus contrary to Ninth Circuit law requiring a plaintiff seeking pre-certification class discovery to allege a threshold factual showing—not merely invoke a class definition untethered to their factual allegations.  Thus, the Order—if upheld—could wrongly and profoundly expand the scope of discovery to potentially hundreds of millions of websites.

To be clear, the Order currently only requires meeting and conferring and the presentation of proposals to the Court.  But because the Order concludes that discovery will expand beyond the websites identified in the SAC, resolving whether the class definition permits such expansion will substantially inform the scope of permissible discovery moving forward.  Moreover, Google is not trying to unreasonably restrict discovery; it has agreed to produce substantial, individualized discovery for the six healthcare providers named in the SAC—covering at least 63 Google Analytics properties and 129 Google Ads accounts—as well as discovery into the general design and functionality of the Google products at issue across *all* healthcare providers.  (Dkt. 267 at 12.)

## II.    BACKGROUND

***The SAC.*** Seven named plaintiffs allege they visited six healthcare-provider websites and that those websites transmitted their Health Information to Google through Google Analytics and Google Ads code.  (SAC ¶¶ 35–81.)  The SAC does not allege by name any additional provider whose website transmitted Health Information to Google.  It does, however, gesture at generic statistics about healthcare provider websites more generally.  (*E.g.*, *id.* ¶¶ 111, 115, 118, 168.)

_**RFP Nos. 16 and 17**_.  These requests seek identification of every Web Property Google has classified under a Health Vertical (RFP No. 16) or whose developer identified as health-related during the Google Analytics sign-up process (RFP No. 17), together with 17 sub-categories of individualized information per property—including all source code, remarketing campaigns, revenue, configuration logs, and HIPAA-entity status.  (Dkt. 251-2 at 1–4.)  Even after Plaintiffs narrowed these RFPs to 75 sub-categories under the Health Vertical, the RFPs still capture **hundreds of _millions_** of websites and apps.  (Dkt. 251-1 at 6.)

_**The Order**_.  On February 17, 2026, Judge van Keulen issued an order, without a hearing or argument, ruling that "Google will ultimately produce information regarding additional Web Properties, beyond the six specifically identified in the SAC," and that "[t]he use of Health Verticals is the first step, but not the last, to identify the relevant and proportional Web Properties for which additional data will be produced."  (Dkt. 266 at 3.)  The order directed the parties to meet and confer to refine the use of Health Verticals to identify additional websites.  (_Id._ at 3–4.) The parties met and conferred on February 24, 2026, but were unable to reach agreement.[1]

## III.    ARGUMENT

A court may "modify or set aside any part" of a magistrate judge's nondispositive pretrial order "that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  The Order is contrary to law because Plaintiffs have not made the threshold showing that the Ninth Circuit requires before allowing sweeping class-wide discovery.

### A.    Plaintiffs have not made the threshold showing required for individualized discovery beyond the six healthcare providers in the SAC.

The Ninth Circuit requires a plaintiff to make a prima facie showing that the Rule 23 requirements are satisfied before obtaining discovery on a class-wide basis.  _See Mantolete v. Bolger_, 767 F.2d 1416, 1424 (9th Cir. 1985) (affirming denial of discovery "for an asserted national class" where plaintiff failed to "advanc[e] a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the

---

[1] The parties submitted a joint status report today regarding their February 24 meet and confer.

class allegations"); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Absent making that showing, a refusal to allow class discovery is not an abuse of discretion. *See Mantolete*, 767 F.2d at 1424; *see also Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (burden falls on plaintiff to "demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations").

District courts in this Circuit have applied *Mantolete* to limit the geographic or institutional scope of pre-certification discovery when plaintiffs lack a factual basis for class-wide claims. In *Dittmar v. Costco Wholesale Corp.*, the court held that "[a]bsent some factual basis for a plaintiff's claims that defendant's alleged wrongs are class-wide, plaintiffs are not entitled to class-wide discovery." No. 14-cv-1156, 2016 WL 7188231, at *2 (S.D. Cal. Dec. 12, 2016). In *Uschold v. Carriage Services, Inc.*, the court limited discovery to a single location despite a state-wide class definition, because the plaintiffs had not shown that broad discovery was "likely to produce substantiation of the class allegations as required under *Mantolete*." No. 18-cv-3850, 2019 WL 8298261, at *2 (N.D. Cal. Jan. 22, 2019).

Plaintiffs here have not made that threshold showing. No named plaintiff alleges visiting any provider other than the six. The SAC does not identify by name any additional provider that transmitted Health Information to Google and the SAC's broader allegations do not bridge the gap.

