COOLEY LLP
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
TIFFANY LIN (321472)
(tiffany.lin@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
NAIARA TOKER (346145)
(ntoker@cooley.com)
YONGBIN CHANG (347454)
(ychang@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: (415) 693 2000
Facsimile: (415) 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE I, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 3:23-cv-02431-VC-SVK<br>(Consol. w/ 3:23-cv-02343-VC<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: August 13, 2026<br>Time: 10:00 a.m.<br>Ctrm: 4 – 17th Floor (San Francisco)<br>Before: District Judge Vince Chhabria<br><br>Consol. Complaint Filed: July 13, 2023<br>2nd Am. Complaint Filed: August 12, 2024 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 3
II. BACKGROUND .......... 3
III. LEGAL STANDARD .......... 5
IV. ARGUMENT .......... 6
A. Plaintiffs fail to allege that their information was "read" in transit. .......... 6
B. Plaintiffs fail to allege a violation in California .......... 10
V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adler v. Community.com, Inc.*,
No. 21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ..............................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................5, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................5, 9

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 n.4 (9th Cir. 2011) ..........................................................................................5

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................................................9

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012) ................................................................................................5

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................................................................................10

*Cody v. Ring LLC*,
No. 23-cv-00562-AMO, 2025 WL 240763 (N.D. Cal. Jan. 16, 2025).....................................8

*Crano v. Sojern, Inc.*,
2025 WL 2689267 ..............................................................................................................9, 10

*Dellasala v. Samba TV, Inc.*,
No. 25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026).....................................7

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025). ...........................................................3, 6, 10

*Doe v. Eating Recovery Center LLC*,
No. 23-cv-05561-VC, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024)..............................7

*Fleming v. Pickard*,
581 F.3d 922 (9th Cir. 2009) ..................................................................................................5

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ................................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page**


*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ....................6

*Gutierrez v. Converse*,
No. CV 23-6547-KK-MARx, 2024 WL 3511648 (C.D. Cal. July 12, 2024),
*aff'd*, No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ....................7

*Jane Doe, et al. v. Google LLC*,
5:23-cv-02343 (N.D. Cal.) ....................3

*John Doe I, et al. v. Google LLC*,
5:23-cv-02431 (N.D. Cal.) ....................4

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ....................8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................9

*L.B. v. LinkedIn Corp.*,
No. 24-cv-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ....................8

*Lewis v. Magnite, Inc.*,
No. 25-cv-03448-MWC-SSCX, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ....................7

*Licea v. Am. Eagle Outfitters,* Inc.,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................10

*R.C. v. Sussex Publishers*, *LLC*,
No. 24-cv-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ....................7

*Swarts v. Home Depot, Inc*.,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................10

*Torres v. Prudential Financial*,
No. 22-cv-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................7

*Valenzuela v. Keurig Green Mountain, Inc*.,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................11

*Valenzuela v. Super Bright LEDs Inc*.,
No. ED CV-23-01148-JAK, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ....................11

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ....................6

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................6, 7

**Statutes**

Federal Wiretap Act, 18 U.S.C. § 2510, et seq. ....................4

Health Insurance Portability and Accountability Act, 42 C.F.R. 160, et seq. ....................4

Privacy Act, Cal. Pen. Code § 630, *et seq.* ....................3, 4, 6, 8, 11
§ 631 .................... *passim*
§ 631(a) ....................6, 10, 11

**Other Authorities**

Cal. Const. art. I, § 1 ....................4

Federal Rule of Civil Procedure 12(c) ....................1, 3, 5

Rule 12(b)(6) ....................5

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 13, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Vince Chhabria of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 4 located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Google LLC ("Google"), will, and hereby does, move this Court, pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings with respect to Plaintiffs' claims under California Penal Code section 631 asserted in Count 2 of the Second Amended Consolidated Class Action Complaint ("SAC").

This Motion is based on the accompanying Memorandum of Points and Authorities, all papers and records on file in this matter, and the arguments of counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUES TO BE DECIDED

Whether Plaintiffs' claims under California Penal Code section 631 fail as a matter of law because Plaintiffs do not allege that Google read or attempted to read the alleged communications while they were:

1. In transit; or
2. In California.

## I. INTRODUCTION

Plaintiffs brought a sweeping, 107-page Complaint against Google asserting seven counts encompassing numerous distinct claims and theories of liability. The Court's rulings on Google's motions to dismiss narrowed this morass and established the legal framework governing this case. Now, through this Rule 12(c) motion, Google respectfully asks the Court to address two additional, independently dispositive legal deficiencies that appear on the face of the pleadings.

