# EXHIBIT 2

# SENATE COMMITTEE ON PUBLIC SAFETY

**Senator Jesse Arreguín, Chair**
**2025 - 2026 Regular**

**Bill No:** SB 690 **Hearing Date:** April 29, 2025
**Author:** Caballero
**Version:** March 24, 2025
**Urgency:** No **Fiscal:** Yes
**Consultant:** CA

**Subject:** ***Crimes: invasion of privacy***

## HISTORY

Source: Alliance for Legal Fairness

Prior Legislation: SB 1272 (Becker), Ch. 27, Stats. 2022

Support: Apartment Owners Association of California; Berkeley Chamber of Commerce; Calasian Chamber of Commerce; CalBroadband; California Black Chamber of Commerce; California Chamber of Commerce; California Hispanic Chamber of Commerce; California News Publishers Association; California Restaurant Association; California Retailers Association; Civil Justice Association of California; Ecommerce Innovation Alliance; Independent Insurance Agents & Brokers of California, INC.; Internet.works; LA South Chamber of Commerce; National Federation of Independent Business; News Media Alliance; Silicon Valley Leadership Group; State Privacy and Security Coalition, INC.; TechNet

Opposition: AFM Local 7; California Civil Liberties Advocacy; Consumer Attorneys of California; Economic Security California Action; Electronic Frontier Foundation; Electronic Privacy Information Center; Oakland Privacy; Privacy Rights Clearinghouse; TechEqiuty Action

## PURPOSE

***The purpose of this bill is to protect businesses from vexatious litigation by exempting "commercial business purpose" from civil and criminal liability under the California Invasion of Privacy Act (CIPA) which prohibits wiretapping, eavesdropping on or recording confidential communications, intercepting and recording cellular communications, or using a pen register or trap and trace device.***

*Existing law* provides, pursuant to the California Constitution, that all people are by nature free and independent and have inalienable rights. Among these the fundamental right to privacy. (Cal. Const. art. I, § 1.)

*Existing law* establishes the California Consumer Privacy Act (CCPA), which grants consumers certain rights with regard to their personal information, including enhanced notice, access, and disclosure; the right to deletion; the right to restrict the sale of information; and protection from

discrimination for exercising these rights. It places attendant obligations on businesses to respect those rights. (Civ. Code § 1798.100 et seq.)

*Existing law* establishes the California Privacy Rights Act of 2020 (CPRA), which amends the CCPA and creates the Private Protection Agency (PPA), which is charged with implementing these privacy laws, promulgating regulations, and carrying out enforcement actions. (Civ. Code § 1798.100 et seq.; Proposition 24 (2020).)

*Existing law* provides consumers the right to request that a business delete any personal information about the consumer which the business has collected from the consumer. (Civ. Code § 1798.105, subd. (a).)

*Existing law* requires a business that collects a consumer's personal information to, at or before the point of collection, inform consumers of the following:

- The categories of personal information to be collected and the purposes for which the categories of personal information are collected or used and whether that information is sold or shared. A business shall not collect additional categories of personal information or use personal information collected for additional purposes that are incompatible with the disclosed purpose for which the personal information was collected without providing the consumer with notice;

- The business collects sensitive personal information, the categories of sensitive personal information to be collected and the purposes for which the categories of sensitive personal information are collected or used, and whether that information is sold or shared. A business shall not collect additional categories of sensitive personal information or use sensitive personal information collected for additional purposes that are incompatible with the disclosed purpose for which the sensitive personal information was collected without providing the consumer with notice; and,

- The length of time the business intends to retain each category of personal information, including sensitive personal information, or if that is not possible, the criteria used to determine that period provided that a business shall not retain a consumer's personal information or sensitive personal information for each disclosed purpose for which the personal information was collected for longer than is reasonably necessary for that disclosed purpose. (Civ. Code § 1798.100, subd. (a).)

*Existing law* grants a consumer the right to request that a business that collects personal information about the consumer disclose to the consumer the following:

- The categories of personal information it has collected about that consumer;

- The categories of sources from which the personal information is collected;

- The business or commercial purpose for collecting, selling, or sharing personal information;

- The categories of third parties with whom the business shares personal information; and,

- The specific pieces of personal information it has collected about that consumer. (Civ. Code § 1798.110.)

