**BARNES LAW, LLC**
Jason 'Jay' Barnes, State Bar No. 362766
231 Madison Street, Third Floor
Jefferson City, MO 65101
Telephone: (573) 308-7658
Facsimile: (573) 635-7414
*jaybarnes@barnes.law*

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
Nicole Ramirez Jones, State Bar No. 279017
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
*koncius@kiesel.law*
*ramirezjones@kiesel.law*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (admitted *pro hac vice*)
Ethan Binder (admitted *pro hac vice*)
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 233-6334
*jguglielmo@scott-scott.com*

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
*clevis@lowey.com*
*afiorilla@lowey.com*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol, State Bar No. 194857
Melissa Gardner, State Bar No. 289096
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
*msobol@lchb.com*
*mgardner@lchb.com*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Douglas Cuthbertson (admitted *pro hac vice*)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
*dcuthbertson@lchb.com*

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JOHN DOE, *et al.*, individually and on behalf of all others similarly situated,

Plaintiffs,

GOOGLE LLC,

Defendant.

**This document applies to: All Actions**

Case No. 3:23-cv-02431-VC

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: February 25, 2027
Judge: Hon. Vince Chhabria
Ctrm: 4, 17th Floor

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE** that on February 25, 2027, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th Floor, of the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Vince Chhabria, Plaintiffs John Doe I, John Doe II, John Doe IV, John Doe V, Jane Doe I, Jane Doe VI, and Jane Doe VII ("Plaintiffs") will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23, for an order certifying the following Classes against Defendant Google LLC ("Google"):

**Under Fed. R. Civ. P. 23(b)(3)**

| Class | Class Representatives | Claims |
|---|---|---|
| ***Nationwide Class:*** All Google Accountholders[1] in the United States who are or were patients of Gundersen Health System, Kaiser Permanente, Tallahassee Memorial HealthCare, MedStar Health, Shannon Medical Center, or Edward-Elmhurst Health (the "Healthcare Providers") and who, between October 25, 2017 and the present (the "Class Period"), communicated Health Information[2] to their Healthcare Provider through that Healthcare Provider's website and/or patient portal containing Google Source Code.[3] | All Plaintiffs: John Doe I, John Doe II, John Doe IV, John Doe V, Jane Doe I, Jane Doe VI, and Jane Doe VII | (1) Breach of contract; (2) intrusion upon seclusion; (3) unjust enrichment; and (4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |
| ***Gundersen Subclass*:** All Google Accountholders in the United States | John Doe I | (1) Breach of contract; |

[1] Google Accountholders refers to individuals who have a Gmail Account, use an email and password to sign into Google services, or use Google services on an Android device. *See* Google Account Help, Help Center, What is a Google Account?, available at https://support.google.com/accounts/answer/15277265?hl=en (last accessed Oct. 14, 2026).

[2] Health Information means information that is (1) created or received by a health care provider; (2)"[r]elate[] to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual"; and (3) either (a) identify an individual or (b) there is a reasonable basis to believe they can be used to identify an individual.

[3] Google Source Code refers to code placed on a non-Google web-property in connection with Google Ads, Google Display Ads, or Google Analytics.

| | | |
|---|---|---|
| who are or were patients of Gundersen Health System and who, between October 25, 2017 and the present, communicated Health Information to Gundersen Health System through its website and/or patient portal containing Google Source Code. | | (2) intrusion upon seclusion;<br>(3) unjust enrichment; and<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |
| ***Kaiser Subclass***: All Google Accountholders in the United States who are or were patients of Kaiser Permanente and who, between October 25, 2017 and September 20, 2025, communicated Health Information to Kaiser Permanente through its website and/or patient portal containing Google Source Code. | John Doe II and John Doe IV | (1) Breach of contract;<br>(2) intrusion upon seclusion;<br>(3) unjust enrichment; and<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |
| ***TMH Subclass***: All Google Accountholders in the United States who are or were patients of Tallahassee Memorial HealthCare and who, between October 25, 2017 and August 4, 2025, communicated Health Information to Tallahassee Memorial HealthCare through its website and/or patient portal containing Google Source Code. | John Doe V | (1) Breach of contract;<br>(2) intrusion upon seclusion;<br>(3) unjust enrichment; and<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |
| ***MedStar Subclass***: All Google Accountholders in the United States who are or were patients of MedStar Health and who, between October 25, 2017 and the present, communicated Health Information to MedStar Health through its website and/or patient portal containing Google Source Code. | Jane Doe I | (1) Breach of contract;<br>(2) intrusion upon seclusion;<br>(3) unjust enrichment; and<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |
| ***Shannon Subclass***: All Google Accountholders in the United States who are or were patients of Shannon Medical Center and who, between October 25, 2017 and October 31, 2025, communicated Health Information to Shannon Medical | Jane Doe VI | (1) Breach of contract;<br>(2) intrusion upon seclusion;<br>(3) unjust enrichment; and<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |

| | | |
|---|---|---|
| Center through its website and/or patient portal containing Google Source Code. | | |
| ***Edward-Elmhurst Subclass*: All Google Accountholders in the United States who are or were patients of Edward-Elmhurst Health and who, between October 25, 2017 and the present, communicated Health Information to Edward-Elmhurst Health through its website and/or patient portal containing Google Source Code. | Jane Doe VII | (1) Breach of contract;<br>(2) intrusion upon seclusion;<br>(3) unjust enrichment; and<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 |
| ***Kaiser California Subclass:*** All Google Accountholders in California who are or were patients of Kaiser Permanente and who, between October 25, 2017 and September 20, 2025, communicated Health Information to Kaiser Permanente through its website and/or patient portal containing Google Source Code. | John Doe II and John Doe IV | (1) Breach of contract;<br>(2) intrusion upon seclusion;<br>(3) unjust enrichment;<br>(4) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511;<br>(5) California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 632 |

**Under Fed. R. Civ. P. 23(b)(2)**

| Class | Class Representatives | Claims |
|---|---|---|
| ***Injunctive Relief Class:*** All Google Accountholders in the United States whose Health Information was obtained by Google through Google Source Code on a healthcare provider's website and/or patient portal from October 25, 2017 to the present. | All Plaintiffs | Declaratory relief and injunctive relief, including specific performance, in connection with the breach of contract, intrusion upon seclusion, ECPA, and CIPA § 632 claims |

Plaintiffs further request that the Court appoint Plaintiffs as Class Representatives and appoint Christian Levis of Lowey Dannenberg, P.C., Jay Barnes of Barnes Law, LLC, Jeffrey Koncius of Kiesel Law LLP, Melissa Gardner of Lieff Cabraser Heimann & Bernstein, LLP, and Joseph Guglielmo of Scott+Scott Attorneys at Law LLP as Class Counsel pursuant to Rule 23(g).

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Christian Levis and the exhibits attached thereto; the declarations of proposed Class Counsel; the declarations of each Plaintiff; the expert reports of Professor I. Glenn Cohen, Dr. Zubair Shafiq, and Dr. Todd Zigrang; the proposed jury instructions and verdict form; the Proposed Order; all pleadings and papers on file in this action; any reply papers; and such other evidence and argument as may be presented at or before the hearing.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiffs have shown by a preponderance of the evidence that: (1) the proposed Classes satisfy the requirements of Rule 23(a); (2) the Nationwide Class (or, in the alternative, the Nationwide Provider Subclasses) and the California Subclass satisfy Rule 23(b)(3)'s predominance and superiority requirements; (3) the Injunctive Relief Class satisfies the requirements of Rule 23(b)(2); and (4) Plaintiffs should be appointed Class Representatives and their counsel appointed Class Counsel under Rule 23(g).