**B.    The Order's reliance on "the proposed class definitions" inverts the required framework.**

The Order found that "the identification of additional Web Properties is relevant in light of allegations in the SAC and the proposed class definitions." (Dkt. 266 at 2.) But a proposed class definition is not a well-pleaded factual allegation. Rather a class definition tracks the language of Rule 23 and describes the class that the plaintiff *hopes* to certify. Under *Mantolete* and *Doninger*, something more is required: a factual predicate demonstrating that the broader discovery sought will substantiate the class allegations. *Mantolete*, 767 F.2d at 1424; *Doninger*, 564 F.2d at 1313.

Courts have repeatedly rejected that filing a class action complaint entitles a plaintiff to discovery coextensive with the proposed class definition. *See Shushan v. Univ. of Colo. at*

*Boulder*, 132 F.R.D. 263, 268 (D. Colo. 1990) ("[A]n aggrieved party [cannot] file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which . . . requires discovery concerning members of that class."); *Dittmar*, 2016 WL 7188231, at *2 (plaintiffs "cannot rely on the bare allegations of the complaint to support class-wide discovery").  Here, the Order's reasoning rests on the type of circular logic these cases forbid: Plaintiffs defined a class, so Plaintiffs may obtain discovery to support that class definition.

### C.     The SAC's broader allegations do not justify individualized discovery into hundreds of millions of websites.

Plaintiffs may point to three categories of broader allegations in the SAC, but none provides the factual predicate that *Mantolete* requires.

*First*, the SAC alleges that Google's code appeared on Cerner- and Epic-powered portals generally.  (SAC ¶ 115.)  But RFP Nos. 16 and 17 fail to seek targeted discovery into those portal systems.  They seek individualized data for every website in 75 Health Verticals, a universe that bears no relation to the Cerner/Epic theory, and captures hundreds of millions of properties.

*Second*, the SAC alleges that Google Source Code was on "up to 91% of" healthcare-provider websites, and that 5,297 web properties were using Google code.  (*Id.* ¶¶ 111, 118.)  But the presence of code on a property does not mean that Health Information is transmitted.  And, as this Court recognized, what matters is "where on the web property the source code exists."  (Dkt. 157 at 5.)  The SAC pleads nothing suggesting any specific additional provider's website had Google code on pages capable of revealing Health Information.

*Third*, the SAC alleges that over 3,000 entities self-identified as "Health" during Google Analytics sign-up.  (SAC ¶ 168.)  But the SAC does not allege what those entities' websites transmitted to Google, whether source code appeared on pages capable of revealing Health Information, or whether any named plaintiff visited them.

None of these allegations ties any specific additional provider to the alleged interception of Health Information.  Under *Mantolete* and its progeny, that is the showing Plaintiffs must make

before compelling the granular, provider-by-provider discovery that RFP Nos. 16 and 17 demand. *See Mantolete*, 767 F.2d at 1424–25; *Dittmar*, 2016 WL 7188231, at *2.

  **D.** **Google has agreed to provide broad discovery that more than covers the SAC.**

  Google's position is not that ***all*** discovery in this case be limited to six websites. Rather, Google has also agreed to provide substantial discovery related to the general functionality of its products, such as the data architecture of its systems relating to Google Ads and Google Analytics; how healthcare websites may use and configure those products; what data healthcare websites may transmit to Google through use of those products; what identifiers Google may receive from healthcare websites' use of those products; how Google can use data from healthcare websites; and what terms, policies, and restrictions Google places upon those identifiers, healthcare customers, and data from those websites. (Dkt. 251-1 at 8; Dkt. 267 at 12.) Such discovery is more than sufficient to cover the allegations in the SAC.

  Permitting the class definition to scope discovery, by contrast, would lead to a staggering increase in the data Google could be required to produce. RFP Nos. 16 and 17 contain a combined 17 subparts that seek extensive, granular, and individualized information about ***each*** Web Property identified, including all verticals assigned by Google, all source code on the property, all remarketing campaigns, all revenue attributable to Google code, all configuration-log data, and HIPAA-entity status. (Dkt. 251-2 at 1–4.) The Order noted that Google agreed to produce responsive information for some of these subparts as to the six healthcare providers named in the SAC and, on that basis, concluded that the subparts are "not as 'unworkable' as initially suggested." (Dkt. 266 at 3.) But producing individualized information for six providers is an entirely different endeavor than doing so for potentially millions of Web Properties.

**IV.** **CONCLUSION**

  Google respectfully requests that the Court set aside the Order's ruling that "Google will ultimately produce information regarding additional Web Properties, beyond the six specifically identified in the SAC" (Dkt. 266 at 3), and order that individualized discovery under RFP Nos. 16 and 17 be limited to the six healthcare-provider websites alleged in the SAC.

Dated: March 3, 2026

COOLEY LLP


By: */s/ Benedict Hur*
    Benedict Hur

*Attorneys for Defendant*
*GOOGLE, LLC*

332275490