Google brings this motion for judgment on the pleadings with respect to Plaintiffs' California Penal Code section 631 claim on two grounds. First, Plaintiffs do not and cannot allege that any alleged interceptions occurred *while* the alleged communications were "in transit," as CIPA requires. This Court evaluated similar claims in *Doe v. Eating Recovery Center LLC* and concluded that the plaintiff failed to allege any violation of section 631. 806 F. Supp. 3d 1109, 1116-17 (N.D. Cal. 2025). Second, Plaintiffs fail to allege Google intercepted, much less read, the contents of their communications *within California*.

Accordingly, the SAC's allegations fail to support Plaintiffs' California Penal Code section 631 claims, and Google respectfully requests that this Court enter judgment on the pleadings on such claims asserted in Count 2 of the SAC.

## II. BACKGROUND[1]

Plaintiffs, proceeding anonymously, are seven patients of six healthcare providers[2] who filed suit against Google relating to their interactions with these healthcare providers' websites. SAC ¶¶ 35–81. While Plaintiffs allege they visited their healthcare providers' patient portals, they purport to represent a class of all persons in the United States whose "Health Information was obtained by Google through Google Source Code from their Health Care Provider" and a subclass of Google account holders. *Id.* ¶¶ 35–78, 191.

---

[1] Because the Court is familiar with the allegations from the motion to dismiss stage, Google limits this background to allegations relevant to this motion.

[2] The healthcare providers at issue in the SAC are Gundersen Health System, Kaiser Permanente, Tallahassee Memorial Health Care, MedStar Health, Shannon Medical Center, and Edward-Elmhurst Health.

Following six attempts to plead viable claims against Google[3] and two motions to dismiss, which culminated in the operative SAC, the following claims remain:

- For communications occurring *before* Google updated its help pages in March 2023:[4]
    - Count 1: Violation of the Federal Wiretap Act, 18 U.S.C. § 2510, et seq. ("Wiretap Act" or "ECPA");
    - Count 2: Violation of the California Invasion of Privacy Act, Cal. Pen. Code § 630, *et seq.* ("CIPA");
    - Count 3: Invasion of Privacy, Cal. Const. art. I, § 1; and
    - Count 4: Intrusion Upon Seclusion.

For all relevant time periods, claims for Breach of Contract with respect to one alleged promise (Count 5) and Unjust Enrichment (Count 7). Dkt. 198.

To support their CIPA section 631 claims, Plaintiffs allege that healthcare providers' use of four Google products—Google Analytics, Google Ads, Google Tag, and Google Tag Manager—causes Google to intercept their "communications" with their healthcare providers. *See, e.g.*, SAC ¶¶ 24–29, 34, 38, 39. Plaintiffs allege that cookies "are placed by Google and transmitted to Google with other information Google's tracking technologies intercept about the individual and their interactions with the site ***in real-time*** back to specific Google-owned domains ('endpoints')," that "Google intercepts these identifiers with the value fields described above, ***contemporaneously*** with the visitor's interaction with a Health Care Provider's website through what is known as a 'POST' or 'GET' request," and that "Google urges all developers to place the Google Source Code in the 'header' of its HTML so that Google's commands to re-direct a

---

[3] Plaintiffs Jane Doe, et al., brought an action against Google in *Jane Doe, et al. v. Google LLC*, 5:23-cv-02343 (N.D. Cal.) on May 12, 2023. Five days later, Plaintiffs John Doe I, et al., commenced this litigation, *John Doe I, et al. v. Google LLC*, 5:23-cv-02431 (N.D. Cal.). The Court consolidated the cases and Google filed a motion to dismiss the Consolidated Amended Complaint. Dkt. 48. Following this Court's rulings on Google's motions to dismiss, Plaintiffs filed the First Amended Consolidated Class Action Complaint on November 16, 2023 and the Second Amended Consolidated Class Action Complaint on August 12, 2024. Dkts. 86, 158.