*Existing law* provides consumers the right to request that a business that sells or shares the consumer's personal information, or that discloses it for a business purpose, disclose to the consumer specified information, including the categories of personal information collected, shared, sold, and disclosed and the categories of third parties receiving the information. (Civ. Code § 1798.115.)

*Existing law* provides a consumer the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information. It requires such a business to provide notice to consumers, as specified, that this information may be sold or shared and that consumers have the right to opt out of the sale or sharing of their personal information. (Civ. Code § 1798.120.)

*Existing law* provides that these provisions do not restrict a business' ability to collect, use, retain, sell, share, or disclose consumers' personal information that is deidentified or aggregate consumer information. (Civ. Code § 1798.145, subd. (a)(6).)

*Existing law* defines "personal information" as information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household. The CCPA provides a nonexclusive series of categories of information deemed to be personal information, including biometric information, geolocation data, and "sensitive personal information." It does not include publicly available information or lawfully obtained, truthful information that is a matter of public concern. (Civ. Code § 1798.140, subd. (v).)

*Existing law* extends additional protections to "sensitive personal information," which is defined as personal information that reveals particularly sensitive information such as genetic data and the processing of biometric information for the purpose of uniquely identifying a consumer. (Civ. Code § 1798.140, subd. (ae).)

*Existing law* provides various exemptions from the obligations imposed by the CCPA, including where they would restrict a business' ability to comply with federal, state, or local laws. (Civ. Code § 1798.145.)

*Existing law* establishes the Privacy Agency, vested with full administrative power, authority, and jurisdiction to implement and enforce the CCPA. (Civ. Code § 1798.199.10.)

*Existing law* establishes the California Invasion of Privacy Act. (Pen. Code, § 630 *et. seq*.)

*Existing law* prohibits tapping into a telephonic communication system (wiretapping), as specified, without the consent of all parties. (Pen. Code, § 631, subd. (a).)

*Existing law* makes a violation of this provision a wobbler (alternatively misdemeanor or felony) punishable by a fine not exceeding $2,500, or by imprisonment in the county jail up to one year, or by imprisonment in the county jail for 16 months, two years, or three years, or by both a fine and imprisonment. (Pen. Code, § 631, subd. (a).)

*Existing law* authorizes an increased fine not exceeding $10,000 for a violation of wiretapping if the person has previously been convicted of violating these provisions or other specified statutes. (Pen. Code, § 631, subd. (a).)

*Existing law* provides that the general prohibition against wiretapping does not apply to the following:

- A public utility, or telephone company, engaged in the business of providing communication services and facilities, or to their employees or agents, for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility or telephone company;

- The use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility; or,

- Any telephonic communication system used or communication exclusively within a state, county, city and county, or city correctional facility. (Pen. Code, § 631, subd. (b)(1)-(3).)

*This bill* exempts a commercial business purpose from the general prohibition against wiretapping.

*Existing law* makes it a crime to intentionally and without the consent of all parties eavesdrop or record a confidential communication. (Pen. Code, § 632, subd. (a).)

*Existing law* makes a violation of this provision a wobbler punishable by a fine not exceeding $2,500, or by imprisonment in the county jail up to one year, or by imprisonment in the state prison for 16 months, two years, or three years, or by both a fine and imprisonment. (Pen. Code, § 632, subd. (a).)

*Existing law* authorizes an increased fine not exceeding $10,000 for violation of eavesdropping or recording a confidential communication if the person has previously been convicted of violating these provisions or other specified statutes. (Pen. Code, § 632, subd. (a).)

*Existing law* defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (Pen. Code, § 632, subd. (c).)

*Existing law* provides that the general prohibition against eavesdropping or recording a confidential communication does not apply to the following:

- A public utility engaged in the business of providing communication services and facilities, or to their employees or agents, for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility;

- The use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility;

- Any telephonic communication system used or communication exclusively within a state, county, city and county, or city correctional facility; or,

- The use of hearing aids and similar devices, by persons afflicted with impaired hearing, for the purpose of overcoming the impairment to permit the hearing of sounds ordinarily inaudible to the human ear. (Pen. Code, § 632, subd. (e)(1)-(4).)

*This bill* exempts a commercial business purpose from the general prohibition against eavesdropping or recording a confidential communication.