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........................................................................................................1
II. LEGAL STANDARD...................................................................................................2
III. STATEMENT OF FACTS ..............................................................................................3
A. Common Contract Promises and Expectations of Health Information Privacy .................3
B. Google's Common Collection of Identifiable Health Information.....................................5
C. Google's Common Use of Health Information for Targeted Advertising...........................8
D. Google's Intent Is Shown Through Common Evidence ....................................................8
IV. ARGUMENT...............................................................................................................9
A. This Case Meets the Requirements of Rule 23(a) ............................................................9
1. Each Proposed Class is Sufficiently Numerous......................................................9
2. Legal and Factual Issues are Common to the Proposed Classes ............................9
3. The Plaintiffs' Claims are Typical of Each Respective Class ...............................10
4. The Plaintiffs and Class Counsel are Adequate Representatives..........................10
B. The Classes Suffered Common Article III Injuries From Google's Conduct ..................11
C. The Damages Class (or Subclasses) Should be Certified Under Rule 23(b)(3) ...............11
1. The Contract Claims Should Be Certified Under Rule 23(b)(3) ..........................12
2. The Intrusion Claim Should Be Certified ..........................................................13
3. The Unjust Enrichment Claim Should Be Certified .............................................15
4. The ECPA Claim Should Be Certified ................................................................15
5. The CIPA § 632 Claim Should Be Certified .......................................................18
6. Plaintiffs' Damages Models Support Certification...............................................19
D. The Requirements of Rule 23(b)(2) are Met for All Patients in the U.S. .........................22
E. Manageability of the Class Action Trial...........................................................................23
V. CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Advoc. Aurora Health Pixel Litig.*,
740 F. Supp. 3d 736 (E.D. Wis. 2024)....23

*Alcantar v. Hobart Serv.*,
800 F.3d 1047 (9th Cir. 2015)....9

*Allen v. Conagra Foods, Inc.*,
31 F.R.D. 641 (N.D. Cal. 2019)....15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)....3

*Attias v. CareFirst, Inc.*,
346 F.R.D. 1 (D.D.C. 2024)....21

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010)....21

*Birdsall v. Helfet*,
113 Cal.App.5th 558 (1st Dist. 2025)....13

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)....24, 25

*Brown v. DirecTV, LLC*,
562 F. Supp. 3d 590 (C.D. Cal. 2021)....25

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)....18

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....11, 18

*Calhoun v. Google*,
113 F.4th 1141 (9th Cir. 2024)....13, 17

*Campbell v. Facebook*,
315 F.R.D. 250 (N.D. Cal. 2016)....20

*Campbell v. Facebook Inc.*,
310 F.R.D. 439 (N.D. Cal. 2015)....19

*Castillo v. Bank of America, NA*,
980 F.3d 723 (9th Cir. 2020)....9, 10

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)....6, 7

*Cummings v. Connell*,
402 F.3d 936 (9th Cir. 2005) ....21

*Doe I v. Google LLC*,
2023 WL 6882766 (N.D. Cal. Oct. 18, 2023)....3

*Doe v. Chao*,
540 U.S. 614 (2004)....20

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....16

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....17

*Doe v. Regents*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ....3

*Ellis v. Costco*,
657 F.3d 970 (9th Cir. 2011) ....21

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012)....21

*Ellsworth v. U.S. Bank, N.A.*,
2014 WL 2734953 (N.D. Cal. Jun. 13, 2014)....11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....11

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018)....2

*In re Facebook Priv. Litig.*,
192 F. Supp. 3d 1053 (N.D. Cal. 2016) ....11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th. Cir. 2020) .... *passim*

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018)....2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Frasco v. Flo Health, Inc.*,
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ....................20

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .................... *passim*

*In re Google Ass't*,
546 F.Supp.3d 945 (N.D. Cal. 2021) ....................19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) ....................16

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ....................10

*Harris v. comScore*,
292 F.R.D. 579 (N.D. Ill. 2013) ....................17

*James v. Uber Techs. Inc.*,
338 F.R.D. 123 (N.D. Cal. 2021) ....................10

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F.Supp.3d 942 (N.D. Cal. 2022) ....................11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................16

*Krakauer v. Dish Network, L.L.C*,
925 F.3d 643 (4th Cir. 2019) ....................25

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ....................24

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ....................19

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ....................4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .................... *passim*

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*In re Meta Pixel Tax Filing Cases*,
826 F. Supp. 3d 1217 (N.D. Cal. 2026) ........................................16

*Mirabelli v. Olson*,
350 F.R.D. 138 (S.D. Cal. 2025) ........................................9

*In re Nassau Cnty. Strip Search Cases*,
742 F. Supp. 2d 304 (E.D.N.Y. 2010) ........................................20

*Nolen v. PeopleConnect, Inc.*,
2026 WL 2871735 (9th Cir. Sept. 24, 2026) ........................................24

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ........................................3

*Oasis W. Realty, LLC v. Goldman*,
51 Cal.4th 811 (2011) ........................................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ........................................2, 11

*Opperman v. Path, Inc.*,
2016 WL 3844326 (N.D. Cal. Jul. 15, 2016)........................................13, 14

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........................................22

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........................................21

*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*,
29 Cal.App.5th 230 (2018) ........................................15

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........................................20

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........................................19

*Rabin v. Google LLC*,
787 F. Supp. 3d 934 (N.D. Cal. 2025) ........................................12

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) ........................................9

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ....15, 19

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ....15, 18, 21

*Rodriguez v. Google LLC*,
823 F. Supp. 3d 986 (N.D. Cal. 2026) ....14

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) ....20

*Sheehan v. San Francisco 49ers, Ltd.*,
45 Cal.4th 992 (2009) ....13

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ....4

*Svoboda v. Amazon.com Inc.*,
168 F.4th 956 (7th Cir. 2026) ....24

*B.K. ex rel. Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ....22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....11

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ....17

*Tunick v. Takara Sake USA Inc.*,
806 F. Supp. 3d 912 (N.D. Cal. 2025) ....9

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ....11

*United States. v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....15

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ....11

*Vacquero v. Ashley Furniture Indus.*,
824 F.3d 1150 (9th Cir. 2016) ....21

**TABLE OF AUTHORITIES**
**(continued)**


**Page(s)**

*In re Vioxx Prods. Liab. Litig.*,
230 F.R.D. 473 (E.D. La. 2005)....4

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022)....21

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....9, 22

*Ward v. United Airlines, Inc.*,
2021 WL 534364 (N.D. Cal. Feb. 12, 2021)....22

*Weston v. DocuSign, Inc.*,
348 F.R.D. 354 (N.D. Cal. 2024)....19

*Williams v. Apple*,
338 F.R.D. 629 (N.D. Cal. 2021)....12

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024)....18

*Zaklit v. Nationstar Mortg.*,
LLC, 2017 WL 3174901 (C.D. Cal. July 24, 2017)....21

**Statutes**

18 U.S.C. § 2510(4)....15

18 U.S.C. § 2510(5)....15, 17

18 U.S.C. § 2510(8)....15

18 U.S.C. § 2510(12)....15, 17

18 U.S.C. § 2520(c)(2)....20, 21

18 U.S.C. § 2520(c)(2)(A)....19

42 U.S.C. § 1320d-6....4, 18

Cal. Civ. Code § 3360....21

Cal. Penal Code § 632(a)....17, 18

Cal. Penal Code § 637.2....20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Court Rules**