[4] While the Order on Google's Motion to Dismiss does not provide a specific date in 2023, it references an update to Google's help pages, including Google's HIPAA policy which was updated in March 2023. *See* Dkts. 198 at 4–5, 164 at 13 (referencing Dkt. 165-3).

person's identifiers and communications content are implemented before the website's own communication with the person is complete." SAC ¶¶ 24, 100, 114 (emphasis added). All this jargon appears to mean is that Google source code transmits data to Google quickly when a user visits a website. Plaintiffs describe the processing of at-issue communications for a variety of purposes, but *only after receipt*. *See, e.g.*, SAC ¶¶ 125, 127–129. For example, the SAC alleges that "the data transmitted to Google—including Health Information—is received, categorized, and processed by Google." *Id* ¶ 125. Plaintiffs do not expound on what this post-receipt and categorization "processing" entails, or why it may constitute an effort to understand the substantive meaning of a communication.

Further, Plaintiffs do not allege that any, much less all, communications were "read" while in transit *within California*. Five of seven Plaintiffs reside outside California (all but John Doe II and John Doe IV), and five of six health care providers are located outside California (all but Kaiser Permanente). SAC ¶¶ 6–12, 35–75. None of the Plaintiffs allege that they accessed their providers' websites while physically located in California. *See generally, id.* And Plaintiffs do not allege *where* Google allegedly "reads" their communications.

## III. LEGAL STANDARD

The standard under Rule 12(c) is "functionally identical" to Rule 12(b)(6), which evaluates the pleadings under the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011); *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Accordingly, a Rule 12(c) motion should be granted when the face of the pleadings demonstrates "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (requiring more than a "sheer possibility," "naked assertion," or "formulaic recitation" of the elements of a cause of action). The court need not accept as true "allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); *see also Iqbal,* 556 U.S. at 678–79 (pleadings that are "no more than conclusions, are not entitled to the assumption of truth []"). Further, where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (cleaned up). Nor must a court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted).

## IV. ARGUMENT

In parroting the elements of their purported section 631 claim, Plaintiffs allege that Google violated CIPA because "Google's learning of or attempt to learn of the contents" of Plaintiffs' communications "occurred while the communications were in transit or in the process of being sent or received." SAC ¶¶ 212, 245; *see* Cal. Pen. Code § 631(a). But the facts alleged do not give rise to a plausible inference that Google "read" the at-issue communications while in transit. In fact, Plaintiffs allege the opposite. SAC ¶¶ 125, 127-129. In addition, and independently, Plaintiffs fail to allege that Google intercepted, much less read, the contents of their communications within California. Therefore, the Court should enter judgment on the pleadings in Google's favor on Plaintiffs' claims under California Penal Code section 631.

### A. Plaintiffs fail to allege that their information was "read" in transit.

By its plain terms, CIPA section 631(a) criminalizes efforts to "read" the "contents" of a communication while the communication was passing over a wire in California, or while it was being sent or received within the state. Cal. Pen. Code § 631(a). The "content" of a communication means its substantive meaning or import. *See Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117 (citing *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024)) ("Reading or learning the contents of a communication requires 'some effort at understanding the substantive meaning' of the communication."); *see also In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). To "read" means an effort to understand that substantive meaning. *Eating Recovery Ctr.*,

806 F. Supp. 3d at 1117. It is this act—learning the substantive meaning of the communication—that must occur while the communication is in transit within California. Cal. Pen. Code § 631(a).

It is not enough to allege that Google simply *obtained* a "communication" while it was in transit; the "communication" must be "read" before it comes to rest. For this reason, this Court granted summary judgment with respect to claims concerning the Meta Pixel similar to the claims alleged here. *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1116–17. There, this Court held that even if the alleged processing constituted reading (it did not), it "indisputably takes place after the communication has already traveled from the website visitor to the website operator." *Id.* at 1117; *see also Torres v. Prudential Financial*, No. 22-cv-07465 (CRB), 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) (holding that in-transit requirement was not satisfied when a third-party company intercepted communications and stored them in a server because the company did not actually read or attempt to read the communications while they were in transit); *Gutierrez v. Converse*, No. CV 23-6547-KK-MARx, 2024 WL 3511648, at *7 (C.D. Cal. July 12, 2024) (holding that in-transit requirement could not be met because messages sent through the defendant's software "are encrypted while in transit and, moreover, it is 'virtually impossible' to learn the contents of an internet communication while it is in transit because internet communications are transmitted 'in different network packets'"), *aff'd*, No. 24-4797, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025).