*Existing law* prohibits, without the consent of all parties, intercepting or receiving and intentionally recording a communication between two cellular phones. (Pen. Code, § 632.7, subd. (a).)

*Existing law* makes a violation of this provision a wobbler punishable by a fine not exceeding $2,500, or by imprisonment in the county jail up to one year, or by imprisonment in the state prison for 16 months, two years, or three years, or by both a fine and imprisonment. (Pen. Code, § 632.7, subd. (a).)

*Existing law* authorizes an increased fine not exceeding $10,000 for violation of intercepting or receiving and intentionally recording a cellular radio communication if the person has previously been convicted of violating these provisions or other specified statutes. (Pen. Code, § 632.7, subd. (a).)

*Existing law* provides that the general prohibition against intercepting or receiving and intentionally recording a cellular radio communication does not apply to the following:

- A public utility, or telephone company, engaged in the business of providing communication services and facilities, or to their employees or agents, for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility or telephone company;

- The use of any instrument, equipment, facility, or service furnished and used pursuant to the tariffs of a public utility; or,

- Any telephonic communication system used or communication exclusively within a state, county, city and county, or city correctional facility. (Pen. Code, § 632.7, subd. (b)(1)-(3).)

*This bill* exempts a commercial business purpose from the general prohibition against intercepting or receiving and intentionally recording a cellular radio communication.

*Existing law* authorizes a person who has been injured by a violation of these prohibitions to bring an action against the person who committed the violation to enjoin and restrain the violation, as well as to bring an action for monetary damages, as specified. (Pen. Code, § 637.2.)

*This bill* specifies that this authorization does not apply to the processing of personal information for a commercial business purpose.

*Existing law* prohibits the interception of electronic communications and prohibits the installation or use of a pen register or a trap and trace device without first obtaining a court order, except as specified. (Pen. Code, § 638.51, subds. (a) & (b).)

*Existing law* makes a violation punishable by a fine not exceeding $2,500, or by imprisonment in the county jail not exceeding one year, or by imprisonment in the county jail for 16 months, two years, or three years, or by both that fine and imprisonment. (Pen. Code, § 638.51, subd. (c).)

*Existing law* defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication but not the contents of a communication. (Pen. Code, § 638.50, subd. (c).)

*This bill* specifies that a trap and trace device does not include a device or process that is used in a manner consistent with a commercial business purpose.

*Existing* law defines a "pen register" for these purposes to mean a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted but not the contents of a communication, with specified exceptions. (Pen. Code, § 638.50, subd. (b).)

*This bill* specifies that a pen register does not include a device or process used in a manner consistent with a commercial business purpose.

*This bill* defines a "commercial business purpose" to mean the processing of personal information either performed to further a business purpose or subject to a consumer's opt-out rights.

*This bill* makes its provisions retroactive and applicable to any case pending as of January 1, 2026.

## COMMENTS

### 1. Need for This Bill

According to the author:

> SB 690 would stop abusive shake down lawsuits for standard online business activities against California businesses and nonprofits filed under the California Invasion of Privacy Act (CIPA) enacted in 1967, long before the internet was developed. Online business activity is regulated by the California Consumer Privacy Act (CCPA), and is California's omnibus privacy law which is the guiding statute for online privacy protections including data protections. Despite the enactment of CCPA, vexatious litigation using CIPA prey on small business owners and non-profits who cannot afford to defend themselves even though they are in compliance with existing law. SB 690 would clarify that online businesses that comply with CCPA opt-out requirements cannot be punished under CIPA.

## 2. Background – CIPA Claims Being Filed

In August of 2024, the American Bar Journal published an article discussing the "recent wave of lawsuits and arbitration demands under the California Invasion of Privacy Act (CIPA)." (https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-august/californias-invasion-privacy-act/ [as of April 17, 2025].) As noted in the article, both large and small companies operating websites visited by California consumers have been receiving letters threatening litigation or lawsuits. In addition to criminal penalties for a violation of CIPA, CIPA allows an injured person to bring a cause of action for damages. (Pen. Code, §§ 631, subd. (a), 632, subd. (a), 632.7, subd. (a), 637.2.)