Fed. R. Civ. P. 23(a)(1) ... 9

Fed. R. Civ. P. 23(a)(4) ... 10

**Treatises**

Restatement (Second) of Torts § 652H ... 20

**Regulations**

42 C.F.R. § 482.24(b)(1) ... 23

45 C.F.R. § 164.312(b) ... 23

45 C.F.R. § 164.512(e)(1)(ii)(B) ... 23

45 C.F.R. § 164.512(e)(1)(v) ... 23

45 C.F.R. § 164.508(a)(1) ... 4, 14

45 C.F.R. § 164.508(a)(3) ... 4, 14

45 C.F.R. § 164.514(b)(2) ... 6

## I. INTRODUCTION

This case concerns Google's unauthorized collection and use of patients' Health Information though Source Code for several of its products embedded on Healthcare Providers' websites. While Google has denied these allegations—calling them "salacious" in its Rule 12 Motion (ECF No. 67 at 4)—the record shows that each element of Plaintiffs' claims, like those of all Class Members, can be proven though common evidence. This is fundamentally a product of standardization across Google's systems, including how data is collected, processed, and associated with individuals, as well as the common promises it makes to all Class Members that encounter this technology. This is apparent from the start of Google's data-collection chain—i.e., with the common code that records individuals each time they visit a Healthcare Provider site—through each system that handles the data. [redacted]. As a result, the facts underlying each element of Plaintiffs' intrusion upon seclusion, ECPA, CIPA, and unjust enrichment claims, like Google's anticipated defenses around consent, knowledge, intent, or use of Class Member's protected Health Information, rise and fall on the same set of common technical evidence. This is the hallmark of a certifiable class.

The same is true of the express contractual promises Google made to Plaintiffs and Class Members. There is no dispute that Google provides a single set of terms that bind all Class Members, who are Google Accountholders. In these form contracts, Google unequivocally promised individuals that they could control how it used information collected about them, that it would not use health information for advertising purposes, and that it would not even collect health information about them without express consent. Google's violation of each of these contract promises, like the core facts underlying the common technology, can be proven with common evidence. For the Named Plaintiffs' Healthcare Providers, the evidence now shows that [redacted] And while Google will likely claim, as it has in other cases, that its use of such data depended on individual agreements or account settings, the standardized nature of those settings, the systems behind them, and the accompanying faults—including the decisions and failures that

allowed the use of health information for targeted advertising—mean even these defenses will be resolved by common proof. So too will Google's intent to violate its own policies: internal documents show [redacted]

The core commonality among Google's promises and its standardized technology make this action eminently manageable. Data Google produced shows it collected Plaintiffs' and other patients' communications with their Healthcare Providers about actions—like booking appointments, paying medical bills, messaging providers, refilling prescriptions, and viewing visit summaries—that have been protected since the dawn of the Hippocratic Oath. Because regulations require Healthcare Providers to retain records about patient activity, any questions about Class Membership or how to distribute a damages award can be answered objectively by data in these providers' possession. Any gaps can be filled with claims filed by Class Members, whose patient status can be validated against these same records and checked against Google's.

Google's common technology and processing systems, along with its use of common contractual promises, also makes injunctive relief equally easy to manage. [redacted] *See* § V.D; Shafiq Expert Report ("Shafiq") ¶¶ 233-37. Google's common promises can also be corrected to reflect how it uses patient data for advertising and other purposes despite claiming otherwise. A single order would give every Class Member the same relief. The Court should certify these Classes so Plaintiffs may obtain relief for patients like them whose statutory, privacy, and contractual rights Google violated.

## II. <u>LEGAL STANDARD</u>

T]he ultimate goal of Rule 23 is to determine whether efficiency and justice are best served by plaintiffs pursuing their claims on behalf of a class." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607 (N.D. Cal. 2018). Plaintiffs "must satisfy all four requirements of Rule 23(a), and at least one of the sub-sections of Rule 23(b)" by a preponderance of the evidence. *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 541 (N.D. Cal. 2018); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*

*LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022). Merits questions should be considered "only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (cleaned up).

And while Plaintiffs demonstrate below (*see* § IV.B) that all Class Members suffered the same common injury when Google intercepted and recorded their private health information, neither Rule 23(b)(3) or (b)(2) requires proof that every Class Members also has standing for certification. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668-69 (9th Cir. 2022); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*, overruled on other grounds) (in a class action, standing is satisfied if at least one named plaintiff meets the requirements)

## III. STATEMENT OF FACTS

Plaintiffs are Google Accountholders who were subject to Google's collection of Health Information and communications from their Health Care Providers' web properties through Google Source Code on the providers' web properties and patient portals.[4] Exhibits ("Ex.) hereto are to the Declaration of Jay Barnes.

### A. Common Contract Promises and Expectations of Health Information Privacy

As Accountholders, Google's "Privacy Policy and Terms of Service" apply to each Plaintiff and all Class Members. *See* Ex. 24 at 25:8-11 (Google Rog. 5 Response). Throughout the Class Period, these policies promised all Accountholders, that Google would: (1) let "[y]ou . . . control what information we use to show you ads" and "never use your … sensitive information … to personalize ads to you" including information about "health "(the No Use Promise") and, (2) beginning December 15, 2022, only collect "Health information *if you choose to provide it*[.]"(emphasis added) (the "No Collection Promise").[5]

Google's promises are consistent with Plaintiffs' and Class Members' reasonable expectation of privacy in communications with their own Healthcare Providers. *See* Cohen Expert Report ("Cohen") ¶¶ 28-31, 44; *Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) ("[T]here is a reasonable expectation of privacy in one's private health information."); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) ("*Meta Pixel Healthcare*") (plaintiffs likely to show an objectively reasonable

---

[4] *See* Exs. 1-7: Declaration of John Doe I, ¶¶ 2-7 (Gundersen); John Doe II, ¶¶ 2-7 (Kaiser); John Doe IV ("John Doe IV Decl.") ¶¶ 2-7 (Kaiser); John Doe V ¶¶ 2-7 (TMH); Jane Doe I ¶¶ 2-7 (MedStar); Jane Doe VI ¶¶ 2-7 (Shannon); Jane Doe VII ¶¶ 2-7 (Edward-Elmhurst).

[5] *See* Exs. 53-68 Privacy Policies from April 2017 – present.

expectation that their communications with their medical providers were confidential).

Health information has long been recognized as an unequivocally private category of personal information. Cohen ¶¶ 30, 53-55; *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."); *Doe v. Regents*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("personal medical information is understood to be among the most sensitive information that could be collected about a person"). Indeed, Healthcare Providers' obligations to protect and keep private information about their patients dates to the original Hippocratic Oath. Cohen ¶¶ 32-33; *In re Vioxx Prods. Liab. Litig.*, 230 F.R.D. 473, 476 (E.D. La. 2005) ("first recognized by Hippocrates of Cos in the fifth century B.C."). These obligations are recognized in modern rules of medical ethics, common law protections, and statutes like HIPAA or the CMIA. Cohen ¶¶ 41-51; *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799-801 (patient-provider communications protected by federal law, and in enacting HIPAA "Congress has made policy decisions regarding the importance of safekeeping this information"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 914 (S.D. Cal. 2020) (statutory protection of medical information "rooted in common law duties traditionally serving as the basis for lawsuits"); *Frasco v. Flo Health, Inc.,* 349 F.R.D. 557, 579-80 (N.D. Cal. 2025) (concrete injury to class members' "time-honored right to control access to their private information and affairs"). They apply no matter the forum or format of the communications, as Healthcare Providers must maintain confidentiality of patient information communicated in electronic form (e.g., on a website or within a patient portal) the same as if someone called their office, or visited a physician. Cohen ¶¶ 52, 62, 152-154; *see Meta Pixel Healthcare*, 647 F. Supp. 3d at 791-93 (log-in click on patient portal, with the portal URL, identified the user as a patient, and patient status is protected health information); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (communications on publicly available webpages, where patients were communicating with providers about their healthcare needs are protected).