While *Eating Recovery Center* did not consider whether the allegations were pleaded sufficiently to meet the reading while in transit requirement, *see* No. 23-cv-05561-VC, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024), this Court's reasoning enjoys broad support among courts in this circuit at the pleadings stage, and should apply equally to the allegations here. *See, e.g.*, *R.C. v. Sussex Publishers*, *LLC*, No. 24-cv-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (holding allegations that "Google receives information as it is being transmitted," processes the information, and then, "[o]nce Google Analytics receives, views, reads, and processes the data, it aggregates and organizes the data based on particular criteria . . . do not support a plausible inference Google reads the information" while in transit (internal quotations

omitted)); *Dellasala v. Samba TV, Inc.,* No. 25-cv-03470-JSC, 2026 WL 1138358, at *6–7 (N.D. Cal. Apr. 21, 2026) (holding allegations that the defendant processes the data once in its servers and uses it to create audiences and serve ads suggests the contents are not read while in transit and dismissing CIPA section 631 claim); *Lewis v. Magnite, Inc.,* No. 25-cv-03448-MWC-SSCX, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025) (dismissing CIPA section 631 claim because allegations regarding monetization of data suggested the defendant would analyze communications after it collected them, not as it collected them).

Similarly, here, Plaintiffs do not allege the reading in transit that CIPA requires. Plaintiffs purport to take issue with a variety of products that they collectively refer to as "Google Source Code", which Google purportedly "makes [] available to Health Care Providers" if they wish to incorporate them into their websites. SAC ¶¶ 30–31. If providers incorporate this purported source code into their website, it causes cookies to be "transmitted to Google with other information [that] Google's tracking technologies intercept about the individual and their interactions with the site in real-time back to specific Google-owned domains ('endpoints')." SAC ¶ 24. Elsewhere, Plaintiffs allege that Google "intercepts" "identifiers" "contemporaneously with the visitor's interaction with a Health Care Provider's website through what is known as a 'POST' or 'GET' request," which are "accepted by their target endpoint." *Id.* ¶ 100. Apparently seeking to get at "contents" rather than general communications, Plaintiffs assert that Google "urges" providers to configure the "Google Source Code" in such a way that "Google's *commands* to re-direct a person's identifiers and communications content are implemented before the website's own communication with the person is complete . . . ." *Id.* ¶ 114 (emphasis added).

Among the many problems with these allegations, the most fatal is that "Google Source Code" "redirecting a communication" is not the same as Google "reading contents." As Plaintiffs admit, the purported source code is simply a tool made available for developers to incorporate on their website. SAC ¶ 31. Whether source code on Kaiser's website redirects communications to Google (or not) says nothing about *whether or when* Google "read" the "contents" of those communications. Nor do Plaintiffs get any closer to the mark with their vague allegations that this

redirection happens in "real-time." *See L.B. v. LinkedIn Corp.,* No. 24-cv-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (holding that general allegations that the tracking technology sent LinkedIn data "[w]hen a user who has signed in to LinkedIn . . . is browsing a website" and that LinkedIn began "tracking their activity the moment they entered [the websites]" insufficient as to *when* LinkedIn intercepted the communications and did not plausibly plead the in transit requirement.); *Cody v. Ring LLC,* No. 23-cv-00562-AMO, 2025 WL 240763, at *2–3 (N.D. Cal. Jan. 16, 2025) (ruling that allegations that technology records data "in real-time" were insufficient to meet the in transit requirement); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) ("The Complaint contains averments that customer chats were 'intercepted in real time,' but these amount to conclusory statements below the *Twombly* and *Iqbal* plausibility threshold.") (citations omitted); *cf. Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do").

The few allegations that Plaintiffs offer on the in-transit requirement defeat their claim. If the SAC can charitably be read to allege that Google "reads" the content of communications, Google allegedly does so only *after* it has received any such communication. According to the SAC, the story begins with the placement of cookies when a user visits a website. SAC ¶ 96. By operation of purported source code, data about the user is allegedly transmitted to various Google "endpoints." *See, e.g.*, *id.* ¶¶ 24–26. Successful receipt by these endpoints results in a HTTP 200 code. *Id.* ¶¶ 100–01. *Once received*, the data is alleged to be "categorized, and processed by Google." SAC ¶¶ 125, 127-129 ("This processing includes categorizing the data" and "Google uses the output of its categorization algorithms . . . to create 'segments' of individual website visitors. . . . Google builds and maintains these profiles in its systems for a variety of uses."). None of these allegations support the conclusory assertion that Google "learn[ed] of or attempt[ed] to learn of the contents of Plaintiffs' and Class Members' electronic communications . . . while the communications were in transit or in the process of being sent or received." SAC ¶ 245.