To understand why these lawsuits are being file now, the authors note:

> The California Consumer Privacy Act (CCPA), amended by the California Privacy Rights Act (CPRA), pioneered broad privacy rights for consumers in the United States. Following California's lead, more than a dozen states have enacted similar comprehensive privacy laws. However, most of these state laws, including California's, do not provide a private right of action for violations except for data breaches under the CCPA. Critics argue that without a private right of action, these laws lack the necessary enforcement mechanisms to ensure compliance. In response, plaintiffs' attorneys in California have sought alternative legal strategies.
>
> One such strategy involves invoking the CIPA, a decades-old criminal statute enacted in 1967 to prevent eavesdropping on telephone calls. This approach represents a novel attempt to bypass the limitations of the CCPA by leveraging a law designed for different circumstances, thus giving it a modern application in the digital age….

(https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-august/californias-invasion-privacy-act/, *supra*.) "The new CIPA cases focus on the alleged unlawful use of website tracking technologies, such as cookies, pixels, tags, and beacons, to collect and use personal information of people who visit these websites." (*Ibid*.) They argue for example, that website tracking technologies are illegal pen registers under CIPA. (*Ibid*.)

According to the article, these CIPA threatening letters, demands for arbitration, and claims do not appear to discriminate based on the company size or type of industry. Several recommendations are included for what companies can do while courts grapple with these cases and issues – e.g., ensuring that their websites and notices, including website privacy notices comply with the state's data protection laws; and assessing their transparency regarding cookies and website tracking technologies, to include which ones are used and how website users can block them or opt out. It is also suggested that "companies should consider using an opt-in mechanism for tracking technologies for California users. One of the key considerations in … cases is whether visiting a website constitutes consent for data collection. By asking for explicit consent (i.e., an opt-in for tracking technologies like cookies), companies could potentially provide an affirmative defense against allegations that an unlawful pen register was deployed, as consent is an exception to the prohibition on the use of

pen registers."
(https://www.americanbar.org/groups/business_law/resources/business-law-today/2024-august/californias-invasion-privacy-act/, *supra*.)

**3. Exempting Commercial Business Purposes from CIPA Provisions**

CIPA prohibits wiretapping, eavesdropping or recording a confidential telephone communication, or intercepts and records a cellular communication without the consent of all parties. Existing law exempts specified communication, including those in a correctional institution and those required for utility maintenance purposes. A violation of these provisions is punishable as either a misdemeanor or a felony. (Pen. Code, §§ 631, 632, 632.7.)

This bill also exempts a "commercial business purpose" from these CIPA prohibitions. The bill defines a commercial business purpose to mean the processing of personal information either performed to further a business purpose, as defined, or subject to a consumer's opt-out rights.

CIPA prohibits the interception of electronic communications and prohibits the installation or use of a pen register or a trap and trace device without first obtaining a court order, except as specified. A violation is punishable as a felony or a misdemeanor. (Pen. Code, § 638.51.)

This bill specifies that under CIPA, a pen register or trap and trace device does not include a device or process used in a manner consistent with a commercial business purpose.

This bill also provides that the authority of a person who has been injured by a violation of CIPA prohibitions to bring an action against the person who committed the violation to enjoin and restrain the violation, as well as to bring an action for monetary damages (Pen. Code, § 637.2), does not apply to the processing of personal information for a commercial business purpose.

Lastly, this bill would make its provisions retroactive and applicable to any case pending as of January 1, 2026.

This bill has raised a number of concerns, some of which are laid out in the opposition to this bill below. Importantly, this bill applies broadly to commercial businesses including large companies like Google and Facebook, not just the small businesses it seeks to insulate from costly law suits.

While these commercial businesses would still be subject to CCPA provisions, the CCPA does not contain the same consumer protections as CIPA. For example, unlike CIPA, it contains no private right of action for consumers and instead its provisions are enforced by the PPA. (Civ. Code § 1798.199.10.) This leaves consumers without a voice when they are the subject of a violation.

Additionally, this bill defines a "commercial business purpose" to mean the processing of personal information either performed to further a business purpose or subject to a consumer's opt-out rights. Because consumers may not be aware that they are being

tracked, they may not be able to make an informed decision about whether to opt-out (versus being given a choice to opt-in).

Retroactive application raises concerns that this bill will undermine active litigation.