This core tenet of privacy is reflected in federal law within HIPAA. This statute not only codifies a "privacy rule" that all Healthcare Providers must follow, but makes clear that express, written authorization is required before protective health information is used or disclosed, especially for marketing purposes. *See* 45 C.F.R. § 164.508(a)(1), (a)(3). And third parties who obtain without proper authorization violate federal

law. 42 U.S.C. § 1320d-6. These protections cannot be waived: Healthcare Providers must protect and keep private protected health information even if it is disclosed by the patient to another person or through other means, absent express written consent. Cohen ¶¶ 142-144; *see also* id. ¶¶ 64, 68-73. Importantly, these obligations are objective and apply to all patient-provider communications, regardless of patient subjective expectations or whether the information conveyed is correct (e.g., even if the information is wrong). *Id.* ¶¶ 108, 142-43.

**B. Google's Common Collection of Identifiable Health Information**

Plaintiffs and Class Members each had protected communications with their Healthcare Providers captured by Google. *See* Exs. 41-51 (Google data and other evidence proving use of Healthcare Provider website when tracking was enabled); Exs 1-7 (Plaintiff Declarations, describing use of provider properties). This is how Google's Code is designed. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

6 [redacted]

[redacted]. 45 C.F.R. § 164.514(b)(2); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 791-93 (patient portal log-in data sent with the portal URL and cookies identified the user as a patient); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 972-73 (S.D. Cal. 2023) (IP address combined with physician, condition, and appointment searches on provider website plausibly constituted health information). [redacted] See Ex. 25, (Google Rog. 1 Response) at 9.

These data fields are identifiable to Google by its own terms. Google's internal [redacted].

Google has suggested that certain configurations or settings might make a difference in how it collects or uses Class Members' data. *See e.g.* ECF No. 164 at 18 (emphasizing providers' "control" over "features").

Common evidence will show the opposite. For example, [redacted] *See* Shafiq ¶¶ 70-73.

### C. Google's Common Use of Health Information for Targeted Advertising

Common evidence shows how Google uses Class Member's Health Information across its systems. For all six healthcare providers, [redacted]

### D. Google's Intent Is Shown Through Common Evidence

While the Court previously ruled that Plaintiffs had not adequately alleged that Google intended to collect or use health information after March 2023 (ECF No. 198 at 4-5) the record now shows otherwise. [redacted]

[redacted]

[redacted]

[redacted] also directly contradicts its claimed lack of intent. Google still [redacted]

# IV. ARGUMENT

## A. This Case Meets the Requirements of Rule 23(a)

### 1. Each Proposed Class is Sufficiently Numerous

Numerosity is satisfied where joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). This is typically satisfied when there are more than 40 class members. See *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Each proposed class and subclass, which includes the number of patients that visited at each of six major Healthcare Providers web properties or patient portals, meets this criteria. Where, as here, the exact size of a class is unknown but general knowledge and common sense indicate it is large (e.g., based on the size of each Healthcare Provider), numerosity is satisfied. *Tunick v. Takara Sake USA Inc.*, 806 F. Supp. 3d 912 (N.D. Cal. 2025); *see also Mirabelli v. Olson*, 350 F.R.D. 138 (S.D. Cal. 2025) (inferring class in the thousands from poll numbers, general knowledge, and common sense).

### 2. Legal and Factual Issues are Common to the Proposed Classes

The commonality requirement is met if "even a single common question exists," *Alcantar v. Hobart*

*Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015), so long as "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Castillo v. Bank of America, NA*, 980 F.3d 723, 728 (9th Cir. 2020). Here, the most important questions in the action are common. Plaintiffs' contract claim, for example, turns on a common question about whether Google's collection of Health Information through Source Code on Healthcare Provider web properties and portals, along with its subsequent use of that information, violated its public contract promises to the contrary. Similarly, Plaintiffs ECPA and CIPA 632 claims implicate the same common contracts and common questions about how Google's Source Code operates. Plaintiffs' intrusion upon seclusion claims concern whether Google's collection and/or use of their Health Information, while knowing full well it was doing so, was highly offensive to a reasonable person. And whether Google benefited from the misconduct above is the core question at the heart of Plaintiffs' unjust enrichment claim. The existence of such outcome-determinative questions for each claim strongly supports certification.

**3. The Plaintiffs' Claims are Typical of Each Respective Class**

Typicality is a "permissive standard" and only requires Plaintiffs' claims be "reasonably co-extensive with those of absent class members." *Castillo*, 980 F.3d at 729, i.e., that "other members have the same or similar injury . . .based on conduct which is not unique to the named plaintiffs." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 132 (N.D. Cal. 2021). Here, each Plaintiff was injured by Google Source Code in a way that breached Google's common contract promises and their reasonable expectations of privacy. *See* § III, above. Further, no Plaintiff is "subject to unique defenses which threaten to become the focus of the litigation" as all allege the same core set of facts. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

**4. The Plaintiffs and Class Counsel are Adequate Representatives**

Plaintiffs and proposed class counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Neither have conflicts of interest with the class; and both will continue to vigorously prosecute this action. *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*); see Exs. 1-7 (Plaintiff Decls.). Plaintiffs have invested many hours in this case, responding to extensive and intrusive discovery, permitting forensic imaging of their devices, collecting documents, and testifying. *Id.* Counsel has extensive experience litigating privacy cases, and have pursued this case vigorously, as described in their

accompanying Declarations. Plaintiffs therefore also request that the Court appoint the lawyers who have worked together on behalf of the Class since this litigation commenced as Class Counsel under Rule 23(g).

**B. The Classes Suffered Common Article III Injuries From Google's Conduct**

Plaintiffs' and Class Members' claims arise from at least two common Article III injuries: (1) intrusion upon seclusion into their private communications with Healthcare Providers, and (2) Google's breach of contractual promises not to collect health information, or to use such information if collected about them. See *Frasco*, 349 F.R.D. at 579 (capture of personal health data without consent is concrete injury that occurs when the information is first obtained); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th. Cir. 2020) (standing for intrusion, contract, and ECPA claims based on privacy harms); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 922-23 (N.D. Cal. 2023) (breach of Google's privacy promises was a substantive breach of a private contract, not a bare procedural violation, and conferred standing); *In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1059-62 (N.D. Cal. 2016) (failure to receive benefit of bargain, and availability of nominal damages for breach of contract, are injuries in fact). These harms have been recognized since the Founding as valid bases for federal jurisdiction. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (intrusion upon seclusion is a harm "traditionally recognized as providing a basis for lawsuits in American courts"); *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) (nominal damages satisfies redressability). Although proof of injury to each Class Member is not required, as Plaintiffs' injures arise from the common set of facts that underlie all Class Members' claims, there are no uninjured Class Members here. *See also Olean*, 31 F.4th at 669 (rejecting that Rule 23 does not permit certification of a class that "potentially includes more than a *de minimis* number of uninjured class members"). Article III standing is satisfied.

**C. The Damages Class (or Subclasses) Should be Certified Under Rule 23(b)(3)**

A class should be certified under Rule 23(b)(3) where common questions predominate, i.e., "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). This "is not a counting game." *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.,* 609 F.Supp.3d 942, 967 (N.D. Cal. 2022). "Rather, more important questions apt to drive the resolution of the litigation carry greater weight than less significant individualized questions." *Id.* (citation

omitted). Below, Plaintiffs explain why each claim should be certified for the damages Classes. See *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (predominance inquiry begins with the elements of the underlying cause of action); *Frasco*, 349 F.R.D. at 580-87 (analyzing predominance claim by claim).