Notwithstanding the bloat of a 107-page SAC, Plaintiffs' allegations regarding the *time* the interception allegedly takes place and the *time* Google allegedly reads or attempts to read the

contents of the "communication" are striking in the lack of details. Nothing in the SAC alleges that Google "reads" any data before it is "received, categorized, and processed by Google," if that feat were even possible. Importantly, "once a[] [communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1077–78 (N.D. Cal. 2015); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876–77 (9th Cir. 2002) (holding that communications obtained from electronic storage are outside ECPA's scope, even where storage is brief and transitory). Other recent cases are in accord.

In *Crano v. Sojern, Inc.,* for example, the court dismissed section 631 claims that mirror Plaintiffs' allegations of in-transit interception in this case. 2025 WL 2689267, at *7. The *Crano* plaintiff alleged that "a website developer like Hilton and Marriott can use its source code to commandeer the user's computing device, causing the device to contemporaneously in real time and invisibly *re-direct* the users' personally identifiable guest records and communications to third parties like Sojern." *Id.* The plaintiff further alleged that "Sojern . . . collects as much information relating to a hotel guest as possible all from different sources . . . stores that information in a centralized location . . . where it matches data points and creates detailed profiles." *Id*. The Court held that these allegations failed to "plausibly support an inference her communications were read while in transit." *Id.* As here, Crano's allegations of re-direction and creation of user profiles when the communication is in storage failed to show the necessary effort to read communications in transit.

At bottom, Plaintiffs allege that Google received and processed certain data. They do not allege that Google ever read that data while it was in transit. Therefore, Plaintiffs' claims under CIPA section 631 fail and this Court should enter judgment on the pleadings.

### B. Plaintiffs fail to allege a violation in California.

Plaintiffs' claims under CIPA section 631(a) fail for an additional independent reason: they do not allege that Google intercepted, much less read, the contents of their communications *within California*.

Section 631's "in transit" requirement is not only temporal, it is also physical. By its plain terms, the statute only applies where a defendant has sought to read the contents of a communication while "in transit or passing over any wire, line or cable, or is being sent from, or received at any place *within this state*." Cal. Pen. Code § 631(a) (emphasis added).

Courts routinely find that section 631 means what it says. For example, when clause one says it applies to phone or telegraph wires, it does not cover internet communications. *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1115 (citing *Swarts v. Home Depot, Inc*., 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (collecting cases)). Section 631(a)'s enumeration of "wire, line, or cable" leaves no room for modern wireless communications. *See Cody v. Ring LLC,* 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (declining to interpret section 631(a) to apply to new technologies); *Licea v. Am. Eagle Outfitters,* Inc., 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) ("The fact that the Legislature has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections[.]"); *Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023) (same). Importantly, when the statute limits its application to wires "in this state," it does not apply extraterritorially. *Id* at 759 (merely sending or receiving a message in California is not enough to meet the requirement under CIPA that messages be "intercepted '*while* the same . . . is being sent from, or received at any place within this state.'"); *Valenzuela v. Super Bright LEDs Inc*., No. ED CV-23-01148-JAK, 2023 WL 8424472, at *10 (C.D. Cal. Nov. 27, 2023) ("the word 'while' . . . applies to both the phrase 'in transit' . . . and the phrase 'being sent from, or received at any place within this state.'"); *Adler v. Community.com, Inc.*, No. 21-cv-02416-SB-JPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) ("[T]he Court does not understand section 631 to prohibit access to any communications received in California. That would be an interpretation of extraordinary breadth.")

Plaintiffs plead no facts regarding *where* Google allegedly "reads" their communications. While certain plaintiffs are allegedly from California, and one healthcare provider is based here,

nothing in the SAC establishes that Google "read" their communications "while" plaintiffs sent them, "while" the healthcare providers received them, or at any point in between.

Because Plaintiffs plead nothing to suggest any, much less all, communications were "read" while in transit within California, Plaintiffs' claims under CIPA section 631 fail.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant its Motion for Judgment on the Pleadings on Plaintiffs' claims under California Penal Code section 631.

Dated: July 2, 2026

COOLEY LLP

By: */s/ Benedict Y. Hur*
Benedict Y. Hur

Attorneys for Defendant
GOOGLE LLC