Lastly, while the bill is directed at protecting businesses from vexatious civil litigation, it goes beyond this by also exempting "commercial business purpose" from the criminal offense(s) and penalties under CIPA. This appears unrelated to the problem this bill is trying to solve.

**Related Legislation**

SB 361 (Becker), of the 2025-2026 Legislative Session, requires data brokers registering with the CPPA to indicate whether they collect the following information on consumers: account login or account number in combination with any required security code, access code, or password that would permit access to a consumer's account with a third party; drivers' license number, California identification card number, tax identification number, social security number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual; citizenship data, including immigration status; union membership status; sexual orientation status; or biometric data. SB 361 was passed by the Senate Judiciary Committee on April 2, 2025, and is set to be heard in Senate Appropriations on April 21, 2025.

AB 1355 (Ward), of the 2025-2026 Legislative Session, prohibits an entity covered under the CCPA to collect or process location information of an individual unless doing so is necessary to the goods or services requested by that individual and imposes various other restrictions with regard to location information. AB 1355 would make a covered entity liable for damages in an action brought by the Attorney General or other public prosecutors. AB 1355 requires a business, as defined by the CCPA, to comply with these provisions. AB 1355 is pending hearing in the Assembly Privacy and Consumer Protection Committee.

**4. Argument in Support**

According to the Alliance for Legal Fairness, the sponsor of this bill:

> This bill is necessary to stop the thousands of shakedown letters and lawsuits against California businesses of all sizes for typical business activities, like website analytics or online advertising that are already governed by the California Consumer Privacy Act (CCPA). In the last 18 months, trial lawyers have sued over 1,500 businesses using the California Invasion of Privacy Act's private right of action, arguing that these typical business activities constitute "wiretapping" or an illegal "pen register," necessitating "opt-in" consent before the business can, for example, save an online shopping cart or show an ad.
>
> However, in 2018 the California Legislature specifically and unanimously decided that these business activities should be regulated by the CCPA, which is an "opt-out" consent regime. In 2020, the California voters added to the

CCPA via ballot initiative, confirming their support of a system of "opt-out" consent, and, with it, further limits on data collection and use. The ballot initiative also added additional protections for certain categories of "sensitive data," such as health data, location data, and biometric data. The newly created California Privacy Protection Agency (Privacy Agency) has drafted over 150 pages of regulations on how businesses must implement this "opt-out" privacy regime. The Legislature is considering further legislation this year. Moreover, both the Privacy Agency and the Attorney General are empowered to enforce the statute, and the Attorney General's office has initiated enforcement actions against companies for violating these opt-out requirements. The Privacy Agency is also sponsoring legislation to further strengthen this opt-out regime. CIPA, a 1967 criminal wiretapping statute that requires consent before recording phone calls, was never intended to apply to this type of activity. These lawsuits are unfair and must be stopped.

**The CCPA Governs Online Business Activity – Not CIPA**

Again, the Legislature unanimously passed the CCPA in 2018 to govern how businesses collect, use, and share consumers' information for typical business activity, such as website analytics and online advertising, and created an "opt-out" consent privacy regime. The Legislature considered and declined to follow Europe's GDPR privacy law's "opt-in" consent structure because of the cumbersome requirements necessary to click through before visiting every website. Subsequently, many other states followed California's first-in-the-nation privacy law.

Voters strengthened the CCPA in 2020 via ballot initiative to add heightened protections for sensitive information such as precise geolocation data and health-related data, and to expand the ability for consumers to use tools to opt-out of the sale/sharing of their personal information. The law provides a comprehensive regulatory framework that mandates clear notice and opt-out rights for consumers, ensuring that data privacy protections are enforced in a consistent and predictable manner. Businesses that comply with the CCPA follow stringent requirements regarding data collection, retention, and disclosure—yet, due to a handful of trial lawyers subverting the intent of CIPA, they are still being targeted with costly lawsuits for conduct that already falls within the CCPA's governance.

Moreover, the CCPA is highly specific in its treatment of sensitive data. The CCPA provides consumers with the ability to – and requires businesses to provide tools on their homepage that allow them to - limit the use of their sensitive data, which includes health data, biometric data, and precise geolocation data, offering strong privacy protections tailored to modern digital practices.