### 1. <u>The Contract Claims Should Be Certified Under Rule 23(b)(3)</u>

Breach of contract has four elements: (1) "the existence of the contract;" (2) "plaintiff's performance or excuse;" (3) breach; and (4) "resulting damages[.]" *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). "Courts routinely certify class actions regarding breaches of form contracts." *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *20 (N.D. Cal. Jun. 13, 2014) (collecting cases); *Williams v. Apple*, 338 F.R.D. 629, 638 (N.D. Cal. 2021); *Frasco*, 349 F.R.D. at 586 (Certifying contract claims for sharing health information with Meta). The result should be the same here.

#### a. Common Evidence of the Contract's Terms and Existence

Class Members' contract claims turn on a common form contract: Google's Terms of Service and Privacy Policy. Ex. 24 (Google Rog. 5 Response). Courts have certified breach-of-contract classes against Google based on its standardized terms, *Rabin v. Google LLC*, 787 F. Supp. 3d 934 (N.D. Cal. 2025), and have recognized that the Privacy Policy's limits on sharing users' information and on use of sensitive information are specific, enforceable contract terms, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020). The claims here concern two promises: (1) the No Collection Promise that, starting December 15, 2022, Google would only collect "Health Information if you choose to provide it … in the course of using Google services that offer health-related features, such as the Google Health Studies App," and (2) the No Use Promise that, as of May 25, 2018, Google would let "[y]ou . . . control" how it used data and not "show you personalized ads based on *sensitive categories*, such as … health" or allow advertisers to do the same. Ex. 59 (Dec. 2022 PP); Ex. 55 (May 2018 PP). Common evidence shows these promises were false, as advertisers were able to target sensitive health categories with ads, despite Google's claims. *See* Ex. 23 ("We believe that users have been subject to Ads that violate our Personalized Ads policy. This likely started on 07/10/2019 …with "bad ads," e.g. a "[s]ensitive ad for cancer hospital that was served to sensitive custom audience.") Although the Court dismissed claims based on this second promise, Plaintiffs have sought leave to amend based on this new evidence, and for reconsideration allowing revival of this claim. Both breach

of contract theories should be certified, for claims that arose after Google made each of the relevant promises.

The remaining elements are similarly subject to common proof. Evidence of performance is common because, per the contract, all Class Member need to do is create a Google account. *See Williams*, 338 F.R.D. 629 (certifying contract class; existence and terms of uniform agreement answerable by examining same document for every class member); *Frasco*, 349 F.R.D. at 586 (whether contract governed app answerable by reviewing terms in effect during class period). Google's breach of this contract can be shown through common evidence demonstrating that its Source Code works the same for all Class Members, collecting their communications with Healthcare Providers along with identifiable information [redacted] *See* § III.A, above. Common evidence showing Google used the data for its own purposes, including [redacted] further confirms that Google breached both promises to Class Members.

**b. Consent Under the Contract Claim Is Determined by the Contract Itself**

Google will likely argue (as it has in other cases) that Class Members consented to its conduct by agreeing to these terms. Although wrong, this too is a common question that turns on an objective evaluation of Google's form agreement, and supports certification. *Calhoun v. Google*, 113 F.4th 1141, 1149 (9th Cir. 2024) ("[T]he governing standard is what a 'reasonable user' of a service would understand they were consenting to, not what a technical expert would."); *Frasco*, 349 F.R.D at 582 ("Consent does not turn on individual class members' subjective understandings of privacy disclosures."); *Birdsall v. Helfet*, 113 Cal.App.5th 558, 569 (1st Dist. 2025) (Contract "consent" test is "objective" and determined by "what the outward manifestations of consent would lead a reasonable person to believe."); *see also* Google's Terms of Service ("These terms describe the relationship between you and Google. They don't create any legal rights for other people or organizations, even if others benefit from that relationship under these terms."). Google's contract defenses do not prevent certification here.

**2. The Intrusion Claim Should Be Certified**

There are two elements to this claim: (1) intrusion into "a place, conversation, or matter as to which [plaintiffs have] a reasonable expectation of privacy" (2) "in a manner highly offensive to a reasonable person." *Facebook Internet Tracking*, 956 F.3d at 601. Both are subject to common proof.

A "reasonable expectation of privacy" exists where there "is an objective entitlement founded on broadly based and widely accepted community norms" such as "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Frasco*, 349 F.R.D. at 582, citing *Sheehan v. San Francisco 49ers, Ltd*., 45 Cal.4th 992, 1000 (2009). "California law does not require Plaintiffs to prove subjective expectation." *Opperman v. Path, Inc.*, 2016 WL 3844326, at *11 (N.D. Cal. Jul. 15, 2016). Plaintiffs and all Class Members have an objectively reasonable expectation of privacy in communications with their Healthcare Providers. *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799. This expectation is further confirmed by Google's express No Collection No Use, and No Sensitive Ads promises.

Similarly, the "highly offensive to a reasonable person" test asks whether "the intrusion is unacceptable as a matter of public policy." *Facebook Internet Tracking*, 956 F.3d at 606; *Opperman*, 2016 WL 3844326, at *11 (explaining this is "essentially a policy determination" that "may require an examination of [the defendant's] motives, but [] will not require individualized determinations of class members' subjective expectation.") Here, evidence showing that Google collected Health Information and/or use it for advertising purposes in violation of both Class Members reasonable expectations of privacy in their Health Information, and its contractual promises to the contrary proves this conduct is highly offensive. *See Rodriguez v. Google LLC*, 823 F. Supp. 3d 986, 992 (N.D. Cal. 2026) (denying decertification after trial; theory that Google's collection of data after saying it would not was highly offensive was susceptible to classwide proof); *Frasco*, 349 F.R.D. 557 (whether transmission of health information and its commercial exploitation was highly offensive to a reasonable person is a common question).

Consent is an affirmative defense for which the defendant bears the burden of proof. *Calhoun* 113 F.4th at 1147. Plaintiffs anticipate Google will argue that determining whether there was any intrusion requires analyzing each Healthcare Provider's disclosures and potentially how each Class Member understood them. *See e.g.*, Dkt. 164 at 20. This is wrong for at least two reasons. *First*, what Healthcare Providers stated in their own terms of user or privacy policies cannot establish consent to collect Health Information, including Google's. Cohen ¶¶ 82, 139-41, 145. HIPAA prohibits Healthcare Providers from disclosing Health Information in all circumstances—and especially for marketing uses—without express written consent. *Id.* ¶ 64-76. This cannot be accomplished though policies, terms of use, or other disclosures. *Id.* at ¶ 140. *See* 45

C.F.R. § 164.508(a)(1), (a)(3); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799 (patient-provider communications are protected by federal law, including HIPAA's requirement of a "valid authorization" before protected health information is used or disclosed). There is no evidence any Healthcare Providers obtained standalone written consent required by law. No further analysis is necessary.

*Second*, there is no transitive property of consent. In *Rodriguez v. Google*, Google argued that whether plaintiffs consented to its collection of data from various mobile apps required evaluating each app's policies and disclosures. The court rejected this analysis, finding "*Google's* disclosure[s] about [its own actions], not third-party disclosures to users" were the only relevant materials. *Rodriguez v. Google LLC*, 2024 WL 38302, at *9 (N.D. Cal. Jan. 3, 2024); *See also Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1103-04 (N.D. Cal. 2025) (consent turns on Google's own disclosures; consent obtained by third-party developers for whom Google acted as a vendor is not attributable to Google). Because Google's promised *not* to collect Health Information or use that information for ads here, no Class Member could have consented to that conduct.