When it comes to this type of data and the use of common web technologies on websites, the legislature and the voters of this state intentionally chose to regulate those activities through the CCPA, and not to have a private right of action as an enforcement mechanism for violations of the law. Instead, it is actively enforced by two separate regulatory bodies:

- The California Privacy Protection Agency, which was created to implement and enforce the CCPA. The Privacy Agency is empowered to oversee business compliance, issue regulations, and impose penalties on organizations that violate the law.

- The California Attorney General retains authority to investigate and enforce violations of the CCPA, ensuring that companies adhere to the statute's robust consumer protections.

These enforcement mechanisms were specifically designed by the Legislature and California voters to regulate the exact types of data collection and digital interactions that are now the subject of opportunistic CIPA lawsuits. Allowing CIPA to be misapplied in this manner creates regulatory duplication, uncertainty, and unnecessary financial burdens for businesses that are already in compliance with an expansive and expensive privacy regime.

Businesses need certainty as to how to comply with privacy laws. Businesses have spent significant resources to comply with the CCPA, the Privacy Agency's hundreds of pages of regulation, and guidance from the Privacy Agency and AG. It makes no sense – and is completely unfair – to require them to somehow implement a conflicting, 1967 criminal wiretapping statute designed for telephone wiretapping because of a handful of trial lawyers churning out lawsuits. Without this clarity, businesses will continue to face unpredictable and inconsistent legal risks, hampering compliance efforts and innovation.

**<u>CIPA's Private Right of Action is Being Abused in Ways Never Intended by the Statute.</u>**

Beyond regulatory inconsistency, the unchecked barrage of CIPA lawsuits has done nothing to protect consumer privacy. Instead, these demand letters and lawsuits have created significant costs for California businesses, particularly small and mid-sized businesses – and non-profits – that lack the resources to defend against these claims. Trial lawyers have targeted businesses for using common digital tools such as chatbots—tools that are widely used to enhance user experience and do not constitute unlawful wiretapping or eavesdropping as originally intended under CIPA.

Trial lawyers have sued **over 1,500 businesses since 2022**, and have sent thousands more demand letters.

**Failing to enact SB 690 will allow these lawsuits to proceed unchecked, allowing trial lawyers to force businesses into practices that conflict with the CCPA and create regulatory chaos in California.**

These lawsuits exploit the broad private right of action under CIPA to force businesses into costly settlements, diverting resources away from innovation and true consumer privacy protections. By ensuring that activities governed by the CCPA remain within the jurisdiction of the CCPA, SB 690 will restore legislative intent, prevent regulatory overreach, and protect businesses from abusive litigation tactics.

No California businesses is safe from these lawsuits. The trial lawyers have sued large and small businesses – and non-profits too. Our coalition of support includes news media, restaurants, broadband providers, retailers, and many small businesses. The broad scope of these lawsuits demonstrates that the misuse of CIPA affects the entire business community.

**5. Argument in Opposition**

According to the Consumer Attorneys of California:

> SB 690 exempts commercial business purposes from the California Invasion of Privacy Act (CIPA) fundamentally undermining the purpose for which the law was enacted, eviscerates one of the strongest consumer tools privacy advocates currently use to challenge illegal and invasive practices, and would set dangerous precedent by retroactively gutting the rights of California's consumers.
>
> CAOC met with the author prior to the introduction of SB 690 and expressed a willingness to address amendments to CIPA necessary to ensure the law operates as originally intended. We submitted amendments for the author and proponents' consideration on March 21st and met with the author's staff today to discuss our concerns and proposed amendments. Based on our discussions we will be taking another look at language and resubmitting. We welcome continued conversations to find a productive solution to the harms the proponents raise. However, big tech must be held accountable violating consumer privacy rights.

**I. SB 690's Commercial Business Exception to CIPA Runs Counter to Both the Statute's Intent and a Decade of Judicial Interpretation**

When passed in 1967, CIPA was designed as a forward-looking protection against the full spectrum of technological intrusions into private life. The legislative history demonstrates a clear intention to address and regulate the growing threat of electronic surveillance. These concerns are consistent with the now ubiquitous and invasive commercial practices of internet-based tracking, profiling, and data commodification. CIPA was intended to be robust, technology-neutral, and protective of Californians' right to control their private communications, regardless of the surveillance medium. The argument advanced by SB 690—that CIPA was intended to be limited to traditional wiretaps—is contradicted by the legislative record, which reveals a sophisticated understanding of, and alarm at, the ever increasing sophistication of private surveillance systems that propelled their vision past the 1960s and into the future.