**3. The Unjust Enrichment Claim Should Be Certified**

To prevail on an unjust enrichment claim, Plaintiffs must show that (1) Google received a benefit, e.g. "any form of advantage," from them that (2) would be unjust for Google to retain that benefit. *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal.App.5th 230, 238 (2018). Here, whether Google "received a benefit" will be proven with the common evidence described above regarding how Google's used the Class's data; and whether it was unjust will be proven by common evidence that all communications at-issue were between a patient and their provider on the provider's own properties.

**4. The ECPA Claim Should Be Certified**

The Electronic Communications Privacy Act claim has five elements: (1) intentional (2) interception (3) of contents (4) of an electronic communication (5) through use of a device. An "electronic communication" is "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature" transmitted via electronic means. 18 U.S.C. § 2510(12). To "intercept" means the "acquisition of the contents of any … electronic … communication … through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Contents … includes any information concerning the substance, purport, or meaning of" an electronic communication. 18 U.S.C. § 2510(8). And a "device" is "any device or apparatus which can be

used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5).

Intent is satisfied where the evidence shows the defendant "acted consciously and deliberately with the goal of intercepting … communications[.]" *United States. v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015). Common evidence shows that (1) Google's Source Code and its systems work the same for all Class Members, and (2) Google knowingly promoted use of its code. *Allen v. Conagra Foods, Inc.*,31 F.R.D. 641, 662 (N.D. Cal. 2019) ("[I]ntent … can be shown on a representative basis."); *See Frasco*, 349 F.R.D. at 587 (plaintiffs' evidence could show on a classwide basis that Google and Meta "intended to do so, as evinced by the design of their SDKs and their attempts to continue collecting the same information even after Flo sought to remove the SDKs"); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 885 (N.D. Cal. 2020) (what Google's conduct was, and whether it was intentional, are common questions); *In re Meta Pixel Tax Filing Cases*, 826 F. Supp. 3d 1217, 1232 (N.D. Cal. 2026) (whether defendant acted intentionally is a common question that does not turn on differences among class members).

On the motion to dismiss, the Court held that Plaintiffs had not plausibly alleged that Google "intended" to collect the data at-issue from healthcare providers after Google published a page in March 2023 titled "HIPAA and Google Analytics." ECF No. 198 at 4-5. However, as explained above, the record *evidence* developed since then shows that Google not only knew it was capturing health information but that it intentionally did so, [redacted] *See* § III.C., above. Actions speak louder than words here, Google got what it wanted.

Interception is subject to common proof because [redacted] Shafiq ¶ 73. Whether that acquisition occurs contemporaneously with transmission, *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002), likewise turns on how Google's code operates. Shafiq ¶¶ 222-228. The same common evidence also proves that Google does not become a "party" to that communication

by capturing and re-directing it. *Facebook Internet Tracking*, 956 F.3d at 607-08.

Electronic Communications & Contents are both subject to the same common proof. As shown above, Google produced data showing that it [redacted]. *See* Figure 1, above & § III.B.; Cohen ¶¶ 94-96 and Figs. 1-41. [redacted] are "contents." *Facebook Internet Tracking*, 956 F.3d at 605; *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795–96 (descriptive URLs and patient portal log-in button clicks on healthcare provider websites are contents); *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) (URLs and button clicks on eating disorder treatment website were contents). This mirrors Plaintiffs' own testimony, web viewing history, and other data produced in this litigation showing their visits to their Healthcare Providers' web properties. *See* § III.

Device is subject to common proof because Google's Source Code is the device that carried out the recording of Plaintiffs' private communications. *See Frasco*, 349 F.R.D. at 587 (certifying § 632 subclass against Google and Meta for SDK-based recording of health information); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079-80 (N.D. Cal. 2023) (Meta Pixel code is a "device" under CIPA § 632(a)); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 796 (plaintiffs' communications on healthcare providers' websites "appear to fall squarely within the statutory definitions" of "device" and "electronic communication," 18 U.S.C. § 2510(5), (12)). Alternatively, Plaintiffs and Class Members mobile phones and computers, which Google Source Code used to record their communications are the device. *Cf. Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757-JD, ECF No. 744 at 17 (N.D. Cal. July 31, 2025) (Jury Instruction No. 15: jury to decide whether defendant "intentionally eavesdropped on or recorded" plaintiffs' conversations "by using an electronic device"); *id.*, ECF No. 756 at 1 (N.D. Cal. Aug. 4, 2025) (jury verdict in class trial answering "Yes" to whether defendant "intentionally eavesdropped on and/or recorded their conversation by using an electronic device").,

Consent is an affirmative defense that is also subject to common proof. Google cannot meet its burden of proof because, while "consent can be express or implied," it "must be actual," which requires the defendant to "explicitly notify users of the conduct at issue." *Calhoun*, 113 F.4th at 1147; *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (burden of proof). The record here shows the exact

opposite: not only did Google fail to notify Plaintiffs or Class Members that it was collecting or using their Health Information, it promised not to. *See* § IV.C.1.b, above (quoting Google's Terms of Service). These express promises are dispositive as, having promised one thing, Google cannot claim Class Members consented to another. *Flo Health*, 349 F.R.D. at 574 (explaining that if a user "could have plausibly understood the disclosure as not disclosing that the defendant would engage in particular conduct, then the disclosures are insufficient to establish consent."); *see also Harris v. comScore*, 292 F.R.D. 579, 582 (N.D. Ill. 2013) (rejecting argument that "consent will vary for each plaintiff based on his subjective understanding [and] surrounding circumstances" where "consent [was obtained] through the adoption of a form contract.") Nor can Google prove that any Healthcare Provider consented to collection of Plaintiff and Class Members' Health Information because this would violate their individual rights, and each Healthcare Provider's duties under HIPAA. *See* § III.A, above. *See also Rodriguez*, 772 F. Supp. 3d at 1104 (consent obtained by those for whom Google acted as a vendor cannot be attributed to Google); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067-69 (N.D. Cal. 2021) (rejecting Google's argument that websites consented by embedding its code where communications were intercepted for a criminal or tortious purpose). Regardless, the tortious or criminal purpose exception applies here. Google described its own alleged conduct as "salacious." In addition, Healthcare Providers' disclosure in violation of HIPAA and Google's collection and use of illicit Health Information for commercial gain is a crime. See 42 U.S.C. § 1320d-6 and Cal. Penal Code § 632(a).

**5. The CIPA § 632 Claim Should Be Certified**

California Penal Code § 632 makes it unlawful to (1) intentionally and (2) without the consent of all parties (3) to a confidential communication (4) use a recording device to record the confidential communication. *See* Cal. Penal Code § 632(a); *Frasco*, 349 F.R.D. at 584; *Meta Pixel Healthcare*, 647 F. Supp. 3d at 798-99; *Brown v. Google LLC*, 685 F. Supp. 3d at 937. Each of these elements can be shown by the common evidence set forth above. For instance, Plaintiffs and Class Members, as patients of their respective Healthcare Providers, reasonably expected the protected Health Information they communicated to those Healthcare Providers about scheduling appointments, seeking treatment for specific conditions (e.g., searches for "IVF," "prostate cancer," and "weight loss surgery"), and paying for their care to remain confidential. *See* Cohen ¶¶ 29–31, 49, 53–54, 91–92, 98 & Figs. 1–41; *Frasco*, 349 F.R.D. at 587 (users'

expectation that their health communications would remain private could be shown classwide); *Meta Pixel Healthcare*, 647 F. Supp. 3d at 799 ("Communications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general."); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) (communications with healthcare companies are confidential).. Google's recording of these confidential communications is reflected in the common evidence of how its Source Code worked, as well as the common data it produced showing [redacted]. *See* § III.B-C above. Google's intent is evidenced by documents showing [redacted]. *See* § III.D, above. Finally, as explained in the manageability section below, Class Members within California that qualify for compensation under CIPA's mandatory statutory damages provision can be identified from their Healthcare Providers' records, and if needed, a post-trial claims process. Thus, all elements of this claim can be proven with common, Classwide evidence.