a. *Commercial Business Purposes Exclusion Immunizes Big Tech*

> SB 690's attempt to insert a broad exemption for "commercial business purposes" would retroactively gut the judicial recognition that CIPA applies to commercial surveillance activities, particularly that body of law regarding the emerging ubiquity of illegal online surveillance. Courts have long affirmed that commercial actors, including tech giants like Meta and Google, can be held liable under CIPA for secretly intercepting and recording user interactions without proper consent. Courts have also embraced a broad interpretation of CIPA that reflects its

purpose, which is to safeguard the privacy of electronic communications in the face of advancing technologies. This bill, supported by the tech giants violating the law, reverses these protections by enshrining an exception precisely where the need for scrutiny and restraint is currently greatest: the invasive collection and exploitation of personal data.

b. *CCPA Does Not Replace CIPA*

SB 690 seeks to wipe out the historical protections of consumers afforded by CIPA through a misapplication of the California Consumer Privacy Act's (CCPA) sectoral regulations, which would have its largely opt-out framework displace CIPA's consent-based protections. The CCPA was explicitly designed to augment, not replace, existing privacy protections—a fact enshrined in the unambiguous language of the statute itself that the CCPA was:

> "intended to further the constitutional right of privacy and to *supplement* existing laws relating to consumers' personal information." Cal. Civ. Code § 1798.175. As such, "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.*

The CCPA thus sets a *floor*—not a ceiling—for privacy rights. It offers no private right of action for any violations, other than data breach, and relies entirely on regulatory enforcement by state authorities.

In its current form, CIPA, by contrast, empowers individuals to seek redress in court for unauthorized surveillance. Without CIPA's private enforcement mechanism, Californians would be left without a central tool for combating abusive surveillance by commercial actors. The commercial exemption proposed in SB 690 would eviscerate this accountability structure, effectively granting tech companies and data brokers a blanket license to engage in covert real-time surveillance of every communication between consumers and any business in the state, so long as they claim it is done for a "business purpose." This carveout would render CIPA a hollow shell, leaving the most pervasive and invasive forms of surveillance beyond the reach of civil and criminal enforcement.

## II. CIPA's Role in Landmark Privacy Litigation

CIPA has played a vital role in holding powerful commercial actors accountable for invasive data collection practices. **Over the past decade, CIPA has been at the heart of landmark litigation that has not only exposed egregious privacy violations but also compelled meaningful reform within the tech industry**. These cases demonstrate that CIPA is an essential legal tool for the protection of Californians' privacy rights. The following cases highlight how consumers have relied on CIPA to confront covert tracking and data exploitation practices that SB 690 would shield from scrutiny and accountability.

- Facebook – Tracking Users Even After Logging Out

*In re Facebook, Inc. Internet Tracking Litigation*, No. 12-MD-02314-EJD (N.D. Cal.), filed in 2012, the Ninth Circuit held that Facebook's continued tracking of users even after logging out—via cookies embedded on third-party websites—violated users' reasonable expectations of privacy and constituted a potential

violation of CIPA and the federal Wiretap Act. The case recognized that Facebook's pervasive off-site tracking potentially amounted to unauthorized interception of communications. The plaintiffs' ability to sue under CIPA and leverage its statutory damages provisions was critical to holding Facebook accountable, leading to justice for consumers and reforms to Facebook's data practices. **This important appellate ruling represented a judicial shift away from tolerating mass surveillance under the guise of standard business practices, and reinforced CIPA's role as a vital check on invasive commercial surveillance.**

- Google – Collected and Tracked Users' Private Browsing History Without Consent

  In *Brown v. Google*, No. 4:20-cv-03664-YGR (N.D. Cal), filed in 2020, the plaintiffs alleged that Google intercepted users' private browsing activity—even in "Incognito Mode"—without their consent, using analytics scripts and tracking pixels. The court denied Google's motion to dismiss and rejected Google's arguments that its data collection practices were justified as "ordinary business conduct." The plaintiffs successfully obtained class certification for injunctive relief, with the court noting that the relief plaintiffs sought "would be important changes to reflect transparency in the system."[1] **The case ultimately resulted in a court-approved settlement requiring significant structural changes to Google's tracking practices. Without the CIPA claims, plaintiffs would have lacked a powerful statutory hook for challenging Google's covert and deceptive tracking practices.**