#### 6. Plaintiffs' Damages Models Support Certification

Plaintiffs need only identify a damages model that "stems from the defendant's actions that create the legal liability." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1027 (9th Cir. 2024). "[A]ll the plaintiffs must do … is propose a damages methodology that will be able to reliably calculate damages in a manner common to the class at trial." *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 369 (N.D. Cal. 2024). Plaintiffs have identified six methodologies for calculating the damages associated with the Class's claims.

<u>Benefit-of-the-bargain</u> damages are available for all claims and can be measured by the fair market value of the right to access the data. Plaintiffs propose quantifying damages by looking at the amount that Google itself pays for the right to track Internet browsing history. Zigrang Expert Report ("Zigrang") at 8-13. Courts have accepted this approach before, recognizing that Google's own payments for users' browsing data evidence a market for that data. *See Rodriguez v. Google LLC*, 2024 WL 38302 at *11-13 (N.D. Cal. Jan. 3, 2024) (upholding Google Screenwise as market comparison for actual damages); *Facebook Internet Tracking*, 956 F.3d at 600 (noting research panels that pay participants for access to their browsing histories). That same model should be approved for the same reasons here.

Disgorgement is also available for Plaintiffs' contract, unjust enrichment, intrusion, and ECPA claims to require Google to return all profits attributable to collecting identifiable health information. See *In re Google Ass't*, 546 F.Supp.3d 945, 967 (N.D. Cal. 2021) (available as a contract remedy); *Facebook Internet Tracking*, 956 F.3d at 599-600 (California law recognizes right to disgorgement of profits resulting from unjust enrichment even absent a corresponding loss); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 899-900 (C.D. Cal. 2024) (disgorgement claim stated for profits from disclosing patients' health information through website tracking tools); 18 U.S.C. § 2520(c)(2)(A) (ECPA permits recovery of "any profits"); *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 447 (N.D. Cal. 2015) (same). "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015), citation and internal quotations omitted. Here, Plaintiffs' will use Google's own internal revenue figures, including the amount of revenue generated from policy-violating ads, to approximate the amount of disgorgement warranted based on its use of Plaintiffs' and Class Members' health information. Zigrang at 13-18.

General damages are available for all claims. See *Doe v. Chao*, 540 U.S. 614, 621 (2004) ("The common law has provided such victims with a claim for 'general' damages, which for privacy … torts are presumed damages: a monetary award calculated without reference to specific harm.");. Restatement (Second) of Torts § 652H explains that "one who has established a cause of action for invasion of his privacy is entitled to recover damages for (a) the harm to his interest in privacy resulting from the invasion," separate and apart from "mental distress" and "special damage." That is, "the deprivation of his seclusion" is compensable on its own. Id., cmt. a. Here, "the deprivation of seclusion" is the same for all class members: it is the interference with the confidentiality of the patient-provider relationship. And a jury can calculation a common monetary award "without reference to specific harm," e.g. it can decide the monetary value of that right on a common basis. Thus, Plaintiffs will present the jury with the common question of what the presumed damages amount should be for Google's privacy-breaching conduct. *See In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 304, 316-17 (E.D.N.Y. 2010) (awarding general damages classwide for dignitary injury common to all class members, while reserving individual special damages).

Statutory damages are available for the CIPA and ECPA claims. For CIPA, the statutory damages are automatic and must be awarded. See Cal. Penal Code § 637.2; *Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at *12-14 (N.D. Cal. Sept. 17, 2025) (§ 637.2 award is mandatory and not subject to discretionary factors); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018) (statutory damages under § 637.2 require no individualized inquiry into severity). For ECPA, "the court may assess as damages whichever is the greater of" (A) actual damages and disgorgement; or "(B) statutory damages." 18 U.S.C. § 2520(c)(2). The amount is a matter of math. Therefore, it cannot defeat certification. In *Campbell v. Facebook*, 315 F.R.D. 250, 268 (N.D. Cal. 2016), the court declined to certify an ECPA damages class after considering six factors that bear on whether statutory damages should be awarded. To the extent the Court exercises its discretions under § 2520(c)(2) by references to such factors, each would be resolved with common evidence. These include (1) severity of the defendant's conduct; (2) actual damages; (3) extent of the privacy intrusion; (4) financial burdens; (5) whether there was a reasonable purpose to the interception; and (6) whether any useful purpose is served by imposing statutory damages. Regardless, "individualized findings … [on] damages does not defeat … certification," *Vacquero v. Ashley Furniture Indus.,* 824 F.3d 1150, 1155 (9th Cir. 2016), and "concerns about excessive damages are better suited to a later stage …" *Zaklit v. Nationstar Mortg*., LLC, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) once those damages are quantified and awarded. *See also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713-14 (9th Cir. 2010) (enormity of potential statutory damages is not a ground to deny certification); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120-23 (9th Cir. 2022) (due process limits on aggregated statutory damages are reserved for awards gravely disproportionate to the violation).

Nominal damages are available for the contract and intrusion claims. *See* Cal. Civ. Code § 3360; *Frasco*, 349 F.R.D. at 585-86 (actual damage not required for breach of contract, so no individualized damages questions arise); *Rodriguez*, 772 F. Supp. 3d at 1106 (nominal damages may be recoverable class-wide for invasion of privacy). The amount can be calculated on a classwide basis based on information in Healthcare Providers' possession reflecting the number of patients that meet the Class Definitions during the Class Period. *See Cummings v. Connell*, 402 F.3d 936, 943-44 (9th Cir. 2005) (once a class certified, each member whose rights were violated entitled to nominal damages); *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 10-

12 (D.D.C. 2024) (certifying contract class for nominal damages, individualized damages calculations).

Punitive damages are available because they "focus on the [defendant's] conduct," not "the individual characteristics of the plaintiffs." See *Ellis v. Costco*, 657 F.3d 970, 987 (9th Cir. 2011). Whether punitives are available classwide is decided at the liability stage, with the aggregate amount and distribution reserved for the remedial stage. *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 540-43 (N.D. Cal. 2012). Here, punitive damages can be demonstrated using common evidence showing Google's intentional promotion of its products to Healthcare Providers to ensure its ongoing collection of patient Health Information and protect the $1.27 billion in annual revenue it sought to keep if those clients fled following HHS's warning against adopting analytics products. *See* § III. D, above. A jury can consider documents in the record regarding Google's revenue in determining an appropriate award in line with the scope of this callous misconduct.

**D. The Requirements of Rule 23(b)(2) are Met for All Patients in the U.S.**

Rule 23(b)(2) provides that certification is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." The "key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory relief warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. Thus, certification under (b)(2) is appropriate when "class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines, Inc.*, 2021 WL 534364, at *7 (N.D. Cal. Feb. 12, 2021). Plaintiffs "do not need to specify the precise injunction they will seek at the class certification stage"; it is enough to describe the general contours of an injunction that would provide relief to the class. *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019); *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).