- Oracle – Intercepted User Interactions With Websites Without Consent

  In *Katz-Lacabe v. Oracle*, No. 22-cv-04792 (N.D. Cal.), filed in 2022, the plaintiffs challenged Oracle's construction of massive digital dossiers through its embedded tracking technologies and data broker practices. Under CIPA, the case targeted Oracle's interception of user interactions with web sites, arguing that the company's surveillance infrastructure enabled the non-consensual collection of sensitive data in violation of wiretap statutes and constitutional privacy guarantees. The plaintiffs successfully survived multiple motions to dismiss and ultimately achieved justice for consumers and, significantly, a **change in practice where Oracle shut down its entire adtech and data broker business—an unparalleled result in privacy litigation.** As confirmed by news reports, Oracle's decision to exit the adtech sector was directly influenced by the legal and reputational pressures created by the *Katz-Lacabe* case, making it the **most impactful CIPA litigation to date and an affirmation of the statute's ongoing importance in confronting invasive internet surveillance practices.**

## III. SB 690's Retroactive Provisions Are Contrary to Legislative Policy

The retroactive application of SB 690 would eliminate a host of critically important, ongoing privacy class actions that were developed based on past violations of CIPA. These pending cases—many of which have already survived

[1] *Brown v. Google*, LLC, No. 20-CV-3664-YGR, 2022 WL 17961497, at *20 (N.D. Cal. Dec. 12, 2022).

motions to dismiss—invoke CIPA's well-established applicability to commercial internet surveillance to protect consumers.

- *John Doe I, et al. v. Google LLC,* No. 3:23-cv-02431(N.D. Cal.) (Class action alleging that Google's use of Pixel tracking tools on healthcare websites violated CIPA by intercepting confidential communications between patients and providers);
- *In re Meta Pixel Healthcare Litigation*, No. 3:22-cv-03580-WHO (N.D. Cal.) (Class action alleging CIPA violations based on Meta's unauthorized interception of confidential patient-healthcare communications through the Meta Pixel tracking tool embedded on hospital websites).
- *Kolotinsky v. Amazon.com Inc.*, filed in the U.S. District Court for the Northern District of California, case number 25-00931 (Class-action lawsuit filed in January 2025 accuses Amazon of covertly tracking and selling consumers' sensitive data—including geolocation, religious beliefs, sexual orientation, and medical history—without consent, potentially exposing individuals to significant privacy harms.[2]
- Rigan*ian v. LiveRamp Holdings Inc., Case No. 3:25-cv-00471*[3] (Class-action lawsuit accuses LiveRamp, formerly Acxiom and one of the largest data brokers in the world, of illegally collecting and selling detailed "Identity Profiles" on nearly 700 million consumers without consent, alleging that its data tracking methods may constitute the use of a pen register under CIPA. Critics argue that LiveRamp operates one of the most invasive surveillance networks, secretly compiling and selling personal details—such as online activity, locations, and purchasing history—to advertisers and data brokers, exposing consumers to mass privacy violations.

By retroactively stripping individuals of their right to bring claims for already-committed acts of unlawful data interception, SB 690 would pull the rug out from under consumers and courts midstream, denying redress for past harms and rewarding defendants precisely because they were caught violating the law and then went to the legislature to gut the law they violated. This approach offends basic principles of due process and is traditionally frowned upon in the California Legislature. If enacted, SB 690 would send a dangerous message that even clear statutory rights can be erased overnight to shield powerful corporate interests from accountability.

## IV. Vote No on SB 690

In sum, SB 690 represents a serious threat to Californians' privacy rights and would destroy one of the most effective tools currently available to challenge invasive and often deceptive commercial surveillance practices. It would gut enforcement under the CIPA at the very time in which enforcement is most critically needed.

**-- END –**

[2] https://www.jurist.org/news/2025/01/consumers-sue-amazon-over-alleged-tracking-of-sensitive-data/
[3] https://localnewsmatters.org/2025/01/30/identity-crisis-lawsuit-alleges-tech-company-violated-privacy-laws-by-reselling-client-data/