This case is well-suited for injunctive and declaratory relief for all Class Members, who are Google Accountholders and patients of Healthcare Providers in the United States [redacted]). With respect to the contract claim, Google [redacted] An order declaring Google's conduct violates its contract promises would apply equally to all class members.

Likewise, an order requiring specific performance (that Google comply with the contract going forward by no longer collecting or using health information) would apply equally to all class members.

Plaintiffs also believe that injunctive relief is warranted for the common law torts and statutory claims. For these claims, Google should be ordered to stop [redacted]. See Shafiq ¶¶ 233-237. Google's existing [redacted]). Google should be ordered to use those tools to prevent the conduct that continues to harm the Class.

**E. Manageability of the Class Action Trial**

This Court's standing order asks Plaintiffs to explain "precisely how the Court should handle any potentially individualized issues to ensure that they don't render the trial unmanageable." Here, there are potentially three residual individual issues: (1) the precise identity of patients who are in the Class, (2) which Class Members are also California Subclass members for purposes of CIPA 632 claims, and (3) how much each Class Member recovers. Each question can be answered with objective records already in the hands of Google or the Healthcare Providers in a post-trial process, similar to the approach adopted in *Frasco v. Flo Health*, No. 3:21-cv-00757-JD, the most recent trial concerning unauthorized recording of health information in this District. *See Frasco*, ECF No. 744 at 4 (Instruction No. 3: jury "may assume that the evidence admitted during trial applies to all class members"); *id.*, ECF No. 745 at 2-3 (N.D. Cal. July 31, 2025) (three question verdict form tracking the elements of the CIPA § 632 claim); *id.*, ECF No. 756 (classwide verdict for plaintiffs); *id.*, ECF No. 770 (N.D. Cal. Aug. 27, 2025) (text order) (after verdict, directing parties to submit "a joint proposal for statutory damages to be awarded, a claims procedure, and injunctive relief as warranted").

As to the first two questions, Class membership can be determined in two steps. *First*, each Healthcare Provider's own records contain the knowable universe of patients who used its web properties or patient portals during the Class Period, *e.g.*, everyone who booked an appointment, paid a bill, viewed test results, or messaged a provider online will be reflected in records that hospitals are required to retain by law. *See* 42 C.F.R. § 482.24(b)(1); 45 C.F.R. § 164.312(b) (requiring records of activity in systems containing patient

information, including the patient portals at issue here). HIPAA expressly permits providers to produce such information under a qualified protective order or to disseminate notice directly. 45 C.F.R. § 164.512(e)(1)(ii)(B), (v)). Alternatively, the providers can share that information with an administrator who can handle the identification and distribution process. *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 753 (E.D. Wis. 2024) (approving class settlement after notice to over 2.5 million patients of a health system whose websites and patient portal contained tracking pixels).

*Second*, Google can either directly or through an administrator, match patients contact information [redacted] Shafiq ¶¶ 88-102; Exs. 34-40. Indeed, Google has previously offered "to provide discovery relating to putative class members who interacted with the websites at-issue." Joint CMC Statement (ECF No. 267) at 13. Once plaintiffs have the records from Healthcare Providers, Google can search for information about the individuals contained in those files to provide additional information about the Class.

For California class members, Healthcare Provider will also show the patient's location, including their billing address. Google also has location information as it geolocates the communications it collects once it "get[s] their IP address on collections" and uses it "to determine . . . what city and state location that is." Ex. 30 (Roks Tr.) 176:1-4. That location is stored in the same logs Google produced for Plaintiffs (Id. at 195:11-20, 204:12-18; Shafiq ¶¶ 229-232) and as Google's corporate designee testified, is "fairly precise within the order of miles." Ex. 31 (Kornacki Tr.) 242:3-7, 243:19-20. Identifying which individuals are California Subclass members then can be done pursuant to objective data analysis. *See Svoboda v. Amazon.com Inc.*, 168 F.4th 956 (7th Cir. 2026) (affirming finding that location did not defeat predominance where IP and geolocation data, billing addresses, and affidavits could show whether class members were in Illinois).

Any remaining question can be resolved by a sworn attestation on the claim form, checked against the same data. The Ninth Circuit allows class members to identify themselves through sworn declaration, subject to verification. *Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1131-33 (9th Cir. 2017); *See also Nolen v.*

*PeopleConnect, Inc.*, 2026 WL 2871735 (9th Cir. Sept. 24, 2026) (self-identification by affidavit, cross-checked against records, is permissible so long as defendant has a fair opportunity to challenge claims during claims administration). In the event there are gaps in the data record, e.g., such as for patients who communicated Health Information to a Healthcare Provider during a period in which data from either the provider or Google are missing, they can submit a claim form and attestation confirming their status as a patient, when they used that Healthcare Provider web properties, and the types of information they entered sufficient for the provider to validate their patient status and treatment.

Once liability is decided, each Class Member's recovery is a matter of math as damages will be apportioned under each accepted model to each Class Member. See § V.B.6 above; *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (damages that can be calculated from the defendant's records do not defeat certification). Class members fully identified in provider records can be paid directly, while those with insufficient information, can be located and paid using the claims process described above. *See Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 658 (4th Cir. 2019) (allowing entry of judgment for "fully identified" class members with claims process to compensate others in defendant's records); *Briseno*, 844 F.3d at 1131-32; *Brown v. DirecTV*, *LLC*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) ("[S]o long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected.").

Regarding the claims themselves, given that there is only one Defendant and the claims all rise and fall based on a common set of there are no practical issues in having a class trial. In fact, this is much simpler than the *Flo Health* trial that Lowey conducted, which involved two defendants and multiple state and common law claims. Plaintiffs have attached proposed jury instructions and a verdict form showing how they would currently explain these claims to the jury.

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant this motion.

Dated: October 15, 2026

**BARNES LAW, LLC**

*/s/ Jason 'Jay' Barnes*
Jason 'Jay' Barnes, State Bar No. 362766
*jaybarnes@barnes.law*
231 Madison Street, Third Floor
Jefferson City, MO 65101
Telephone: (573) 308-7658
Facsimile: (573) 635-7414

**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
*clevis@lowey.com*
Amanda Fiorilla (admitted *pro hac vice*)
*afiorilla@lowey.com*
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035

**KIESEL LAW LLP**
Jeffrey A. Koncius, State Bar No. 189803
*koncius@kiesel.law*
Nicole Ramirez Jones, State Bar No. 279017
*ramirezjones@kiesel.law*
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Tel.: 310-854-4444
Fax: 310-854-0812

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol, State Bar No. 194857
*msobol@lchb.com*
Melissa Gardner, State Bar No. 289096
*mgardner@lchb.com*
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel.: 415 956-1000
Fax: 415-956-1008

Douglas Cuthbertson (admitted *pro hac vice*)
*dcuthbertson@lchb.com*
Jahi Liburd (admitted *pro hac vice*)
*jliburd@lchb.com*
250 Hudson Street, 8th Floor
New York, NY 10013
Tel.: 212 355-9500

Fax: 212-355-9592

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (admitted *pro hac vice*)
*jguglielmo@scott-scott.com*
Ethan Binder (admitted *pro hac vice*)
*ebinder@scott-scott.com*
230 Park Ave., 24th Floor
New York, NY 10169
Tel.: (212) 223-6444
Fax: (212) 223-6334

*Attorneys for Plaintiffs and the Proposed Class*

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 15, 2026

*/s/ Melissa Gardner*
Melissa Gardner